**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| MICROSOFT CORPORATION, et al., | |
| Plaintiffs, | |
| v. | C.A. No. 11-cv-175 (GMS) |
| GEOTAG INC., | |
| Defendant. | |

**DEFENDANT GEOTAG'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
UNDER FED.R.CIV.P. 12(B)(1) OR, IN THE ALTERNATIVE,
TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)**

Kenneth L. Dorsney (Bar No. 3726)
Mary B. Matterer (Bar No. 2696)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801
(302) 888-6960
kdorsney@morrisjames.com
mmatterer@morrisjames.com

John J. Edmonds
Michael J. Collins
Stephen F. Schlather
COLLINS, EDMONDS & POGORZELSKI, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
jedmonds@cepiplaw.com
mcollins@cepiplaw.com
sschlather@cepiplaw.com

COUNSEL FOR DEFENDANT
GEOTAG INC.

April 29, 2011

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................1

ARGUMENT AND AUTHORITIES.................................................................................4

I.      Plaintiffs' Complaint Should Be Dismissed Under FRCP 12(b)(1) For Lack of
        Subject Matter Jurisdiction. ............................................................................4

        A.      Subject Matter Jurisdiction Under the Declaratory Judgment Act. ..................4

        B.      Accepting the Factual Allegations in the Complaint as True, Subject
                Matter Jurisdiction is Lacking Because Plaintiffs Have Failed to Show
                an Actual Controversy Between Them and GeoTag. .......................................5

        C.      To the Extent the Court Finds it Necessary to Consider Evidence
                Outside the Complaint, the Evidence is Incontrovertible that
                Declaratory Jurisdiction is Lacking. ...............................................................9

II.     In the Alternative, the Court Should Transfer the Case Under 28 U.S.C.
        § 1404(a) to the Eastern District of Texas For the Convenience of the
        Witnesses and Parties and in the Interest of Justice.........................................9

        A.      The Legal Standard for Transfer Under 28 U.S.C. § 1404(a)..........................9

        B.      It Is Beyond Dispute That Plaintiffs Could Have Brought This Suit in the
                Eastern District of Texas...............................................................................12

        C.      The Private Interest Factors Strongly Favor Transfer.....................................13

        D.      The Public Interest Factors Also Strongly Favor Transfer ..............................15

CONCLUSION.............................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. v. Haworth,*
   300 U.S. 227 (1937) .................................................................................................... 4

*Alloc, Inc. v. Unilin Décor N.V.,*
   2006 WL 3050815 (D. Del. Oct. 26, 2006) ........................................................ 11, 12, 14, 16

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.,*
   295 F.Supp.2d 393 (D. Del. 2002) .................................................................................. 13

*Brunswick Corp. v. Precor Inc.,*
   2000 U.S. Dist. LEXIS 22222 (D. Del. Dec. 12, 2000) .................................................. 11, 16

*Cashedge, Inc. v. Yodlee, Inc.,*
   2006 WL 2038504 (D. Del. July 19, 2006) ...................................................................... 12, 15

*Dish Network Corporation v. TIVO, Inc.,*
   2009 WL 1529836 (D. Del. May 28, 2009) ...................................................................... 12, 15

*E.E.O.C. v. Univ. of Pa.,*
   850 F.2d 969 (3d Cir.1988) ............................................................................................... 8

*Eagle Traffic Control v. James Julian, Inc.,*
   933 F. Supp. 1251 (E.D.Pa.1996) ................................................................................... 11, 13

*Edmunds Holding Co. v. Autobytel Inc.,*
   598 F. Supp.2d 606 (D. Del. 2009) ............................................................................. 4, 5, 6, 7

*Gotha v. United States,*
   115 F.3d 176 (3d Cir.1997) ............................................................................................. 4, 5

*Gould Elecs., Inc. v. United States,*
   220 F.3d 169 (3d Cir.2000)) ............................................................................................. 5

*Jumara v. State Farm Ins. Co.,*
   55 F.3d 873 (3d Cir.1995) ...................................................................................... 10, 13, 15, 17

*Medimmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) ........................................................ 4

*Mekiki Co., Ltd. v. Facebook, Inc.,*
   2010 WL 2348740 (D. Del. June 7, 2010) ...................................................................... 11, 13

*Microsoft Corp. v. WebXchange Inc.*,
  2009 WL 3534845 (D. Del. Oct. 30, 2009) ........................................................................... 7

*Mortensen v. First Fed. Sav. & Loan*,
  549 F.2d 884 (3d Cir.1977) ................................................................................................... 5

*Motorola, Inc. v. Research In Motion Ltd. ("Motorola")*,
  2008 WL 3925278 (D. Del. Aug. 26, 2008) ........................................................................ 10

*Qinetiq Limited v. Oclaro, Inc.*,
  2009 WL 5173705 (D. Del. Dec. 18, 2009) .................................................................... 11, 13

*Samsung Elecs. Co., Ltd. v. ON Semiconductor Corp.*,
  541 F.Supp.2d 645 (D.Del.2008) ...................................................................................... 4, 5

*SanDisk Corp. v. STMicroelectronics, Inc.*,
  480 F.3d 1372 (Fed.Cir.2007) ........................................................................................... 4, 6

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir.1970) .......................................................................................... 9, 10, 11

*Teleconference Systems v. Proctor & Gamble Pharmaceuticals, Inc.*,
  676 F.Supp.2d 321 (D. Del. 2009) .................................................................................. 11, 16

*Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*,
  982 F.2d 1520 (Fed. Cir .1992) ............................................................................................. 4

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*, C.A. No. 04-360(JJF),
  2005 WL 441077 (D. Del. Feb. 15, 2005) ...................................................................... 11, 13

*In re U.S.*,
  273 F.3d 380 (3d Cir.2001) ................................................................................................. 10

## Statutes

28 U.S.C. § 1331 .......................................................................................................... 1, 4, 17

28 U.S.C. § 1391(c) ............................................................................................................. 12

28 U.S.C. § 1404(a) ........................................................................................................... 1, 9

28 U.S.C. § 2201 ............................................................................................................... 4, 6

## INTRODUCTION

Defendant GeoTag Inc. ("GeoTag") moves the Court under Rule 12(b)(1) of the Federal Rules of Civil Procedure for an order dismissing Plaintiffs' complaint for declaratory judgment suit for lack of subject matter jurisdiction because Plaintiffs fail to allege an actual controversy between the parties as required under the Declaratory Judgment Act and 28 U.S.C. § 1331.

In the alternative, GeoTag moves the Court under 28 U.S.C. § 1404(a) for transfer to the United States District Court for the Eastern District of Texas, where the lawsuits alleged to give rise to this alleged case or controversy are currently pending.

## BACKGROUND

Plaintiffs Google, Inc. ("Google") and Microsoft Corporation ("Microsoft") (collectively, "Plaintiffs") filed their complaint against GeoTag on March 1, 2011.  Plaintiffs allege and GeoTag admits that GeoTag is the owner of U.S. Patent No. 5,930,474 ("the '474 Patent"). Complaint (D.I. 1) at ¶ 25.  Plaintiffs purport to invoke the jurisdiction of the Declaratory Judgment Act, and seek a declaration that unspecified claims of the '474 patent are invalid and that Plaintiffs' alleged customers do not infringe any unspecified valid claim of the '474 patent. Complaint at ¶¶ 33-41.  As Plaintiffs allege, the '474 patent has been and still is the subject of multiple prior and ongoing patent infringement lawsuits in the United States District Court for the Eastern District of Texas (the "Texas Actions"). Complaint at ¶ 27.

Plaintiffs premise subject matter jurisdiction under the Declaratory Judgment Act on the allegation that unspecified customers of Microsoft's Bing Maps and Google's Google Maps have been named as defendants in the Texas Actions. Complaint at ¶ 30.  Plaintiffs further allege that unspecified customers of Bing Maps and Google Maps have sought indemnity and defense from Plaintiffs in the Texas Actions. *Id.*  Plaintiffs speculate that other customers may be sued for

infringement of the '474 patent and may seek indemnity from Plaintiffs. *Id.* at ¶ 31.   According to Plaintiffs, the Texas Actions "have placed a cloud on Plaintiffs' web mapping services, have caused customers to seek relief from Plaintiffs, and have thus created an actual, justiciable controversy between Plaintiffs and GeoTag." *Id.* at ¶ 1.

The foundation and basis for Plaintiffs' allegation of a case or controversy is erroneous. GeoTag has never accused any defendant in the Texas Actions of infringing the '474 patent on the basis, in whole or part, of Bing Maps or Google Maps. Ex. A at ¶ 15.   None of the complaints in the Texas actions accuse any defendant of infringement, in whole or part, based upon Bing Maps or Google Maps. *Id.* at ¶ 16.   To the extent any defendants in the Texas Actions display Bing Maps or Google Maps on their websites, those maps or mapping services are not, and have never been, accused of infringing the '474 patent by GeoTag. *Id.* at ¶ 17.

GeoTag is a Delaware corporation that is registered to do business in Texas. Declaration of Elizabeth Morgan, attached hereto as Exhibit A at ¶ 7.   GeoTag's headquarters and sole office is located in Frisco, Texas, *Id.* at ¶ 8, which is located within the Eastern District of Texas. GeoTag has no business operations, offices or employees in Delaware. Ex. A at ¶ 10.   The totality of GeoTag's electronic documents that concern the '474 patent, or that could possibly be construed as relevant to this action, reside in GeoTag's office in Frisco, Texas or in the offices of its counsel in Longview, Texas or Houston, Texas. *Id.* at ¶ 11.   Longview, Texas is located in the Eastern District of Texas, and Houston, Texas is located in the Southern District of Texas. GeoTag's hardcopy documents that concern the '474 patent, or that could possibly be construed as relevant to this action, reside in GeoTag's office in Frisco, Texas and/or in the offices of GeoTag's counsel in Houston and Longview, Texas. Ex. A at ¶ 12.   Substantially all of GeoTag's

business activities, including the meetings of GeoTag's Board of Director's take place in the Eastern District of Texas. *Id.* at ¶ 9.

The first suit alleging infringement of the '474 patent was brought by Geomas (International) Limited ("Geomas UK") on November 15, 2006 in the United States District Court for the Eastern District of Texas, Marshall Division. *Id.* at ¶ 14.   The case was styled *Geomas (International) Limited v. Idearc Media Services West, Inc*., No. 2:06-cv-00475-CE. *Id.* After approximately three years of litigation in the Eastern District (which included a *Markman* order construing the claims of the '474 patent) and less than a month before trial, the case was settled. *Id.*

Microsoft is a Washington corporation with its principal place of business in Redmond, Washington. Complaint at ¶ 2.   Google is a Delaware corporation with its principal place of business in Mountain View, California. Complaint at ¶ 3.   Neither Microsoft nor Google allege that they have, or that anyone relevant to the suit has, any substantial business operations, employees or offices in Delaware.   Neither Microsoft nor Google alleges that there are any documents or witnesses relevant to this case located in Delaware.

<u>**ARGUMENT AND AUTHORITIES**</u>

I.   **Plaintiffs' Complaint Should Be Dismissed Under FRCP 12(b)(1) For Lack of Subject Matter Jurisdiction.**

A.   **Subject Matter Jurisdiction Under the Declaratory Judgment Act.**

For declaratory judgment jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 to be present, there must be an "actual case or controversy" between the parties. *Medimmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S.Ct. 764, 778, 166 L.Ed.2d 604 (2007). *See* 28 U.S.C. § 1331. "[E]ven assuming [the existence of] an actual controversy, the exercise of a court's jurisdiction over a declaratory judgment action is discretionary." *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.,* 982 F.2d 1520, 1526 (Fed. Cir. 1992) (citations omitted).  Subject matter jurisdiction over a declaratory judgment suit requires that "the dispute be 'definite and concrete, touching the legal relations of the parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of conclusive character.'" *Medimmune, id.* (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41 (1937)).  Some affirmative act by the patentee asserting rights under the patent based on certain identified ongoing or planned activity of the declaratory judgment plaintiff is required in order for declaratory judgment jurisdiction to arise. *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1380-81 (Fed.Cir.2007).  The declaratory judgment plaintiff bears the burden of proving that jurisdiction exists. *Samsung Elecs. Co., Ltd. v. ON Semiconductor Corp.,* 541 F.Supp.2d 645, 648 (D.Del.2008) (citing *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997)).  The absence of an overt, specific act directly targeting the declaratory judgment plaintiff is a significant hurdle to a finding of jurisdiction under the Declaratory Judgment Act.  *See Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp.2d 606, 610 (D. Del. 2009).  A belief by the patent

4

owner that the declaratory judgment plaintiff is infringing is fundamental to the existence of a real controversy between the parties. *Id.*

In reviewing a motion filed under Rule 12(b)(1), the court must first identify whether the motion presents a facial or factual challenge to the court's subject matter jurisdiction. *See Samsung Elecs. Co., Ltd. v. ON Semiconductor Corp.,* 541 F.Supp.2d 645, 648 (D.Del.2008). Where the movant presents a facial challenge, the court must accept all factual allegations in the complaint as true and may only consider the complaint and documents referenced therein or attached thereto. *Id.* (citing *Gould Elecs., Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000)). Where the movant presents a factual challenge, the court need not confine its consideration to the allegations of the complaint nor accept those allegations as true. *Mortensen v. First Fed. Sav. & Loan,* 549 F.2d 884, 891 (3d Cir.1977).  Rather, the court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, "to resolve any factual issues bearing on jurisdiction." *Samsung,* 541 F.Supp.2d at 648 (citing *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997)). "[P]laintiff bears the burden of proving that [subject matter] jurisdiction exists." *Id.*

> **B.    Accepting the Factual Allegations in the Complaint as True, Subject Matter Jurisdiction is Lacking Because Plaintiffs Have Failed to Show an Actual Controversy Between Them and GeoTag.**

Plaintiffs' Complaint alleges subject matter jurisdiction under the Declaratory Judgment Act based solely on the assertion that some of their customers for Google Maps and Bing Maps (collectively referred to as "web mapping services") have been sued by GeoTag for infringement of the '474 patent in the Texas Actions. Complaint at ¶¶ 1, 30 and 31.  Plaintiffs find the actual, justiciable controversy required in the alleged cloud that the Texas Actions have placed on their web mapping services and the demands of some customers for indemnity. *Id.* at ¶ 1.  Plaintiffs

5

do not and cannot allege that they have ever been sued by GeoTag for any reason.  Plaintiffs do not and cannot allege that they have ever been accused of infringement of the '474 patent by GeoTag.  Plaintiffs do not and cannot allege that they have ever communicated with anyone associated with GeoTag about the '474 patent.  Most importantly, Plaintiffs' do not and cannot allege that GeoTag's infringement claims in the Texas Actions actually implicate Bing Maps or Google Maps, in whole or part.

The "facts" pled by Plaintiffs, even if assumed to be true, are facially insufficient to support subject matter jurisdiction under the Declaratory Judgment Act.  They cannot form the basis for an "actual controversy" as required by 28 U.S.C. § 2201 because they do not identify some affirmative act by GeoTag asserting its patent rights based on any identified ongoing or planned activity of either Google or Microsoft. *See SandDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1380-81 (Fed.Cir.2007).  Microsoft and Google have pled no overt, specific act of GeoTag directly targeting them.  Thus, the Complaint fails to set forth any sufficient basis for subject matter jurisdiction. *See Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp.2d 606, 610 (D. Del. 2009).

This Court's ruling in *Edmunds* is instructive.  There, the patent owner had filed several patent infringement suits against the declaratory judgment plaintiff's customers. *Edmunds*, 598 F. Supp.2d at 607-608.  The declaratory judgment plaintiff argued that the patent owner's general public statements about enforcing its patent, coupled with a pattern of litigation on that patent against the declaratory judgment plaintiff's customers, manifested the patent owner's intent to enforce its rights against the declaratory judgment plaintiff. *Id.* at 609.  According to the declaratory judgment plaintiff, those facts were sufficient to show the existence of an actual controversy between the parties. *Id.*

This Court disagreed, and found there to be no requisite threat or other explicit action on the part of the patentee from the patent owner's general statements and infringement suits against the declaratory judgment plaintiff's customers. *Id.* at 610. Accordingly, the Court found that the declaratory judgment plaintiff had failed to carry its burden regarding the existence of an actual controversy and dismissed the declaratory judgment complaint. *Id.*

Also instructive is this Court's ruling in *Microsoft Corp. v. WebXchange Inc.*, 2009 WL 3534845 (D. Del. Oct. 30, 2009). There, the patent owner had brought several infringement suits against Microsoft customers who used Microsoft's MapPoint product. Microsoft argued that these suits created a controversy between the patent owner and Microsoft that was sufficient to form the basis of declaratory judgment jurisdiction. *Id.* at *2. However, the Court disagreed, concluding that WebXchange's infringement suits against Microsoft customers who used MapPoint did not create an actual controversy. *Id.* at *4. In arriving at its conclusion, the Court noted that there was no indication that WebXchange was intentionally engaging in scare-the-customer tactics, or using Microsoft's customers as proxies to apply pressure to Microsoft. *Id.* The Court went on to reason that even if any of the customers in the related patent infringement suits were ultimately found to have infringed WebXchange's patents-in-suit, such infringement would not necessitate a finding that Microsoft itself infringed by its MapPoint and Virtual Earth programs. *Id.* In addition, the Court noted that a declaration that Microsoft's use of MapPoint did not infringe the patents-in-suit would not prevent WebXchange from suing other Microsoft customers for infringement based on their use of MapPoint. *Id.* Finally, the Court concluded that the alleged damage caused by the pending infringement suits to Microsoft's relations with its customers, did not create a controversy between the parties sufficient to confer declaratory judgment jurisdiction. *Id.*

Here, Plaintiffs make no allegations in support of declaratory judgment jurisdiction other than the Texas Actions in which an unspecified number of unidentified customers of Bing Maps and Google Maps are allegedly defendants[1].  Under well-reasoned precedent, including in this District, including *Edmunds* and *WebXchange*, Plaintiffs have failed to plead facts which, if true, would provide the requisite "actual controversy" with GeoTag.  There is no allegation that GeoTag has taken any kind of direct, affirmative action against either of the Plaintiffs related to the '474 patent.  In fact, there is no allegation that GeoTag has ever had any communication with Plaintiffs about that patent.  There is no allegation that GeoTag has alleged that Bing Maps or Google Maps is infringing the '474 patent.  There is no allegation that GeoTag is engaging in scare-the-customer tactics or using Plaintiffs' customers to apply pressure to Plaintiffs.  Plaintiffs do not seek a declaration of non-infringement for themselves, but, instead seek that relief for unspecified non-parties.  Other than vague allegations about "clouds" on their products and indemnity demands by unspecified customers, Plaintiffs have alleged no injury to themselves.  In short, there is no justiciable controversy between either of the Plaintiffs and GeoTag, and this Court should dismiss their suit for lack of subject matter jurisdiction.

---

[1] Plaintiffs apparently seek to stand in the shoes of their customers who have been accused of infringement in order to establish subject matter jurisdiction for a parallel declaratory judgment suit in Delaware.  This is a transparent attempt to circumvent the first to file rule. *See E.E.O.C. v. Univ. of Pa.,* 850 F.2d 969, 976-79 (3d Cir.1988).

**C.    To the Extent the Court Finds it Necessary to Consider Evidence Outside the Complaint, the Evidence is Incontrovertible that Declaratory Jurisdiction is Lacking.**

The simple reason that Plaintiffs have not pled sufficient facts for declaratory judgment jurisdiction is because such facts do not exist.  GeoTag has never accused any defendant in the Texas Actions of infringing the '474 patent on the basis, in whole or part, of Bing Maps or Google Maps. Ex. A at ¶ 15.  None of the complaints in the Texas actions accuse any defendant of infringement, in whole or part, based upon Bing Maps or Google Maps. *Id.* at ¶ 16.  To the extent any defendants in the Texas Actions display Bing Maps or Google Maps on their websites, those maps or mapping services are not, and have never been, accused of infringing the '474 patent by GeoTag. *Id.* at ¶ 17.

**II.    In the Alternative, the Court Should Transfer the Case Under 28 U.S.C. § 1404(a) to the Eastern District of Texas For the Convenience of the Witnesses and Parties and in the Interest of Justice.**

In the event that the Court does not grant GeoTag's motion to dismiss for lack of subject matter jurisdiction, it should transfer the case under 28 U.S.C. § 1404(a) to the United States District Court for the Eastern District of Texas, where GeoTag has its principal place of business, where key witnesses and documents are found, where the Texas Actions are pending, and where the Court has previously construed the claims of the '474 patent.

**A.    The Legal Standard for Transfer Under 28 U.S.C. § 1404(a).**

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  In determining whether to transfer a case pursuant to section 1404(a), courts must first decide whether the plaintiff could have brought the case in the transferee forum. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3d Cir.1970).  A district is one in

which an action "might have been brought" if that district has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue. *Id.*

Assuming that this initial inquiry is answered in the affirmative, courts in the Third Circuit then must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (internal quotations and citation omitted). In the Third Circuit, courts weigh six private and five public interests to assist in determining whether transfer is appropriate. *Id.* Private interests include: (1) the plaintiffs' forum preference as manifested by the plaintiffs' original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

The moving party has the burden of showing that a change of venue is appropriate. *Motorola, Inc. v. Research In Motion Ltd. ("Motorola"),* 2008 WL 3925278, at *1 (D. Del. Aug. 26, 2008). However, while the burden is on the movant, the movant is not required to show truly compelling circumstances, but rather that "all relevant things considered, the case would be better off transferred to another district." *In re U.S.,* 273 F.3d 380, 388 (3d Cir. 2001) (citation omitted).

Ordinarily a court will give "paramount consideration" to a plaintiff's choice of forum. *See Shutte,* 431 F.2d at 25.   However, if the plaintiff has chosen to litigate away from its "home turf," the defendant's burden is lessened. *Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.,* C.A. No. 04-360(JJF), 2005 WL 441077, at *2 (D. Del. Feb. 15, 2005) (citation omitted).   Under § 1404(a) "home turf" refers to a corporation's principal place of business. *Id.*   The movant's burden is similarly lessened where the operative facts occurred outside of Delaware. *Qinetiq Limited v. Oclaro, Inc.*, 2009 WL 5173705 at *3 (D. Del. Dec. 18, 2009).   *See also, Eagle Traffic Control v. James Julian, Inc.,* 933 F. Supp. 1251, 1259 (E.D.Pa.1996) (noting that "courts consistently hold that a '[plaintiff's] choice is deserving of less weight where none of the operative facts of the action occur in the forum selected by the plaintiff.' "); *Mekiki Co., Ltd. v. Facebook, Inc.*, 2010 WL 2348740 at *3 (D. Del. June 7, 2010) (plaintiff's forum choice afforded less deference because Delaware was not Plaintiff's home forum and because the operative facts of the lawsuit occurred outside of Delaware).   Transfer is favored when none of the parties have facilities in Delaware nor maintain their principal place of business in Delaware. *Alloc, Inc. v. Unilin Décor N.V.*, 2006 WL 3050815 at *2 (D. Del. Oct. 26, 2006).

The convenience of the parties and witnesses, and the location of relevant evidence, are the most important factors in the § 1404(a) analysis. *Teleconference Systems v. Proctor & Gamble Pharmaceuticals, Inc.*, 676 F.Supp.2d 321, 331 (D. Del. 2009).   Transfer is strongly favored where key witnesses and documents are located in the transferee district and are easier to access than in Delaware. *Id.*

Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *Brunswick Corp. v. Precor Inc.,* 2000 U.S. Dist. LEXIS 22222, at *7 - *8 (D. Del. Dec. 12, 2000).   Factors supporting a decision to transfer

include whether the litigation in the transferee forum involves: (1) the same parties, (2) related or similar technologies for the judge to become familiar with, and (3) a common field of prior art. *Cashedge, Inc. v. Yodlee, Inc.*, 2006 WL 2038504 at *2 (D. Del. July 19, 2006); *see, also, Dish Network Corporation v. TIVO, Inc.*, 2009 WL 1529836 at *2 (D. Del. May 28, 2009) (transferring a patent case to the Eastern District of Texas based on the prior experience of that Court with the patent, the technology and the parties); *Alloc, Inc. v. Unilin Décor N.V.*, 2006 WL 3050815 at *3 (D. Del. Oct. 26, 2006) (transferring a patent case to the Eastern District of Wisconsin where first-filed litigation on the same patents was pending).

### B.      It Is Beyond Dispute That Plaintiffs Could Have Brought This Suit in the Eastern District of Texas

Putting aside the lack of subject matter jurisdiction discussed above, it is beyond dispute that Plaintiffs could have brought the suit against GeoTag in the transferee forum – the United States District Court for the Eastern District of Texas.  Assuming for the purposes of this alternative relief only that the Court finds subject matter jurisdiction under the Declaratory Judgment Act, the district court in Texas would also have subject matter jurisdiction for the same reasons.  GeoTag's headquarters and sole office is located in the Eastern District of Texas and it conducts substantially all of GeoTag's business activities there. Ex. A at ¶¶ 8 and 9.  Thus, the district court there would have personal jurisdiction over GeoTag.  Because the court would have personal jurisdiction over GeoTag, and GeoTag is a corporation, venue would be proper in the Eastern District of Texas as well. 28 U.S.C. § 1391(c).  Thus, the Eastern District of Texas is a jurisdiction in which the Plaintiffs could have brought this suit.

### C.     The Private Interest Factors Strongly Favor Transfer

The six *Jumara* private interest factors strongly favor transfer to the Eastern District of Texas.  The weight which would normally be accorded to Plaintiffs' choice of Delaware as the forum is significantly reduced here.  First, Delaware is not the "home turf" for either Google or Microsoft, which have their principal places of business in Mountain View, California and Redmond, Washington respectively. Complaint at ¶¶ 2 and 3.  Neither appears to have any offices or employees in Delaware.  Moreover, the operative facts occurred outside of Delaware. Plaintiffs allege that their declaratory judgment claims arise out of the Texas Actions, not anything that happened in Delaware.  Under these circumstances, Plaintiffs' choice of Delaware as a forum is not entitled to great weight, and transfer to the Eastern District of Texas, which has a much greater connection to the operative facts, the parties, the witnesses and the relevant documents, is appropriate.[2] *Mekiki*, 2010 WL 2348740 at *3; *Trilegiant*, 2005 WL 441077 at *2; *Qinetiq*, 2009 WL 5173705 at *3; *Eagle Traffic*, 933 F. Supp. at 1259.

The remainder of the six private interest factors strongly favors transfer to the Eastern District of Texas.  The Eastern District of Texas is GeoTag's choice of forum.  Plaintiffs' declaratory judgment claims are based on their allegations that unidentified customers have been sued in the Eastern District of Texas.  Thus, Plaintiffs' claims arose in the Eastern District of Texas – not Delaware.

The convenience of the parties and witnesses, and the location of relevant evidence - the most important factors in the § 1404(a) analysis -  all strongly favor transfer.  The Eastern District of Texas is a much more convenient venue than Delaware for all of the parties.  GeoTag

---

[2] That GeoTag and Google are incorporated in Delaware is not dispositive of a motion to transfer. *See APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.,* 295 F.Supp.2d 393, 398-99 (D. Del. 2002) ("Where an alternative forum is more convenient and has more substantial connection with the litigation, 'incorporation in Delaware will not prevent transfer.'").

has its only office and headquarters there. Ex. A at ¶ 8.  Its CEO (and primary inventor of the '474 patent), President and Chief Financial Officer, and Vice-President of Legal Affairs are based there. Ex. A at ¶¶ 2 - 4 and 6.  GeoTag has no operations or employees in Delaware. Ex. A at ¶ 10.  The Eastern District of Texas is also arguably more convenient for Microsoft and Google.  Google's operations in Mountain View, California and Microsoft's operations in Redmond, Washington are much closer to the Eastern District of Texas than to Delaware.  Transfer is favored here because none of the parties have facilities in Delaware nor maintain their principal place of business here. *Alloc,* 2006 WL 3050815 at *2.

The Eastern District of Texas is also a much more convenient venue for the witnesses.  GeoTag is aware of no witnesses with relevant evidence residing in Delaware.  Thus, this Court would not have subpoena power over any witnesses in the case.  By contrast, the Eastern District of Texas would have subpoena power over at least GeoTag's employees, including John Veenstra, the primary inventor of the '474 patent.  To the extent that Google and Microsoft have any witnesses with relevant knowledge, they are likely located in California and Washington, both of which are much closer to the Eastern District of Texas than to Delaware.  Further, Plaintiffs have not alleged that their unspecified customers have witnesses or documents more convenient to the District of Delaware than to the Eastern District of Texas.

The "location of books and records" factor also favors transfer.  It is highly unlikely that any documents of any party would be found in Delaware.  GeoTag has no documents that concern the '474 patent or that could possibly be construed as relevant to this action located in Delaware. Ex. A at ¶ 13.  Plaintiffs' declaratory judgment action, if allowed to proceed, would necessarily focus on the conception and reduction to practice of the claimed invention, and the '474 patent, the construction of its claims, the file history, the documents of the inventors, and

any prior art activities by the patentee.  Those documents are almost exclusively in the possession of GeoTag.  The totality of GeoTag's electronic and hardcopy documents that concern the '474 patent, or that could possibly be construed as relevant to this action, reside in GeoTag's office in Frisco, Texas or in the offices of its counsel in the Eastern and Southern Districts of Texas. Ex. A at ¶¶ 11 and 12.  To the extent that Google or Microsoft have any documents relevant to the litigation, those would likely reside in either Mountain View, California or Redmond, Washington, both of which are substantially closer to the Eastern District of Texas than Delaware.  Further, the relevant documents of Plaintiffs' unspecified customers are already going to be produced in the Texas Actions pending in the Eastern District of Texas.

### D.    The Public Interest Factors Also Strongly Favor Transfer

The *Jumara* public interest factors also strongly favor transfer to the Eastern District of Texas.  Substantially all of GeoTag's physical assets are located in Texas.  GeoTag has no physical assets in Delaware.  Plaintiffs would have an easier time enforcing any judgment against GeoTag in the Eastern District of Texas than in Delaware.  Thus, the "enforceability of the judgment" factor weighs strongly in favor of transfer.

The "practical considerations" factor includes judicial efficiency regarding the ease, speed, or expense of trial. *See Cashedge,* 2006 WL 2038504 at *2.  Considerations of judicial efficiency overwhelmingly weigh in favor of transfer.  The Court in the Eastern District of Texas has already presided over a suit involving the '474 patent and issued an order construing its claims. Ex. A at ¶ 14.  Because that suit came within a month of going to trial, it is safe to assume that the Court is familiar with the '474 patent, the relevant technology and the prior art. This consideration alone weighs heavily in favor of transfer. *See Dish Network*, 2009 WL 1529836 at *2 (transferring a patent case to the Eastern District of Texas based on the prior

experience of that Court with the patent, the technology and the parties).  Moreover, it is in the interest of justice to permit this suit and the ongoing and first-filed Texas Actions, which involve the same patent, the same technology and the same prior art, to proceed before one court. *See Brunswick.,* 2000 U.S. Dist. LEXIS 22222, at *7 - *8; *Alloc*, 2006 WL 3050815 at *3 (transferring a patent case to the Eastern District of Wisconsin where first-filed litigation on the same patents was pending).

The relative "court congestion" factor also weighs significantly in favor of transfer. GeoTag asks the Court to take judicial notice of the Judicial Caseload Statistics posted on the website of the federal court system: www.uscourts.gov.  Table C-5 shows that as of March 31, 2010, the median time to trial for a civil case in the District of Delaware was 30.3 months while it was only 25.8 months in the Eastern District of Texas.  The relative administrative difficulty resulting from more congested courts in Delaware weighs in favor of transferring this case to the less congested Eastern District of Texas.

The "local interest" factor also weighs in favor of transfer.  Delaware has no connection to the controversy between Plaintiffs and GeoTag over the '474 patent.  The Eastern District of Texas, on the other hand, has a significant interest in hearing a dispute involving GeoTag and the '474 patent.  GeoTag has its headquarters and sole office in the Eastern District of Texas.  The primary inventor of the '474 patent resides there.  The lawsuits asserting the '474 patent that allegedly gave rise to Plaintiffs' declaratory judgment action are pending there.

Finally, because Plaintiffs action is not a diversity case, the "familiarity of the trial judge with the applicable state law" factor is irrelevant. *Teleconference Systems v. Proctor & Gamble Pharmaceuticals, Inc.*, 676 F.Supp.2d 321, 335 (D. Del. 2009).

On balance, the *Jumara* private and public interest factors strongly favor transfer. Plaintiffs' choice of Delaware as a forum is entitled to reduced weight because Delaware is not the "home turf" for either Google or Microsoft and because Delaware has no connection to the operative facts of the case.  There appear to be no witnesses or relevant documents in Delaware. By way of contrast, the Eastern District of Texas is GeoTag's principal place of business.  To the extent that Plaintiffs have any justiciable claims, those are alleged to have arisen out of the Texas Actions.   Additionally, key witnesses and all of GeoTag's documents are located in Texas. Moreover, the Court in the Eastern District of Texas has previously presided over an infringement suit involving the '474 patent, presided over a *Markman* hearing and issued an order construing its claims.  Finally, multiple first-filed suits alleging infringement of the '474 patent are pending there.

## CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' complaint for declaratory judgment for lack of subject matter jurisdiction because it fails to allege an actual controversy between the parties as required under the Declaratory Judgment Act and 28 U.S.C. § 1331.  In the alternative, the Court should transfer this suit to the United States District Court for the Eastern District of Texas, where the lawsuits alleged to give rise to this alleged controversy are currently pending.

Respectfully submitted,

By:    */s/ Kenneth L. Dorsney*
Kenneth Dorsney (Bar No. 3726)
Mary B. Matterer (Bar No. 2696)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801
(302) 888-6960
kdorsney@morrisjames.com
mmatterer@morrisjames.com

John J. Edmonds
Michael J. Collins
Stephen F. Schlather
COLLINS, EDMONDS & POGORZELSKI, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
jedmonds@cepiplaw.com
mcollins@cepiplaw.com
sschlather@cepiplaw.com

COUNSEL FOR DEFENDANT
GEOTAG INC.

April 29, 2011

18

# EXHIBIT  A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICROSOFT CORPORATION, et al., | § |
| | § |
| v. | §   C.A. No. 11-cv-175 (BMS) |
| | § |
| GEOTAG INC. | § |
| | § |

## DECLARATION OF ELIZABETH MORGAN

I, **ELIZABETH MORGAN**, declare under penalty of perjury as follows:

1. My name is Elizabeth Morgan. I am over the age of twenty-one (21) years, am competent to testify on the matters stated herein, have personal knowledge of the facts and statements in this declaration and declare that each of the facts is true and correct.

2. I am a resident of Plano, Texas.

3. I am the Vice-President of Legal Affairs of the defendant, GeoTag Inc.

4. Mr. John Veenstra is the primary named inventor of U.S. Patent No.5,930,474 (the "'474 patent"). He is also the Chief Executive Officer of GeoTag, and he resides in Plano, Texas. Mr. Veenstra has resided in Plano since December of 2007.

5. The other named inventors for the '474 patent are Joan Nagelkirk of Chicago, Illinois and Peter Dunworth of Pleasanton, California.

6. Mr. Lawrence Howorth is the President and Chief Financial Officer of GeoTag. He is a resident of Plano, Texas.

7. GeoTag is a Delaware corporation that is registered to do business in the State of Texas.

8. GeoTag's headquarters and sole office is located at 2591 Dallas Parkway, Ste 505, Frisco, Collin County, Texas 75034.

9. Substantially all of GeoTag's business activities, including meetings of GeoTag's Board of Directors, take place in the Eastern District of Texas.

10. GeoTag has no business activities, offices or employees in Delaware.

11. The totality of GeoTag's electronic documents that concern the '474 patent or that could possibly be construed as relevant to this action, reside in GeoTag's office in Frisco, Texas.

12. GeoTag's hardcopy documents that concern the '474 patent or that could possibly be construed as relevant to this action, reside in GeoTag's office in Frisco, Texas and/or in the offices of GeoTag's counsel in Houston, Texas and Longview, Texas.

13. GeoTag has no documents that concern '474 patent, or that could possibly be construed as relevant to this action in Delaware.

14. On November 15, 2006, Geomas (International) Limited ("Geomas UK") filed a patent infringement suit in this Court alleging infringement of the '474 Patent. The case was styled Geomas (International) Limited, v. Idearc Media Services-West Inc., No. 2:06-cv-00475-CE. After approximately three years of litigation (which included a *Markman* order) and less than a month before trial, the case was settled.

15. GeoTag has never accused any defendant in the Texas Actions of infringing the '474 patent based upon a map provided or generated by Bing Maps or Google Maps. GeoTag has never explicitly or directly, or to my knowledge implicitly or indirectly, accused any defendant in the Texas Actions of infringing the '474 patent on the basis, in whole or part, of Bing Maps or Google Maps.

16. None of the complaints in the Texas actions accuse Google Maps or Bing Maps as infringing methods, systems or apparatuses. None of the complaints in the Texas actions explicitly or directly, or to my knowledge implicitly or indirectly, accuse any defendant of infringement, in whole or part, based upon Bing Maps or Google Maps.

17. To the extent any defendants in the Texas Actions display Bing Maps or Google Maps on their websites, those maps or mapping services are not, and have never been, accused of infringing the '474 patent by GeoTag.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Frisco, TX        on this 29th day of April, 2011.

Elizabeth Morgan