# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MICROSOFT CORPORATION and GOOGLE INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| - vs. - | ) ) ) | |
| GEOTAG, INC., | ) ) | Case No. 1:11-cv-00175-BMS |
| Defendant. | ) ) ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION.................................................................................1

II. PERTINENT FACTS...........................................................................3

    A.  GeoTag Is a Delaware Corporation in the Business of
        Filing Lawsuits ....................................................................3

    B.  GeoTag Has Sued More Than 300 Defendants, Including
        Mapping Service Providers, in the Eastern District of Texas ..............4

    C.  The Claims of the '474 Patent Relate to Searches of a
        Hierarchical Geographical Database With Topical Entries
        That Are Dynamically Replicated .......................................5

    D.  Plaintiffs' Customers Are Accused of Infringing Based on
        Their Store Locators ...........................................................6

    E.  Plaintiffs' Customers Have Sought Indemnity From
        Plaintiffs ............................................................................7

    F.  GeoTag Refuses to Confirm That It Will Not Accuse
        Plaintiffs' Customers of Infringement Based on Their Use
        of Plaintiffs' Services and Has Refused to Allow Relevant
        Discovery ...........................................................................7

III. THE MOTION TO DISMISS SHOULD BE DENIED ...................................8

    A.  A Justiciable Controversy Exists Because GeoTag Has
        Sued Plaintiffs' Customers ................................................8

    B.  GeoTag's Authorities Are Distinguishable .......................11

IV. THE CASE SHOULD NOT BE TRANSFERRED .......................................12

    A.  Plaintiff's Choice of Forum Is Paramount and Favors This
        Venue ................................................................................12

    B.  Plaintiffs' Choice of Forum Is Also Entitled to Precedence
        Under the Customer Suit Exception ..................................14

    C.  The Convenience of the Parties and Witnesses Favors This
        Venue ................................................................................15

    D.  Court Congestion and Justice Favor This Court...............17

    E.  The Texas Cases Will Be Unmanageable .........................19

V.  CONCLUSION..................................................................................20

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Albert Fadem Trust v. Duke Energy Corp.*,
  214 F. Supp. 2d 341 (S.D.N.Y. 2002) ............................................................... 16

*Alfred Hofmann, Inc. v. Knitting Machines Corp.*,
  123 F.2d 458 (3d Cir. 1941) ............................................................................. 10

*Arris Group, Inc. v. British Telecomm. PLC*,
  No. 2010-1292, 2011 WL 1899112 (Fed. Cir. May 19, 2011) ...................... 8, 9, 10

*Boston Scientific Corp. v. Johnson & Johnson Inc.*,
  532 F. Supp. 2d 648 (D. Del. 2008) ................................................................ 12, 13

*Carl Zeiss Meditec, Inc. v. Optovue, Inc.*,
  No. C.A. 10-084-GMS, 2011 WL 1419714 (D. Del. Apr. 13, 2011) .............. 13, 16

*Codex Corp. v. Milgo Elec. Corp.*,
  553 F.2d 735 (1st Cir. 1977) ............................................................................ 14

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*,
  No. 01-199-SLR, 2001 WL 1617186 (D. Del. Nov. 28, 2001) ...................... 15, 17

*Delphi Corp. v. Auto. Tech. Int'l, Inc.*,
  No. 08-CV-11048, 2008 WL 2941116 (E.D. Mich. July 25, 2008) ................ 14

*Edmunds Holding Co. v. Autobytel, Inc.*,
  598 F. Supp. 2d 606 (D. Del. 2009) ................................................................ 12

*Fujitsu Ltd. v. Nanya Tech. Corp.*,
  No. C 06-6613 CW, 2008 WL 3539503 (N.D. Cal. Aug. 12, 2008) .............. 11

*Girdler Corp. v. E.I. DuPont de Nemours & Co.*,
  56 F. Supp. 871 (D. Del. 1944) ........................................................................ 10

*Honeywell Int'l Inc. v. Audiovox Commc'n Corp.*,
  No. CIV. A. 04-1337-KAJ, 2005 WL 2465898 (D. Del. May 18, 2005) ........ 15, 19

*ICU Med., Inc. v. Rymed Techs., Inc.*,
  No. CIV. A. 17-468-JJF, 2008 WL 205307 (D. Del. Jan. 23, 2008) .............. 19

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) ........................................................................ 19

*Intel Corp. v. Broadcom Corp.*,
  167 F. Supp. 2d 692 (D. Del. 2001) ................................................................ 13, 15

# TABLE OF AUTHORITIES
## (continued)

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990) ............................................................ 14

*Magsil Corp. v. Seagate Tech.*,
  No. CIV. A. 08-940, 2009 WL 1259043 (D. Del. Apr. 30, 2009)................... 15, 19

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)............................................................................ 8, 12

*Microchip Tech., Inc. v. Chamberlain Group, Inc.*,
  441 F.3d 936 (Fed. Cir. 2006) ............................................................ 12

*Micron Technology, Inc. v. Rambus Inc.*,
  No. 2009-1263, 2011 WL 1815975 (Fed. Cir. May 13, 2011)............................ 13

*Microsoft Corp. v. Phoenix Solutions, Inc.*,
  741 F. Supp. 2d 1156 (C.D. Cal. 2010).................................................... 10

*Microsoft Corp. v. WebXchange, Inc.*,
  No. CA 09-484-JJF, 2009 WL 3534845 (D. Del. Oct. 30, 2009)................... 11, 12

*Minebea Co. v. Papst*,
  444 F. Supp. 2d 68 (D.D.C. 2006), *appeal dismissed per stipulation*, 224 Fed. Appx.
  962 (Fed. Cir. 2007)............................................................................ 10

*Monolithic Power Sys., Inc. v.02 Micro Int'l, Ltd.*,
  No. 607-2363 CW, 2008 WL 3266647 (N.D. Cal. Aug. 6, 2008)................... 10, 12

*Nice Systems, Inc. v. Witness Systems, Inc.*,
  No. CIV A 06-311 JJF, 2006 WL 2946179 (D. Del. Oct 12, 2006)............... 13, 15

*Procter & Gamble Co. v. McNeil-PPC, Inc.*,
  No. 08-CV-251-BBC, 2008 WL 3992766 (W.D. Wis. Aug. 25, 2008) ............... 18

*R2 Tech., Inc. v. Intelligent Sys. Software, Inc.*,
  No. CIV.A. 02-472-GMS, 2002 WL 31260049 (D. Del. Oct. 9, 2002) ............... 13

*Ricoh Co. v. Aeroflex, Inc.*,
  279 F. Supp. 2d 554 (D. Del. 2003)....................................................... 14, 15

*Spread Spectrum Screening, LLC v. Eastman Kodak Co.*,
  No. 10 C 1101, 2010 WL 3516106 (N.D. Ill. Sept. 1, 2010) .............................. 14

*Upjohn Co. v. Riahom Corp.*,
  No. CIV. A. 86-203 CMW, 1986 WL 7515 (D. Del. June 25, 1986).................. 16, 18

**TABLE OF AUTHORITIES**
**(continued)**

*WS Packaging Group, Inc. v. Global Commerce Group, LLC*,
   505 F. Supp. 2d 561 (E.D. Wis. 2007) ........................................................................... 10, 11

**OTHER CASES**

*Parallel Networks, LLC v. AEO, Inc.*,
   Civil Action No. 6:10-CV-275 (Docket No. 338, Mar. 15, 2011) ......................................... 20

**FEDERAL STATUTES**

28 U.S.C. § 1404 ................................................................................................................ passim

## I.      INTRODUCTION

Google Inc. and Microsoft Corporation filed this action because GeoTag, a Delaware corporation, has sued more than 200 users of their mapping services in the Eastern District of Texas.  GeoTag alleges that its patent—the '474 patent—covers websites that allow users to find store locations.  GeoTag has sued hundreds of Plaintiffs' customers (but not Google and Microsoft), who use Plaintiffs' mapping software and services to create store locators on their websites, in the hope of leveraging the specter of unmanageable lawsuits, that will take years to complete, into nuisance, cost-of-litigation settlements.

GeoTag seeks to dismiss or transfer this action.  It claims this Court lacks jurisdiction because it has never "accused any defendant in the Texas actions of infringing the '474 patent on the basis, in whole or part, of Bing Maps or Google Maps."  Declaration of Elizabeth Morgan (D.I. 11), ¶ 15.[1]  In the alternative, it seeks transfer to the Eastern District of Texas, under 28 U.S.C. § 1404 "in the interest of justice."  GeoTag's motion should be denied in its entirety.

A justiciable dispute arises where a supplier's customers are being threatened or sued for using the supplier's goods or services, particularly where customers seek indemnity.  To avoid this established law, GeoTag relies on cases finding no controversy where the supplier is not subject to any potential claim for direct or indirect infringement, and has no alleged indemnity obligation.  That situation may arise if the supplier's products are not a material part of the accused system and the supplier does not induce the specific customer acts accused of infringement.

These authorities, however, do not apply to the instant case.  Although GeoTag makes conclusory statements that it has not accused customers of infringing based on their use of Plaintiffs' mapping services, the evidence is to the contrary.  The '474 patent claims are directed to searching a geographic database for "topics."  Claim 1 of the patent, for example, is directed

---

[1] Following the submission of Ms. Morgan's declaration, GeoTag's counsel indicated that Ms. Morgan (who Plaintiffs understand is the wife of the GeoTag CEO, Mr. Veenstra) is no longer employed at GeoTag, and asked to file an identical declaration by Lawrence Howorth, the President and CFO of GeoTag.  Plaintiffs agreed.

to, among other things, a "database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics . . . ." For Plaintiffs' customers, the alleged "database of information organized into a hierarchy of geographical areas" originates with Plaintiffs' geocoding databases. Plaintiffs' customers are also able to use Plaintiffs' servers to host customer data, including their store locations. Because the relevant data and functionality can exist on Plaintiffs' servers and arise from Plaintiffs' services, Plaintiffs' products and services are a material part of the accused system and method, and the issue of infringement can be resolved without considering any customer-specific actions. In fact, because there are no relevant customer-specific activities, Plaintiffs' customers in the Texas cases will agree to be bound by any determination of infringement or invalidity with respect to Plaintiffs' products and services in this action.

Further, if GeoTag's claims against Plaintiffs' customers are unrelated to Plaintiffs' mapping services, GeoTag should be willing to covenant not to accuse such customers of infringement based on their use of such services. Plaintiffs offered to dismiss this action if GeoTag executed such a covenant, but GeoTag refused.

GeoTag's assertions are also inconsistent with it having sued other mapping service providers in the Texas cases. The services provided by those providers are not materially different from those provided by Plaintiffs. Finally, Plaintiffs' customers have demanded indemnity from Plaintiffs. As discussed below, this, alone, creates a justiciable controversy.

This case also should not be transferred. This Court has found that a plaintiff's choice of forum is "paramount," even if this district is not the location of its principal place of business. Both GeoTag and Google are also Delaware corporations. Further, courts have consistently held that suits involving manufacturers or suppliers take precedence over suits against customers, even where the customer suits are filed first. More importantly, GeoTag seeks transfer under 28 U.S.C. § 1404, which provides that transfer is appropriate only where it is for the "convenience of parties and witnesses, in the interest of justice." Marshall, Texas is less convenient than this

Court for the majority of witnesses. GeoTag has named only one material witness in the Eastern District of Texas. For the remaining witnesses, this Court is more convenient.

There is also no substantial relationship between Texas and this dispute. There are no mapping service providers based in the Eastern District of Texas. GeoTag is a non-practicing entity that was incorporated in the last year, just before it began filing lawsuits. Plaintiffs should not be able to manufacture venue simply creating a sham office in Texas.

Further, in this Court, the parties can have an orderly and expedited resolution of the claims. In contrast, the litigation in the Eastern District of Texas will take many years to complete and will be unmanageable given the task of coordinating with over 300 defendants. This is exacerbated by the fact that Judges Ward and Folsom, who have been assigned the GeoTag cases, have announced they are retiring from the bench. The delay and inevitable chaos in the Texas cases will unfairly prejudice Plaintiffs, who must wait years while their products suffer under the specter of GeoTag's baseless patent claims. Transfer is inconsistent with judicial economy and the orderly management of disputes, and does not promote the "interest of justice" required for a § 1404 transfer.

At the very least, the Court should give Plaintiffs an opportunity for discovery prior to dismissing or transferring this action. Such discovery will include the deposition of GeoTag's declarant(s) concerning the facts asserted in the declaration(s). These facts include the nature of GeoTag's business and its allegations against Plaintiffs' customers. Plaintiffs have requested such discovery, but GeoTag has refused.

This opposition is supported by the declarations of Ramsey Al-Salam, Keith Kinnan and Carlos Cuesta filed herewith. The declarations confirm the material facts cited below.

## II.    PERTINENT FACTS

### A.    GeoTag Is a Delaware Corporation in the Business of Filing Lawsuits

GeoTag was incorporated as a Delaware corporation on July 26, 2010, just prior to its filing of patent suits for alleged infringement of the '474 patent. Complaint, ¶ 19 (D.I. 1). GeoTag maintains a staff of three employees and purports to lease an "office" in Plano, Texas for

$395 per month, which contains nothing more than conference and utility facilities. [2]  *See* Amendment No. 2 to Form S-1 Registration Statement ("S-2") filed with the SEC on January 31, 2011, at 43, attached as Exhibit 5 to Declaration of Ramsey Al-Salam ("Al-Salam Decl.").[3] GeoTag's "business" is filing lawsuits and trying to generate income through quick settlements. GeoTag explicitly states to its investors:  "All of our revenue will be derived from our ability to negotiate and enforce settlement and licensing arrangements with unauthorized users of our 474 patented technology." *Id.* at 9.  According to its S-2 filing, GeoTag plans to pay off $2 million soon, and then needs over $1 million per year to service $30 million in debt due in 5 years.  *See id.* at 31-33.  If GeoTag defaults, it faces serious consequences, including the potential loss of the '474 Patent.  GeoTag admits its strategy is to sue hundreds of users of store locators on websites and obtain settlements in an "expeditious manner."  *Id.* at 8, 30.  Not long after filing its recent lawsuits, GeoTag sent letters to defendants in the Texas cases offering settlements.  Al-Salam Decl. ¶ 6.  GeoTag's strategy is clear—obtain nuisance cost settlements from customers to retire debt and avoid dealing with Plaintiffs, or the merits of the claims, at all costs.

**B.**     **GeoTag Has Sued More Than 300 Defendants, Including Mapping Service Providers, in the Eastern District of Texas**

In July 2010, not long after it was incorporated, GeoTag began filing lawsuits in the Eastern District of Texas for alleged infringement of the '474 patent.  The Texas litigation has swelled to 11 separate pending cases and more than 300 total defendants.[4]  Nine of the cases, involving all but 15 of the defendants, were filed in December 2010 or later.  *Id.*, ¶ 3.  Nothing of substance has yet occurred in these later cases.  *Id.*  Most of the defendants in these later cases are users of Plaintiffs' mapping services or the services of Where 2 Get It, Inc., a mapping

---

[2] It appears GeoTag has recently moved to an office park in Frisco, Texas.  *See* http://www.geotag.com/about_contact_us.html.

[3] GeoTag has conceded that the Court may construe evidence outside the pleadings to determine whether a controversy exists.  Def.'s Br. in Supp. of Mot. to Dismiss 5 (D.I. 11).

[4] The civil action numbers are as follows:  2:10-cv-00272-TJW; 2:10-cv-00265-TJW; 2:10-cv-00569-TJW; 2:10-cv-00570-TJW;  2:10-cv-00571-TJW; 2:10-cv-00572-TJW; 2:10-cv-00573-TJW; 2:10-cv-00575-TJW; 2:10-cv-00574-DF; 2:10-cv-00587-TJW; and 2:11-cv-00175-DF.

services provider that has also filed a declaratory judgment action in this Court. *Id.*, ¶ 4. All of the cases are assigned to Judge Ward and Judge Folsom, both of whom have announced they will be stepping down from the bench before the cases go to trial. *Id.*, ¶ 5.

The defendants in the Texas cases include providers of mapping services. In particular, Where 2 Get It is a defendant in 2:11-cv-00175-DF, and is accused of infringement by providing a "Business Locator and Product Locator" service. Complaint, ¶ 5. Similarly, Know-Where Systems, another map provider, has been sued in 2:10-cv-00569-TJW and is accused of infringement based upon its "locator provider at http:know-where.com." Complaint, ¶ 44. GeoTag has not explained the material difference between the services these named defendants provide and the mapping services provided by Microsoft and Google.

**C.      The Claims of the '474 Patent Relate to Searches of a Hierarchical Geographical Database With Topical Entries That Are Dynamically Replicated**

GeoTag's motion fails to describe the basis for its infringement allegations or even the nature of the '474 patent. The '474 patent describes a geographic database "organized in a hierarchy which descends from most universal to least universal." '474 patent at 8:59-9:4.[5] The geographic database has reference fields that contain values (*e.g.*, reference city, reference region, reference state, etc.) whose

> values are the parentage name keys related to the current entry, and provide the key to displaying related entries to the internet user, and are <u>automatically inherited</u> from the parent entry. These reference values are used to retrace the path back through the geographic hierarchy when the user wishes to return to a related (e.g., parent) location display screen.

'474 patent at 19:29-39 (emphasis added).

The claims are directed to a search engine that searches for topics in specific geographic areas, whereby the topic entries are "dynamically replicated" from broader areas to narrower areas. Claim 1 reads in part, for example, as follows:

---

[5] Citations are by column and line number.

> 1.  A system which associates on-line information with geographic areas, said system comprising:
>
> a computer network …; and
>
> an organizer executing in said computer network, wherein said organizer is configured to receive search requests …, said organizer comprising:
>
> > a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics; and
> >
> > a search engine … configured to search geographically and topically, said search engine further configured to select one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area wherein … at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area, said search engine further configure to search said topics within said selected geographical search area.

The other independent claims—claims 20, 26 and 31—have similar limitations, including the requirement of a search engine for searching a database of geographical areas, and the dynamic replication of an entry from a broader geographical area into a narrower area.

## D.   Plaintiffs' Customers Are Accused of Infringing Based on Their Store Locators

As reflected in its S-2, GeoTag considers the patent to cover all websites that have geographic store, dealer or product locators.  Al-Salam Decl. Ex. 5 at 30.  Approximately 220 of the defendants in the Texas cases use Plaintiffs' technology and services for creating such store locators.  Al-Salam Decl., ¶ 4.  As discussed in the declarations of Keith Kinnan and Carlos Cuesta, Plaintiffs' software and servers can contain the data and functionality for such store locators.  As an example, Microsoft provides web-based mapping services to customers via its Bing Maps product.  Declaration of Keith Kinnan ("Kinnan Decl."), ¶¶ 2-4.  Those customers use Bing Maps to enable their customers (end-users) to display geographic and other information, including store locations, after inputting a zip code on the business's website.  *Id.* Microsoft hosts the mapping services on its servers, and in every instance provides certain

geographical information—such as longitude and latitude—to the Bing Maps customer—such information also being resident on Microsoft's servers. *Id.* at ¶¶ 5-14. For most of Microsoft's customers, after longitude and latitude information is returned, Microsoft performs a function to provide additional information such as maps, store locations, and store hours to the customer. *Id.* In such cases, this additional data is also maintained on Microsoft's servers. Also, Microsoft has published articles on how to use its software and servers to create store locators. *Id.* at ¶¶ 6-7. As described in the Declaration of Carlos Cuesta, Google provides analogous software and services. There is no plausible basis for contending that the claims against Plaintiffs' customers do not arise from their use of Plaintiffs' products and services.

E.     **Plaintiffs' Customers Have Sought Indemnity From Plaintiffs**

Plaintiffs' customers have sought indemnity from Plaintiffs. Al-Salam Decl., ¶ 7. In addition, Plaintiffs understand that their customers will agree to be bound by the findings of invalidity and infringement in relation to Plaintiffs' products and services in this case. *Id.*, ¶ 6. In other words, Plaintiffs' customers believe the allegations of infringement against them are based on the operation of Plaintiffs' mapping services, not on any facts specific to their manner of using the services.[6]

F.     **GeoTag Refuses to Confirm That It Will Not Accuse Plaintiffs' Customers of Infringement Based on Their Use of Plaintiffs' Services and Has Refused to Allow Relevant Discovery**

GeoTag's motion is premised, in large part, on its claim that it ***has not*** accused Plaintiffs' customers of infringement based on their use of Plaintiffs' mapping services. *See* Def.'s Br. in Supp. of Mot. to Dismiss 2 ("Motion") (D.I. 11); Declaration of Lawrence Howorth ("Howorth Decl."), ¶ 15. GeoTag does not explain, however, the basis for its infringement allegations and has not agreed that it ***will not*** accuse such defendants, or other customers, of infringement based on their use of Plaintiffs' mapping services. In fact, Plaintiffs expressly offered to dismiss the

---

[6] GeoTag's joining of multiple defendants is also inconsistent with its claims that the claims do not arise from the common fact that such defendants use Plaintiffs' mapping services. If there were individual facts concerning infringement unique to each defendant, then they should not have been joined.

case if GeoTag would covenant not to accuse Plaintiffs' customers of infringement based on their use of Plaintiffs' services.  *See* Al-Salam Decl., ¶ 8.  GeoTag refused to do so.  *Id.*

Plaintiffs have also, in the alternative, asked for an opportunity to depose GeoTag's declarants on the subjects of the declaration, including the business of GeoTag, its connection to the state of Texas, and the nature of its infringement allegations.  *Id.*, ¶ 9.  GeoTag has refused to provide such discovery.  *Id.*

## III.   THE MOTION TO DISMISS SHOULD BE DENIED

### A.   A Justiciable Controversy Exists Because GeoTag Has Sued Plaintiffs' Customers

There is a justiciable controversy between Plaintiffs and GeoTag because GeoTag has sued Plaintiffs' customers for using Plaintiffs' services, and because such customers have demanded indemnity.  The circumstances in which a plaintiff may seek declaratory patent-related relief were expanded in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).  In *MedImmune*, the Court held that the Federal Circuit's "reasonable apprehension of suit" test was too narrow and that the analysis should be based on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127.

The Federal Circuit recently held a justiciable controversy arises when a plaintiff's customer is sued, and the plaintiff's product is a "material" part of the accused system.  *Arris Group, Inc. v. British Telecomm. PLC*, No. 2010-1292, 2011 WL 1899112 (Fed. Cir. May 19, 2011).  In *Arris*, the defendant had accused one of the plaintiff's customers of infringement, and the customer had demanded defense and indemnity.  Nevertheless, the district court dismissed the suit because, in the meetings between the parties, the defendant had only asserted infringement against the customer and "did not discuss any infringement by Arris."  *Id.* at 3.

The Federal Circuit reversed.  The court noted that

> where a patent holder accuses customers of direct infringement
> based on the sale or use of a supplier's equipment, the supplier has

> standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customer from infringement liability or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers.

*Id.* at 4 (footnote omitted).

In finding the second prong of the test satisfied, the Federal Circuit held that when the

> holder of a patent with system claims accuses a customer of direct infringement based on the customer's making, using, or selling of an allegedly infringing system *in which a supplier's product functions as a material component*, there may be an implicit assertion that the supplier has indirectly infringed the patent. Likewise, when the holder of a patent with method claims accuses the supplier's customers of direct infringement based on the use of the supplier's product in the performance of the claimed method, an implicit assertion of indirect infringement by a supplier may arise.

*Id.* at 5 (emphasis added; footnotes omitted).

The court rejected the plaintiff's arguments that there was no controversy because it had not "explicitly accuse[d] Arris itself of direct or indirect infringement" and "included an express disclaimer of [any implicit assertions of indirect infringement] in its infringement contentions." *Id.* at 7, 8.

The court also rejected the argument that Arris had the

> burden of presenting evidence that Arris' actions indirectly infringed the patents-in-suit.  Ironically [defendant] overlooks the fact that the very purpose for an accused infringer to bring a declaratory judgment action is to seek a judicial determination that a coercive claim by the patent holder would *not* succeed on the merits.

*Id.* at 8 (emphasis in original).

Finally, the court rejected defendant's argument that its agreement not to sue plaintiffs for infringement was sufficient to eliminate the controversy because defendant "has not provided any covenant that would protect Arris from liability for indirect infringement."  *Id.* at 9.

*Arris* confirms the instant case arises from a justiciable controversy.  Here, GeoTag has not threatened just one customer—it has sued more than 200 users of Plaintiffs' products and services.  Second, those suits have given rise to numerous demands for indemnity and defense.  Third, Plaintiffs' services are clearly a "material" part of the accused store locators.  Finally, GeoTag has not provided any covenant that is sufficient to eliminate a controversy.

*Arris* is also consistent with the numerous other decisions that have found that a justiciable controversy exists where a patent owner threatens a plaintiff's customers.  *Alfred Hofmann, Inc. v. Knitting Machines Corp.*, 123 F.2d 458, 461 (3d Cir. 1941) ("[T]he allegation and proof by a vendor that it is engaged in a course of conduct . . . which has brought and must bring purchasers from it into conflict with the owner of the patent, is sufficient to support a suit for a declaratory judgment by the vendor."); *Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156 (C.D. Cal. 2010) (denying motion to dismiss because the defendant had accused plaintiff's customer—American Express—of infringement from its use of plaintiff's products); *Monolithic Power Sys., Inc. v.02 Micro Int'l, Ltd.*, No. 607-2363 CW, 2008 WL 3266647, at *3 (N.D. Cal. Aug. 6, 2008) (finding a justiciable controversy because defendant had threatened plaintiff's customers, and if defendant were to sue customers, the plaintiff would "face injury in the form of damage to its relationships with its customers" and "could be forced to indemnify its customers for any losses they incur[red]"); *Minebea Co. v. Papst*, 444 F. Supp. 2d 68, 136 (D.D.C. 2006) (finding justiciable controversy even with respect to customers who had entered into licensing agreement with plaintiff, because of reasonable apprehension that customers will seek indemnity), *appeal dismissed per stipulation*, 224 Fed. Appx. 962 (Fed. Cir. 2007); *Girdler Corp. v. E.I. DuPont de Nemours & Co.*, 56 F. Supp. 871, 875 (D. Del. 1944).

In *WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 505 F. Supp. 2d 561, 565 (E.D. Wis. 2007), for example, the court held that there was a justiciable controversy because the "record indicates that WS faces at least imminent personal injury from Global's threats against WS's customers."  Although Global had provided a covenant not to sue customers for which WS had an indemnity obligation, the court found that the covenant was insufficient

because other customers "could" seek indemnity under the U.C.C. "if Global decided to bring suit against that customer" and because "WS faces the loss of its customer base and reputation in these circumstances." *Id.* at 566 (footnotes omitted).

The same reasoning applies in the instant case. GeoTag has sued Plaintiffs' customers (more customers than any patent owner has ever sued) for using Plaintiffs' software and services for store locators and Plaintiffs' customers have also demanded that Plaintiffs defend and indemnify them.

**B.      GeoTag's Authorities Are Distinguishable**

The decisions relied upon by GeoTag are distinguishable. In those cases, the defendant had sued or threatened a few customers (not more than 200 as in the instant case), and the claim of infringement was not based on the plaintiff's product or service. In *Microsoft Corp. v. WebXchange, Inc.*, No. CA 09-484-JJF, 2009 WL 3534845 (D. Del. Oct. 30, 2009), for example, there was no evidence that the defendant's claims against Plaintiff's customers arose from their use of the relevant software. For that reason, any determinations that Plaintiff's products "do not infringe the patents-in-suit will not prevent [the defendant] from suing other Microsoft customers for infringement based on their use . . . ." *Id.* at *4; *cf. Fujitsu Ltd. v. Nanya Tech. Corp.*, No. C 06-6613 CW, 2008 WL 3539503, at *3 (N.D. Cal. Aug. 12, 2008) (finding no justiciable controversy where patent was limited to method claims, parties agreed that the plaintiff's product has "substantial non-infringing uses," there was no accusation or a sufficient showing of inducement, and there was no showing that the infringement suits threatened a "significant portion of [the defendant's] business or that its customers generally are at risk of being accused of infringement simply by using [the plaintiff's product]"). In contrast, Plaintiffs in the instant case are seeking a declaration that their mapping products do not meet fundamental elements of the claim, including, for example, having a hierarchical geographic database where entries from narrower areas are "dynamically replicated" into broader areas. Plaintiffs are also seeking a declaration that the patent is invalid. In either situation, the relief will immunize Plaintiffs' customers.

Further, in *WebXchange*, the court found that the defendant's activity was not damaging Microsoft's customer relations because it "has only accused three of those customers of infringement, which in the Court's view, is insufficient to prove WebXchange as causing actual injury to Microsoft's business relationships."  2009 WL 3534845, at *4.  In contrast, GeoTag has sued more than 200 users of Plaintiffs' software and services, and could potentially sue hundreds, if not thousands, more.

In *Edmunds Holding Co. v. Autobytel, Inc.*, 598 F. Supp. 2d 606, 610 (D. Del. 2009), the court found that there was no evidence that the defendant "believes [the plaintiff] to be infringing the '517 patent."  The court also noted the defendant had first sued the plaintiff's customer in 2004, more than four years prior to the filing of a declaratory judgment action—"[Plaintiff's] ability to delay this action until now cuts against its argument that its alleged controversy with [defendant] is sufficiently immediate as to require adjudication now."  *Id.*[7]

In the instant case, the '474 patent, GeoTag's business model and Plaintiffs' claims reflect that GeoTag's infringement allegations are directed to Plaintiffs' activities (notwithstanding GeoTag's conclusory allegations to the contrary).

## IV.   THE CASE SHOULD NOT BE TRANSFERRED

### A.   Plaintiff's Choice of Forum Is Paramount and Favors This Venue

GeoTag's motion to transfer should also be denied.  As an initial matter, Plaintiffs' choice of forum is a "paramount consideration," even if Plaintiffs do not have their principal places of business in this district.  *Boston Scientific Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648, 654 (D. Del. 2008) ("Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its 'home turf' or a forum where the

---

[7] Similarly, in *Microchip Tech., Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936 (Fed. Cir. 2006), the court found that the defendant had no direct claim against the plaintiff for infringement. *See, e.g., id.* at 943 ("Microchip has not identified a single legal claim that it believes Chamberlain could have brought against it in the absence of this declaratory judgment action.").  In particular, there was no "indication that Microchip is inducing or contributing to infringement by its customers." *Id.* at 944.  *Microchip* was also prior to the Supreme Court's decision in *MedImmune*, which brings into question its vitality.  *See Monolithic Power Sys.*, 2008 WL 3266647, at *3 n.2 (questioning continued vitality of *Microchip* in light of the *MedImmune* "all circumstances" test).

alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount

consideration, and the burden remains at all times on the defendants to show that the balance of

convenience and the interests of justice weigh strongly in favor of transfer.") (internal quotation

marks and citation omitted); *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del.

2001) ("The 'home turf' rule does not create irrebuttable presumptions for or against a transfer

pursuant to § 1404(a), and it does not alter a defendant's burden of proof to show that such a

transfer is warranted.") (internal quotation marks and citation omitted).

GeoTag also ignores that both Google and GeoTag are incorporated in Delaware.

Complaint, ¶ 3; Howorth Decl., ¶ 7.  The fact of incorporation in Delaware weighs against

transfer.  "[A] corporation's decision to incorporate in a particular state is a rational and

legitimate reason to litigate in that state." *Boston Scientific Corp.*, 532 F. Supp. 2d at 655; *see

also Micron Technology, Inc. v. Rambus Inc.*, No. 2009-1263, 2011 WL 1815975, at *18 (Fed.

Cir. May 13, 2011) (finding that both parties' incorporation in Delaware weighed in favor of

keeping litigation in Delaware).  Even where parties have their principal places of business

elsewhere, this Court has denied transfer where "both parties are incorporated in Delaware, and

therefore, chose to be corporate citizens of Delaware for legal and other purposes." *Nice

Systems, Inc. v. Witness Systems, Inc.*, No. CIV A 06-311 JJF, 2006 WL 2946179, at *2 (D. Del.

Oct 12, 2006); *see also Carl Zeiss Meditec, Inc. v. Optovue, Inc.*, No. C.A. 10-084-GMS, 2011

WL 1419714, at *3 (D. Del. Apr. 13, 2011) (finding that even where both parties were

headquartered in California, the plaintiff's choice of forum outside its home turf is rational and

legitimate because the defendant is incorporated in Delaware and received the benefits of

Delaware incorporation); *R2 Tech., Inc. v. Intelligent Sys. Software, Inc.*, No. CIV. A. 02-472-

GMS, 2002 WL 31260049, at *2 (D. Del. Oct. 9, 2002) (finding that parties' incorporation in

Delaware does not favor transfer because parties should reasonably expect to litigate in that

forum).

This forum is also reasonable because, given GeoTag's lack of business activities, this district might be the only district other than the Eastern District of Texas where it is subject to personal jurisdiction.

**B.     Plaintiffs' Choice of Forum Is Also Entitled to Precedence Under the Customer Suit Exception**

This case is also entitled to jurisdictional precedence because it involves the real parties in interest.  Courts have long recognized that the real parties in interest in a patent dispute are the patent owner and the manufacturer or supplier of the accused product or service.  Courts have thus stayed or dismissed patent infringement actions against customers, in favor of a suit involving a manufacturer or supplier of the product or process.  This has led to the "customer suit exception" to the first-filed rule, resulting in patent infringement cases against customers being dismissed, stayed or transferred, even when they were filed before a subsequent declaratory judgment action by the manufacturer or supplier.  *See*, *e.g.*, *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (affirming district court's injunction precluding plaintiff from proceeding in parallel suit against customer—"litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer"); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735 (1st Cir. 1977) (reversing district court's failure to enjoin parallel suit against customer) ; *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, No. 10 C 1101, 2010 WL 3516106, at *3 (N.D. Ill. Sept. 1, 2010) (granting motion to stay pending resolution of manufacturer's suit); *Delphi Corp. v. Auto. Tech. Int'l, Inc.*, No. 08-CV-11048, 2008 WL 2941116 (E.D. Mich. July 25, 2008) (applying the customer suit exception to allow manufacturer's declaratory judgment action to proceed); *Ricoh Co. v. Aeroflex, Inc.*, 279 F. Supp. 2d 554, 557 (D. Del. 2003) ( "[A] manufacturer's declaratory judgment suit should be given preference over a patentee's suit against the manufacturer's customers when those customers are being sued for their ordinary use of the manufacturer's products.").  The courts recognize that such a rule is necessary to prevent the harassment of customers who do not have the resources or motivation to vigorously defend the case.

*Honeywell Int'l Inc. v. Audiovox Commc'n Corp.*, No. CIV. A. 04-1337-KAJ, 2005 WL 2465898, at *3 (D. Del. May 18, 2005) ("What Honeywell fails to appreciate is that, from the perspective of the host of defendants Honeywell has chosen to sue, and in the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed."); *Ricoh*, 279 F. Supp. 2d at 557 (noting "patentee's election to sue customers, rather than manufacturer itself, is often based on a desire to intimidate smaller businesses").

**C.     The Convenience of the Parties and Witnesses Favors This Venue**

GeoTag concedes that the "convenience of the parties and witnesses, and the location of relevant evidence, are the most important factors in these § 1404(a) analyses." Motion at 11. GeoTag fails, however, to meet its burden of showing that convenience weighs in favor of transfer.

A "transfer is not warranted 'simply because the transferee court is more convenient for defendants.'" *Nice Systems, Inc.*, 2006 WL 2946179, at *2 (citation omitted). In the modern world, with "the conveniences of modern travel and communication technology," defendants must establish that litigating the case in Delaware would pose a "unique or unusual burden on [its] business operations." *Intel Corp.*, 167 F. Supp. 2d at 706 (internal quotation marks and citation omitted) (denying motion to transfer because Broadcom did not meet its burden of showing inconvenience through burden); *Magsil Corp. v. Seagate Tech.*, No. CIV. A. 08-940, 2009 WL 1259043, at *1 (D. Del. Apr. 30, 2009) (denying transfer and holding that "[c]onvenience is relevant only as it relates to the defendants' physical and financial condition" and that the defendants "will not suffer meaningful financial hardship if required to litigate in Delaware."); *see also Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001) (denying motion to transfer).

GeoTag has identified only one potential witness in the Eastern District of Texas—John Veenstra—one of the three named inventors on the '474 patent, and the Chief Executive Officer of GeoTag. Howorth Decl., ¶ 4. Mr. Veenstra is an employee of GeoTag, and "[p]arty witnesses

such as employees are presumed willing to testify at trial and thus, are not part of the analysis of this factor." *Carl Zeiss Meditec*, 2011 WL 1419714, at *3.

Further, this case will involve many more witnesses than Mr. Veenstra. Other relevant witnesses are likely to be the persons at Microsoft and Google who are familiar with the development, structure, functionality, operation, licensing and use of the accused mapping services. These witnesses reside primarily in the Seattle, Washington and Mountain View, California areas. GeoTag argues the Eastern District of Texas is "arguably more convenient" for Microsoft's and Google's witnesses, because it is "closer" than Delaware. Motion at 11. Convenience is not based, however, on closeness. Instead, it is based on the convenience of travel. *See Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 344 (S.D.N.Y. 2002) (denying motion to transfer for reasons among which frequency of flights between major cities is one); *Upjohn Co. v. Riahom Corp.*, No. CIV. A. 86-203 CMW, 1986 WL 7515 (D. Del. June 25, 1986) (considering the frequency of flights and ease of travel between the forum and the airport as a factor in denying defendant's motion to transfer). Travel to Marshall, Texas is extremely *inconvenient*. Marshall, Texas takes approximately three hours to drive, without traffic, from the Dallas-Ft. Worth airport. Al-Salam Decl., ¶ 12. Although it is only 41 minutes from the airport in Shreveport, Louisiana, there are few convenient flights from Seattle or the California Bay Area to Shreveport. *Id.*

In contrast, there are numerous convenient flights to the Philadelphia/Wilmington area. *Id.* Accordingly, this Court is far more convenient for the California and Washington-based witnesses.

GeoTag also admits that the two other inventors on the '474 patent reside in Chicago, Illinois and Pleasanton, California. Howorth Decl., ¶ 5. Again, this Court is more convenient for those witnesses than is Marshall, Texas.

This Court is also more convenient for witnesses familiar with invalidating prior art. Al-Salam Decl., ¶ 11. As an example, the DeLorme Publishing Company created prior art software that allowed a user to find points of interest on a geographic database, just as the accused store

locators allow a user to find a store location. DeLorme's developments are reflected, among other places, in its U.S. Patent No. 5,559,707. Al-Salam Decl. Ex. 3. As reflected on the face of the '707 patent, DeLorme is based in Freeport, Maine. *See id*. This Court is significantly more convenient for witnesses traveling from Freeport, Maine than is Marshall, Texas.

Similarly, other important art was created by Civix Corporation of Salem, Massachusetts. As reflected in Civix's U.S. Patent No. 5,682,525, Civix developed software that allowed users to search remotely for points of interest on a geographic database. The database is expressly disclosed as having hierarchical vicinities. *See, e.g.*, '525 patent at 3:10-13 ("As above, that information includes, for each of the items of interest, positional coordinates, geographic vicinity, in at least one associated category."). This Court is far more convenient for witnesses from to Salem, Massachusetts than is Marshall, Texas. *See also* Al-Salam Decl., ¶ 11 (identifying other prior art witnesses).

GeoTag also argues that the location of records favors transfer because the documents in its possession reside in its office in Frisco, Texas. GeoTag has failed, however, to identify the nature of the documents it has. Given it does not have a genuine business (other than filing lawsuits), GeoTag is unlikely to have any significant number of documents. In contrast, Plaintiffs and the prior art witnesses are likely to have substantial relevant documents. This Court is more convenient for their documents. Further, the location of documents is not a controlling factor. *Cypress Semiconductor Corp.*, 2001 WL 1617186, at *4 (finding that access to documents does not weigh in favor of transfer because "[n]o matter where the trial is held [defendants'] . . . counsel and [plaintiffs'] . . . counsel will be required to travel to [various places] to select and produce the requested discovery. Regardless of where the trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.") (internal quotation marks and citation omitted).

**D.    Court Congestion and Justice Favor This Court**

The other relevant factors also favor this Court. GeoTag argues that judicial efficiency weighs in favor of transfer, because the "Eastern District of Texas has already presided over a

suit involving the '474 patent . . . ."  Motion at 15.  Again, this is misleading.  Most of the current cases are assigned to Judge Ward who has already announced that he will be leaving the bench in October, prior to any claim construction proceedings or trial in the instant cases.[8]  Al-Salam Decl., ¶ 5.  In fact, given that Judge Folsom of the Eastern District has also announced that he will step down, *id.*, there is a strong likelihood that the Texas cases will be unable to go to trial for years.  This congestion and delay clearly disfavors transfer.  *See Upjohn*, 1986 WL 7515, at *2 (considering court congestion of the transferee forum as a factor weighing against transfer) ("A transfer to . . . one of the largest and busiest courts in the federal system, inevitably would mean some delay, even if the matter receives an early hearing. Both parties and the Court have an interest in swift resolution of the pending motion and this case."); *Procter & Gamble Co. v. McNeil-PPC, Inc.*, No. 08-CV-251-BBC, 2008 WL 3992766, at *1 (W.D. Wis. Aug. 25, 2008) (finding that the average time to litigate a patent suit in New Jersey is much longer than in the current district, and that New Jersey judges are heavily burdened with patent cases).

GeoTag compares the statistics for the median time to trial for a civil case in the District of Delaware (30.3 months) with the median time for trial in the Eastern District of Texas (25.8 months).  Motion at 16.  Those same statistics indicate, however, that the median time in the Eastern District of Pennsylvania, the more relevant statistic, is only 19.6 months.

Further, the trend in the Eastern District of Texas has been that cases are taking increasingly longer to get to trial.  According to LegalMetric, a service that monitors judicial statistics, the average time to trial has been increasing in the Eastern District of Texas at a rate of approximately five months per year and is projected to be at least 40 months in 2011 (without even accounting for Judge Ward's and Judge Folsom's retirements).  Al-Salam Decl., ¶ 13. Accordingly, the court congestion factor clearly favors this Court.

GeoTag also argues that Texas is where the relevant facts arose, because that is where it has sued Plaintiffs' customers.  The reasoning is circular—the fact that GeoTag sued customers

---

[8] Magistrate Judge Everingham authored the claim construction order in the prior litigation.

there does not justify venue there. The Eastern District of Texas has no significant connection to the dispute. The alleged invention was not conceived in Texas and no significant activities have occurred there. Neither Google nor Microsoft, nor any other providers of mapping services, are based in the Eastern District of Texas. The Texas defendants are not real parties in interest and, regardless, few are located in the Eastern District of Texas and, to the best of Plaintiffs' knowledge, none of the customer defendants are located in Marshall, Texas.

GeoTag also argues that the Eastern District of Texas has a "local interest" factor because GeoTag is based there. There is no strong local interest in litigating a patent action because patent rights are governed by federal law and thus "generally do not give rise to a local controversy or implicate local interests." *ICU Med., Inc. v. Rymed Techs., Inc.*, No. CIV. A. 17-468-JJF, 2008 WL 205307, at *5 (D. Del. Jan. 23, 2008); *see also Magsil Corp.*, 2009 WL 1259043, at *2 ("Finally, we emphasize that this is a patent infringement case, which is governed by federal law. Therefore, California does not have a 'distinct public interest' over Delaware nor will any special public policy be affected by having the case tried here.") (citation omitted).

Moreover, Mr. Veenstra did not move to the Eastern District of Texas until at least December 2007, and GeoTag was not even formed until July 2010. Howorth Decl., ¶ 4. Courts have ignored pre-litigation attempts to justify venue based on incorporation or creation of a sham office. *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (finding that the plaintiff's offices were created sixteen days before filing suit and "staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue").

### E.    The Texas Cases Will Be Unmanageable

Finally, § 1404 allows for transfer only when it is in the "interest of justice." Transfer does not advance justice in the instant case because the Texas Cases will be an unmanageable morass. There is no practical way for 300-plus defendants in 11 separate lawsuits to efficiently work together on a unified defense. *Cf. Honeywell Int'l Inc.*, 2005 WL 2465898, at *3 ("It is impracticable to try an infringement case against 40 some defendants or third-party defendants

with many different accused devices, and it is unwise to attempt any such thing when liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture and when at least some of the manufacturers of the LCDs are before the court and are willing to stand behind their products in this litigation.").  In fact, this is likely the reason GeoTag has sued so many customers in East Texas—to create logistical difficulties that will essentially force defendants to pay cost-of-litigation settlements on a baseless claim. [9]  In contrast, the instant case will involve only three or four parties and provides the opportunity for an efficient, orderly and expedited resolution of the issues.

**V.     CONCLUSION**

For the reasons above, GeoTag's motion should be denied or, at the least, Plaintiffs should be given an opportunity for discovery of the facts relied upon by GeoTag.

Dated:  May 23, 2011

By:   */s/ Arthur G. Connolly, III*
Arthur G. Connolly III (#2667)
AConnollyIII@cblh.com
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
Post Office Box 2207
Wilmington, DE  19899
Tel: (302) 888-6318 / Fax: (302) 658-5614

Ramsey M. Al-Salam (*Pro Hac Vice*)
ralsalam@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Tel: (206) 359-8000 / Fax: (206) 359-9000

*Attorneys for Plaintiffs*

---

[9] At least one judge in the Eastern District has acknowledged plaintiffs are using that district to file multi-defendant suits simply to obtain cost-of-litigation settlements.  *See* March 15, 2011 Memorandum Opinion and Order at page 4 (Davis, J.) (Al-Salam Decl. Ex. 6); *Parallel Networks, LLC v. AEO, Inc.*, Civil Action No. 6:10-CV-275 (Docket No. 338, Mar. 15, 2011).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 23, 2011, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Kenneth L. Dorsney, Esquire
Mary Matterer, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
kdorsney@morrisjames.com
mmatterer@morrisjames.com

_/s/ Arthur G. Connolly, III_____
Arthur G. Connolly, III (#2667)