**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MICROSOFT CORPORATION, et al., <br><br>   Plaintiffs, <br><br> v. <br><br> GEOTAG INC., <br><br>   Defendant. | C.A. No. 11-cv-175 (SD) |

**DEFENDANT GEOTAG'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
UNDER FED.R.CIV.P. 12(B)(1) OR, IN THE ALTERNATIVE,
TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)**

Kenneth L. Dorsney (Bar No. 3726)
Mary B. Matterer (Bar No. 2696)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801
(302) 888-6960
kdorsney@morrisjames.com
mmatterer@morrisjames.com

John J. Edmonds
Michael J. Collins
Stephen F. Schlather
COLLINS, EDMONDS & POGORZELSKI, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
jedmonds@cepiplaw.com
mcollins@cepiplaw.com
sschlather@cepiplaw.com

June 3, 2011

COUNSEL FOR DEFENDANT
GEOTAG INC.

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Introduction………………………………………………………………………… | 1 |
| II. | Plaintiffs' declarations fail to support the allegations in their Response…………. | 1 |
| III. | Plaintiffs' legal authorities are off point. ………………………………..………… | 6 |
| IV. | The mere fact that Plaintiffs have received indemnity demands does not make this a justiciable action…...……………………………………………… | 9 |
| V. | GeoTag is agreeable to a covenant of appropriate scope. …………………………... | 9 |
| VI. | Alternatively, the Court should transfer this case to Texas. …………………….…... | 9 |
| | A.   Texas is a clearly more convenient forum. …………………………………….. | 9 |
| | B.   The customer suit exception does not apply in this case…......……………. | 10 |
| VII. | Conclusion. …………………………………………………………………………… | 10 |

## TABLE OF AUTHORITIES

**Cases**

*Air Products and Chems. v. MG Nitrogen Servs.*,
133 F.Supp.2d 354 (.Del.2001)………………………………...…………………………… 10

*Arris Group, v. British Telecomm*,
2011 WL 1899112 (Fed. Cir. May 19, 2011).………………………...……………………. 6

*Microsoft Corp. v. Phoenix Solutions, Inc.*,
741 F. Supp. 2d 1156 (C.D. Cal. 2010) ……………………….…………………………. 7

*Minebea Co. v. Papst*,                                                                                                  8
444 F. Supp. 2d 68 (D.D.C. 2006).…………………….……………………..…………..

*Power Sys., Inc. v.02 Micro Int'l, Ltd.*,
2008 WL 3266647 (N.D. Cal. Aug. 6, 2008)……………………………...…………...……… 7, 8

*WS Packaging Group, Inc. v. Global Commerce Group*, LLC,
505 F. Supp. 2d 561 (E.D. Wis. 2007) ……………………………………......…………………. 8, 9

I.     **Introduction.**

The Court should give no weight to Plaintiffs' unsupported arguments and hyperbole, and instead it should focus upon the facts and the Declarations submitted by both sides. If Plaintiffs had a justifiable basis for filing this action, then they would have put forth that evidence in their Response. Plaintiffs carry the burden of coming forth with competent evidence establishing jurisdiction, yet they have failed to do so. Thus, this case should be dismissed.

II.    **Plaintiffs' declarations fail to support the allegations in their Response.**

The first of three Declarations appended to Plaintiffs' Response is that of Plaintiffs' lead counsel Mr. Al-Salam. Mr. Al-Salam's declaration is "*out of my personal knowledge unless otherwise indicated*." Al-Salam Declaration, ¶ 1. He alleges that, "Plaintiffs . . . provide their customers with mapping-related services that allow customers to put store locators on their websites." *Id.* at ¶ 4. However, he fails to name any customers for whom "mapping-related services" are provided, and fails to provide any details of such services. Moreover, he clearly has no personal knowledge of this. This Court should give no weight to such unsupported lawyer argument couched as a declaration. Mr. Al-Salam was "informed" by an unnamed "assistant" that, of the defendants in the Texas Cases, "approximately 160 use Google Maps for their store locator services, and approximately 60 use Bing Maps (or MapPoint)." *Id.* at ¶ 4. Here, Mr. Al-Salam fails to provide any details of how these defendants "use" Google Maps, Bing Maps or MapPoint in connection with their store locators. For all we know, they may simply have a map on the same page as the accused store locator. Further, Mr. Al-Salam is merely reciting inadmissible hearsay from his unidentified "assistant."

Mr. Al-Salam then alleges that he has "spoken with counsel for many of Plaintiffs' customers", and "[b]ased on my discussions, I believe that all of Plaintiffs' customers in those cases will agree to be bound by infringement and invalidity decisions in the instant case." *Id.* at ¶

5. Here Mr. Al-Salam omits to disclose which counsel he spoke with, which defendants they represent, and what was stated to cause him to form this "belief." The pertinent fact here is that no defendant in the Texas Cases has signed anything agreeing to be bound, and Mr. Al-Salam's personal belief is incomplete, based upon hearsay, and should be given no weight.

Mr. Al-Salam states that GeoTag refused to sign Plaintiffs' proposed covenant. *Id.* at ¶ 9. However, Mr. Al-Salam misstates the breadth of the proposed covenant, which is Exhibit 2 to the Declaration. Further, Mr. Al-Salam omits to mention that GeoTag invited Plaintiffs to propose a covenant commensurate with the scope of this suit, and that Plaintiffs declined to provide a redraft. *See* Edmonds letters of May 16, 2011 and May 21, 2011 at Exhibit 2 to the Declaration. GeoTag stands willing and ready to sign an appropriately worded covenant, if it would put an end to this ill-conceived and unsupported suit. *See* Section IV below.

Mr. Al-Salam states his "understanding" that the persons most knowledgeable about Plaintiffs' mapping software and services are based in Seattle and Mountainview. *Id.* at ¶ 10. However, Mr. Al-Salam fails to state how he came to this "understanding," he declines to identify such persons, and he declines to state his "understanding" of what any specific person knows. Here again Mr. Al-Salam is making vague, conclusory arguments not based upon facts.

Mr. Al-Salam identifies four patents as potentially relevant prior art, and states that, based on "our research" certain persons associated with those are located in certain areas. *Id.* at ¶ 11. Mr. Al-Salam declines to state whether he was one of the persons who performed "our research," and, thus, whether he has any personal knowledge of this. More importantly, Mr. Al-Salam fails to provide any specifics about why these prior art patents are relevant to this case, or what relevant knowledge the named inventors on such patents might have which is not already shown within the patents themselves.

2

Mr. A-Salam states his "belie[f] that this Court is significantly more convenient than the court in Marshall, Texas for the majority of the witnesses in this case." *Id.* at ¶ 12.  However, Mr. AlSalam's personal beliefs are irrelevant, and Mr. Al-Salam fails to provide any facts underlying this "belief," except the lack of direct flights from San Jose or Mountainview to Shreveport.

The second of three Declarations appended to Plaintiffs' Response is that of Mr. Cuesta of Google.  Mr. Cuesta states that "Google provides web-based mapping services and . . . [APIs] . . . that allow customers to add interactive mapping features to their websites. Cuesta Declaration, ¶ 2.  However, no attempt is made to correlate these features or APIs with GeoTag's infringement claims against any defendant in the Texas Cases.

Mr. Cuesta states that, "Google Mapping Services include APIs that allow customers to interactively display indications (e.g., markers) of various locations of interest on a map, such as store locations;" and that "Google Mapping Services include a geocoding service." *Id.* at ¶¶ 3-4.  Here again, no attempt is made to correlate these APIs to GeoTag's infringement claims against any defendant in the Texas Cases.

Mr. Cuesta states that Google offers "Fusion Tables," and that, "Google customers can use Fusion Tables store data that is used by Google Mapping Services." *Id.* at ¶ 5.  However, yet again, there is no attempt to correlate the data in such "Fusion Tables" to GeoTag's infringement claims against any defendants in the Texas Cases; and, moreover, there is no averment that any of the Texas defendants actually use such Fusion tables for an accused locator.

Mr. Cuesta states that, "[i]t is possible for a Google customer to use Google Mapping Services and/or Fusion Tables, along with other non-Google provided products and services, to create store locator features on the customer's web site." *Id.* at ¶ 6.  However, Mr. Cuesta fails to identify the "store locator features" that it is "possible" to create, and yet again there is no

attempt to correlate such "features" to GeoTag's infringement claims against any defendants in the Texas Cases. Moreover, there is no averment that any of the Texas defendants actually use "Google Mapping Services and/or Fusion Tables" to actually create any "store locator features."

The third Declaration appended to Plaintiffs' Response is that of Mr. Kinnan of Microsoft. Mr. Kinnan states that, "Microsoft provides and has provided web-based mapping services hosted by Microsoft and used by its customers to put store locators and interactive maps on their websites." Kinnan Declaration, ¶ 3. However, no attempt is made to correlate these "web-based mapping services" with GeoTag's infringement claims against any defendant in the Texas Cases; and, moreover, no averment is made that any defendant in the Texas Cases uses "web-based mapping services hosted by Microsoft" to "put store locators" on their websites.

Mr. Kinnan states that, "Bing Maps Services are frequently used to provide store locator-type applications on customer websites." *Id.* at ¶ 4. Yet, here again no attempt is made to correlate these "store locator-type applications" with GeoTag's infringement claims against any defendant in the Texas Cases; and, moreover, no averment is made that any defendant in the Texas Cases actually uses Bing Maps Services "to provide store locator-type applications."

Mr. Kennan states that, "Microsoft creates and hosts store locator-type applications for many of its customers." *Id. at* ¶ 5. Here again, no attempt is made to correlate these "store locator-type applications" with GeoTag's infringement claims against any defendant in the Texas Cases. Moreover, no averment is made that any defendant in the Texas Cases actually uses a "store locator type application" created or hosted by Microsoft.

Mr. Kinnan states that Microsoft advertises and publishes articles about using Bing Maps services to create store locators, and that "Bing Maps Services include a variety of application programming interfaces ("APls") that allow customers to programmatically access the services."

4

*Id.* at ¶ 6-8. However, Plaintiffs fail to explain why any of this is relevant to GeoTag's claims against the Defendants in the Texas Cases.

Mr. Kinnan states that "Bing Maps Services include databases of geographical information." *Id.* at ¶ 9. Yet, once again, no attempt is made to correlate these "databases of geographical information" associated with Bing Maps with GeoTag's infringement claims against any defendant in the Texas Cases; and, moreover, no averment is made that any defendant in the Texas Cases actually uses such databases.

Mr. Kinnan states that "Bing Maps Services include APIs for customers to interactively display indications (e.g. , pins) of various locations of interest on a map, such as store locations." *Id.* at ¶ 10. However, no attempt is made to correlate such 'APIs" or "interactive displays" with GeoTag's infringement claims against any defendant in the Texas Cases.

Mr. Kinnan states that "Bing Maps Services provide APIs for customers to upload and store their store locations in Microsoft-hosted databases." *Id.* at ¶ 11. However, no attempt is made to correlate these "APIs" or "databases" with GeoTag's infringement claims against any defendant in the Texas Cases; and, moreover, no averment is made that any defendant in the Texas Cases actually uses such databases.

Mr. Kinnan states that "Bing Maps Services provide a geocoding service . . . that [is] used as the basis to search for particular locations within a given geographic region and/or to display pins on a map." *Id.* at ¶ 12. However, yet again no attempt is made to correlate this "geocoding service" or the results thereof with GeoTag's infringement claims against any defendant in the Texas Cases; and, moreover, no averment is made that any defendant in the Texas Cases actually uses this geocoding service.

Mr. Kinnan states that "Bing Maps Services provide hosted functionality that allows customers to initiate searches of the store locations that are stored in the Microsoft-hosted databases..." *Id.* at ¶ 13. However, once again, no attempt is made to correlate this "functionality" with GeoTag's infringement claims against any defendant in Texas; and, moreover, no averment is made that any defendant in Texas actually uses this "functionality."

Finally, Mr. Kinnan states that "Bing Maps Services return the results of store location searches to customers, who then typically display the results of the search as a listing of addresses and/or as indications (e.g., pins) on a map on the customer's web site. . ." *Id.* at ¶ 14. However, yet again no attempt is made to correlate this functionality with GeoTag's infringement claims against any defendant in the Texas Cases; and, moreover, no averment is made that any defendant in the Texas Cases actually uses this functionality.

The sum total of the averments in the Al-Salam, Cuesta and Kinnan Declarations is that many defendants in the Texas Cases make some use of Bing Maps or Google Maps, and there are multiple, locator-related features of which Bing Maps or Google Maps are capable.

## III. Plaintiffs' legal authorities are off point.[1]

Plaintiffs' reliance upon the *Arris* case is misplaced. In *Arris*, BT had given a 118 page infringement presentation to Cable One which "explicitly and repeatedly singled out Arris' products used in Cable One's network to support its infringement contentions." *Arris Group, v. British Telecomm*, 2011 WL 1899112, *5 (Fed. Cir. May 19, 2011). "The presentation made it clear that Cable One's use of Arris' [products] was central to BT's infringement contentions." *Id.* at *6. "For many of the asserted claims, BT contended that virtually all of the claimed system's

---

[1] Due to space limitations, this Reply will not address the *Alfred Hoffman* case from 1941 or the *Girdler* case from 1944. Suffice it to say that these cases relied upon legal doctrines no longer applicable and that neither has analogous facts.

elements or method steps were practiced by Arris' [products]..." *Id.* Based upon facts unique to the *Arris* case, the Federal Circuit held that, "BT's extensive focus on Arris' [] products in its infringement contentions implies that Arris' products are being used as a 'material part' of the allegedly infringed invention—one of the required elements of contributory infringement." *Id.* at *7. In contrast, as noted above, Plaintiffs have put forth no facts to make *Arris* an analogous case, including no facts to show that their services are a "material part" of anything that GeoTag has accused of infringement in Texas.

Plaintiffs' reliance upon the *Phoenix* case is misplaced. In that case, Phoenix had sued American Express for patent infringement and had "specifically alleg[ed] that the Tellme IVR system provided by Microsoft to American Express infringes the patents-in-suit." *Microsoft v. Phoenix Solutions*, 741 F. Supp. 2d 1156, 1161 (C.D. Cal. 2010). Thus, the court held there to be an "actual controversy between Microsoft and Phoenix because Microsoft is exposed to a claim for both direct infringement and inducement by providing the IVR services to American Express." *Id.* Plaintiffs lack any facts to make *Phoenix* an analogous case, including any facts showing that GeoTag has accused Microsoft or Google, or their products, of direct or indirect infringement.

Plaintiffs' reliance upon the *O2 Micro* case is misplaced. *O2 Micro* was "the latest in a series of actions before this Court between MPS and its competitor O2 Micro." *Monolithic Power Sys. v.02 Micro Int'l.*, 2008 WL 3266647, at *3 (N.D. Cal. Aug. 6, 2008). At issue before the Court was the '129 patent, which had been the subject of a prior lawsuit between the same parties, which had been dismissed pursuant to a stipulated covenant-not-to-sue. *Id.* at *1. Since the dismissal, MPS had released new products, and it filed the suit at issue seeking a declaration that its new products did not infringe. *Id.* at *2. O2 then proffered a second covenant, which

covered MPS but not its customers. *Id.* At issue was the adequacy of O2's proffer. *Id.* at *3. The dispositive fact was that the extensive "history of litigation over the '129 patent demonstrates that a lawsuit by O2 Micro against MPS's customers is more than a theoretical possibility" *Id.* at p. 4. In contrast, as noted above, Plaintiffs lack any facts to make *Phoenix* an analogous case.

Plaintiffs' reliance upon the *Minebea* case is misplaced. *Minibea* involved patents covering computer hard disk drive ("HDD") motors. *Minebea v. Papst*, 444 F. Supp. 2d 68, 77 (D.D.C. 2006). The lawsuit dealt with various conflicts that arose when the parties' joint venture was dissolved. *Id.* at 78. In the midst of widespread litigation, Papst had sued Minebea's customers for patent infringement arising from HDD motors supplied by Minebea, to which Minebea responded with declaratory claims for misuse and exhaustion. *Id.* Later, Papst moved to dismiss those claims because it had entered into licensing agreements with "many of Minebea's customers." *Id.* However, the court denied the motion, holding that: "a case or controversy clearly exists with respect to any customer who has yet to settle with Papst," and because the parties had stipulated that "Minebea has a very reasonable apprehension that [its customers] will seek indemnity for all or part of the payment[s] made to Papst'" pursuant to their licensing agreements." *Id.* at 136. These facts are unique. In contrast, as noted above, Plaintiffs' lack any facts to make *Phoenix* an analogous case.

Plaintiffs' reliance upon the *WS Packaging* case is misplaced. In that case, there was a controversy over whether Global's game pieces infringed WSP's patent. *WS Packaging Group, v. Global Commerce Group*, 505 F. Supp. 2d 561, 563 (E.D. Wis. 2007). WSP sought to remove the controversy with a covenant not to sue Global, but the covenant did not exclude Global's customers who purchased the accused game pieces. *Id.* In addition, despite the proffered

8

covenant, Global had "bragged" of its "habit of threatening to sue (or actually suing) the customers of allegedly infringing vendors or manufacturers, presumably as a means of pressuring the parties to cease their activities or sign a license agreement." *Id.* at 566.  Under these unique facts, the court found there to be jurisdiction.  In contrast, as noted above, Plaintiffs lack any facts to make *WS Packaging* an analogous case.

### IV. The mere fact that Plaintiffs have received indemnity demands does not make this a justiciable action.

Microsoft and Google have millions of customers.  They no doubt receive indemnity demands hundreds or thousands of times a year.  The Federal Circuit has never held, and to GeoTag's knowledge, no court has ever held, that the mere receipt of an indemnity demand from a customer confers subject matter jurisdiction on a declaratory patent suit.

### V. GeoTag is agreeable to a covenant of appropriate scope.

As noted above, the covenant not to sue proposed by Plaintiffs is vague and overbroad. If anything, Plaintiffs improperly seek to use this lawsuit as leverage to extort concessions from GeoTag which go beyond the "controversy" they allege exists.  As noted above, GeoTag invited a more appropriate redraft, yet Plaintiffs declined.  Nonetheless, GeoTag stands ready to sign an appropriate covenant in order to expeditiously resolve this matter.  An appropriate and acceptable stipulation is set forth at Exhibit A hereto.

### VI. Alternatively, the Court should transfer this case to Texas.

#### A. Texas is a clearly more convenient forum.

For the reasons set forth in GeoTag's Motion, Texas is a clearly more convenient forum for adjudication of this action.  Pertinent facts include GeoTag's headquarters and witnesses in Texas, the lack of any proven witnesses in or more convenient to Delaware, and the overlap between the many, first-filed Texas Cases and the issues that Plaintiffs' seek to litigate in this case.  Plaintiffs have put forth no facts which establish the convenience of this forum, either for

9

the parties or for the 220 third parties whose infringement Plaintiffs seek to have adjudicated. Further, Plaintiffs allege that the Texas Cases are "unmanageable" due to the large number of suits and parties in Texas; however, there is no basis to suggest that the Courts in the Eastern District of Texas cannot manage their dockets. What would be unmanageable would be for this single lawsuit in Delaware to seek to adjudge the infringement of individual systems and methods being used by 220 individual third parties, especially when the infringement of those third parties is already being litigated in Texas. Plaintiffs' assert that no discovery from these 220 third-parties would be necessary to prove each of their non-infringement, but that assertion is mere lawyer argument and unfounded. Finally, Plaintiffs erroneously suggest that more discovery may be needed on venue. Both sides have put forth their venue facts, and at this point the Court should decide.

**B.     The customer suit exception does not apply in this case.**

The customer suit exception is inapplicable. It is used when a first suit is filed against a customer who is a mere reseller, while the second suit is a declaratory action brought by the manufacturer, of the accused goods. *Air Products and Chems. v. MG Nitrogen Servs.*, 133 F.Supp.2d 354, 357 (D.Del.2001). Here, there is no proof that Google or Microsoft are manufacturers of the systems and methods accused of infringement in the Texas Cases, or that the defendants in the Texas Cases are resellers.

**VII.   Conclusion.**

For the reasons herein and in GeoTag's Motion, this case should be dismissed for lack of subject matter jurisdiction, or, alternatively, transferred to the Eastern District of Texas.

                        Respectfully submitted,

By:    */s/ Kenneth L. Dorsney*
Kenneth Dorsney (Bar No. 3726)
Mary B. Matterer (Bar No. 2696)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801
(302) 888-6960
kdorsney@morrisjames.com
mmatterer@morrisjames.com

John J. Edmonds
Michael J. Collins
Stephen F. Schlather
COLLINS, EDMONDS & POGORZELSKI, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
jedmonds@cepiplaw.com
mcollins@cepiplaw.com
sschlather@cepiplaw.com

June 3, 2011                COUNSEL FOR DEFENDANT
                                GEOTAG INC.

# EXHIBIT A

## PROPOSED JOINT STIPULATION FOR
## A COVENANT-NOT-TO-SUE AND DISMISSAL

GeoTag stipulates and covenants not to sue Microsoft or Google for directly infringing, inducing the infringement of, or contributing to the infringement of the '474 patent, based upon the past or current maps for store locators of any defendants in Civil Action Nos. 2:10-cv-00272-TJW; 2:10-cv-00265-TJW; 2:10-cv-00569-TJW; 2:10-cv-00570-TJW; 2:10-cv-00571-TJW; 2:10-cv-00572-TJW; 2:10-cv-00573-TJW; 2:10-cv-00575-TJW; 2:10-cv-00574-DF; 2:10-cv-00587-TJW; and 2:11-cv-00175-DF (the "Texas Cases"). Further, GeoTag stipulates and covenants not to sue any defendants in the Texas Cases for infringing the '474 patent based upon their use of past or current maps for store locators made or sold (or otherwise provided) by Microsoft or Google.

Google and Microsoft stipulate that they dismiss their claims in this action with prejudice.

Dated: _____, 2011

| | |
|---|---|
| Arthur G. Connolly III (#2667) | Kenneth L. Dorsney (#3726) |
| CONNOLLY BOVE LODGE & HUTZ LLP | Mary B. Matterer ( #2696) |
| 1007 North Orange Street | MORRIS JAMES LLP |
| Wilmington, DE  19801 | 500 Delaware Avenue, Suite 1500 |
| (302) 888-6318 | Wilmington, DE  19801 |
| aconnollyIII@cblh.com | (302) 888-6800 |
| | kdorsney@morrisjames.com |
| Attorneys for Plaintiffs | mmatterer@morrisjames.com |
| | Attorneys for Defendant |