IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MICROSOFT CORPORATION, :
a Washington Corporation, and :
GOOGLE INC., a Delaware Corporation, :
 :
      Plaintiffs, :
 :
v. : Civil Action No. 11-175-RGA
 :
GEOTAG INC., a Delaware Corporation, :
 :
      Defendant. :

## MEMORANDUM OPINION

Arthur G. Connolly, III, Esquire, Connolly, Bove, Lodge & Hutz, Wilmington, Delaware

Ramsey M. Al-Salam, Esquire, Perkins Coie LLP, Washington D.C.

Attorneys for Plaintiffs

Kenneth L. Dorsney, Esquire, Morris James LLP, Wilmington, Delaware

Eric W. Buether, Esquire, Buether Joe & Carpenter, LLC, Dallas, Texas

Attorneys for Defendant

January 13, 2012
Wilmington, Delaware

ANDREWS, U.S. DISTRICT JUDGE:

Before the Court is a motion to transfer this case to the Eastern District of Texas.

On March 1, 2011, Microsoft and Google sued Geotag. The plaintiffs seek a declaratory judgment that the plaintiffs and their customers have not infringed Geotag's patent no. 5,930,474, which concerns an "Internet Organizer for Accessing Geographically and Topically Based Information." The plaintiffs seek to have the patent declared to be invalid.

There is related litigation in the Eastern District of Texas, where Geotag has sued in excess of 450 companies, many of whom are customers of Microsoft, Google, and other companies[1] that provide mapping services that allow interested persons to use the internet to search for a convenient physical location of a business. Geotag's Texas suits have been filed both before and after the declaratory judgment action was filed in this Court. The first Geotag suits were filed in July 2010 (Nos. 2:10-cv-265 & 2:10-cv-272), and, while based on the same patent, do not appear to implicate the mapping services. The mapping services suits began to be filed in December 2010 (Nos. 2:10-cv-569 et al.). At the time this case was filed in Delaware, Geotag had filed suit against hundreds ("more than 300" according to the Complaint) of mapping services defendants in the Eastern District of Texas ("the customer cases"). The bulk of those defendants were sued in eight such suits in December 2010; more such suits followed in 2011.

The transfer motion has been fully briefed and orally argued.

The statutory authority for transferring the case is § 1404(a) of Title 28, which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may

---

[1] There is a related case in the District of Delaware too. In Where 2 Get It, Inc. v. Geotag, Civil Act. No. 11-223-RGA, the Plaintiff filed a similar complaint. Unlike in this case, Geotag then promptly sued the Plaintiff in the Eastern District of Texas.

transfer any civil action to any other district or division where it might have been brought." The burden of establishing the need for transfer is the movant's, *see Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), which in this case is Geotag. The Third Circuit has set forth the framework for analysis:

> "[I]n ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed."
>
> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." While there is no definitive formula or list of the factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a).
>
> The private interests have included: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted and numbering added).

There is no dispute that the declaratory judgment action could have been brought in the Eastern District of Texas, since it is Geotag's principal place of business.

In my view, interest (1) supports the plaintiffs' position that the case should not be

transferred. Interest (2) supports the defendant's request to transfer the case. The other interests do not add much to the balancing, as they are either inapplicable to this case, possibly applicable but not well-developed in the record, or applicable but pretty evenly-balanced as to which side they support. The twelve interests are not exclusive, and in this case there are other considerations that I take into account.

Plaintiffs have chosen Delaware as a forum. That choice weighs strongly in the plaintiffs' favor, although not as strongly as it would if the plaintiffs had their principal places of business (or, indeed, any place of business) in Delaware. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request"); *Pennwalt Corp. v. Purex Industries, Inc.*, 659 F.Supp. 287, 289 (D.Del. 1986) (plaintiff's choice of forum not as compelling if it is not plaintiff's "'home turf'"). Microsoft's principal place of business is in the State of Washington, and Google's is in California.

Defendant's preference is the Eastern District of Texas, where it has its principal and only place of business.

Although the defendant has argued in its briefing that the claim arose in the Eastern District of Texas, that argument is based on the idea that the claim is threatened litigation against the plaintiffs. (D.I. 11, p.13). I think the claim that is relevant here is the plaintiffs' claim that their activities do not infringe any valid patent held by the defendant, and I would view the claim as being one that arises generally wherever the internet is present. *See In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). If I had to choose a specific location where the claims arise, I think it would be better understood as being in Washington and California, where the

plaintiffs create and sell their mapping services. Whether the claims arose everywhere, or on the Pacific Coast, this factor has no weight in the balancing.

The plaintiffs Microsoft and Google are omnipresent in everyday life, and are among the largest and most powerful corporations in the world. Geotag employs "about six" people (D.I. 29, p. 58), and has at most minimal activities outside of Texas. Geotag's financial condition pales in comparison to that of the plaintiffs. (D.I. 29, p. 66). On the other hand, Geotag's business is primarily litigation  There is no evidence that when it comes to litigation Geotag is on anything other than an equal footing with the plaintiffs, and its activities in the Eastern District suggest as much. In its briefing, Geotag made no argument in relation to this factor (*see* D.I. 11, pp. 13-15; D.I. 18, pp. 9-10), although at oral argument, Geotag did respond to the Court's suggestion that this factor favored transfer. (D.I. 29, p.66). I think this factor slightly favors transfer, but I do not attribute much weight to it in the balancing.

At this juncture, it is hard to tell who the witnesses might be. Geotag's employee – its CEO, who was one of three inventors of the patent – is the only person more or less positively identified as a potential and likely witness. He would be obligated to appear in court wherever hearings were held. It seems likely that the bulk of the non-expert witnesses will be employees of Google and Microsoft. *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). Employee witnesses located in California or Washington will have about the same amount of travel time to the Eastern District of Texas or the District of Delaware. Generally-speaking, witnesses located in other parts of the country would probably find travel to Delaware more convenient than travel to Marshall, Texas, since Marshall is three hours from a major

airport whereas Wilmington is only thirty minutes from a major airport. Neither Delaware nor the Eastern District of Texas is particularly convenient for anybody. Even Geotag's CEO would have to drive about three hours to get from his home or his office to Marshall. While this is more convenient for him than Delaware, it is not all that much more convenient. No witnesses who would be unavailable in one location but not the other have been identified. Thus, this factor adds very little to the balancing. (D.I. 29, p. 71).

Similarly, it is hard to tell where most of the books and records would be (other than Geotag's and the plaintiffs'). The only identified holders of records are the parties, and their records will be able to be produced in whichever forum has the case. The records of the plaintiffs, which are most likely the most important records for this litigation, *see id.*, are distant from both fora. In any event, there are no records identified as only being available in one of the two locations.[2] Thus, this factor too adds very little to the balancing.

Enforceability of the judgment is not an issue. (D.I. 29, p. 71).

Practical considerations that could make the trial easy, expeditious, or inexpensive are not likely to be a significant factor. The plaintiffs have argued that the Marshall Division of the Eastern District of Texas is not conveniently located (other than for Geotag) since it is a three-hour car ride from the Dallas airport. On the other hand, Wilmington is a half-hour car ride from the Philadelphia airport. The plaintiffs have pointed (without a lot of specific detail) to some potential witnesses for whom Wilmington would be more convenient. The defendant points to

---

[2] While there is a paragraph in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011), about "the convenience of the witnesses and the location of the books and records," I do not understand the Federal Circuit to have altered the Third Circuit's focus on the issue being not so much where the witnesses and evidence are, but whether they can be produced in court.

its own witnesses[3] (for whom the Eastern District of Texas is more convenient) and unnamed witnesses of the plaintiffs who are based in California and Washington (for whom, I think, the inconvenience would be roughly equal in either place). I do not think it is clear at this point that the overall expense of trial would be significantly different in one location or the other. Likewise, while there are assertions about the time-to-trial in the two different locations, I am not persuaded that it would be anything other than a guess as to which District would offer the better chance for a quicker resolution. *See id.* at 1347. The patent has been previously construed in earlier litigation in the Eastern District of Texas, but the Magistrate Judge who decided the claims construction is no longer on the bench (D.I. 29, ¶ 48), and thus the familiarity he gained about the patent is equally available to judges in Texas and in Delaware. It is possible that the prospect of two different sets of litigation about the same patent could be considered a practical consideration, and while I believe it is relevant, I will consider it separately.

The relative administrative difficulty due to court congestion is also difficult to assess. Plaintiffs argue that the existing Geotag cases in the Eastern District of Texas are a management nightmare – an "unmanageable morass" (D.I. 29, p. 52)[4] – and argue that if this case were transferred to Texas, it would get lost in the shuffle. The Plaintiffs also suggest that pending judicial retirements make the Eastern District a bad choice for fast litigation. Rather than letting an Eastern District judge figure out how to handle this declaratory judgment case so that it did not get slowed down by the customer cases, or by other factors, the proposal is that the

---

[3] It seems unlikely that any Geotag witness besides its CEO is an important or necessary witness.

[4] Geotag agreed that the customer cases pose "genuine management issues." (D.I. 29, p. 78).

declaratory judgment proceed separately in Delaware, and the only congestion issue would be the one that would arise from the existence of unrelated Delaware cases. There is no evidence that the Eastern District cannot manage all the Geotag-related litigation in a fair and efficient manner,[5] and therefore I cannot conclude with any confidence at all that court congestion is likely to be better or worse in the Eastern District than in Delaware. (D.I. 29, p. 74).

The "local controversy" consideration is inapplicable here. I reject Geotag's argument that because Geotag's office is in Frisco, Texas, the claim that national and international businesses infringe its patent is a "local controversy" in the Marshall Division of the Eastern District. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 207 (D.Del. 1998).

The public policy of Delaware encourages the use by Delaware corporations – such as Google – of Delaware as a forum for the resolution of business disputes.[6] Typically, the forum is the Delaware Court of Chancery. More generally, though, Delaware wants corporations to incorporate in Delaware, and the taxes that corporations pay are important to Delaware's financial health.[7] While it is not unusual that a Delaware corporation should sue another

---

[5] Indeed, the evidence is that the Eastern District can do so. (D.I. 29, p. 79).

[6] The State of Delaware Division of Corporations, on its website, prominently asks, "Why Choose Delaware as Your Corporate Home?" The answer follows: "More than 900,000 business entities have their legal home in Delaware including more than 50% of all U.S. publicly-traded companies and 63% of the Fortune 500. Businesses choose Delaware because we provide a complete package of incorporation services including modern and flexible corporate laws, our highly-respected Court of Chancery, a business-friendly State Government, and the customer service-oriented Staff of the Delaware Division of Corporations."

[7] "Corporate license and income taxes are other tax categories that do not represent major revenue sources for the states as a whole or on average. . . . However, for Alaska, New Hampshire, and especially Delaware, these two taxes are quite important. Delaware collected an average of 32 percent of total state tax revenue from corporate license and income taxes in FY 2006 and FY 2007." Which States Rely on Which Tax, available at

Delaware corporation in a Delaware court, and is a factor that has some impact on the balancing, *see Micron Technology v. Rambus*, 645 F.3d 1311, 1332 (Fed. Cir. 2011),[8] this factor significantly overlaps with why Google would have chosen Delaware as a venue in the first place, and therefore I do not attribute it independent weight as a "public policy" factor. I believe it is taken into account in the first factor.

This is not a diversity case, and thus knowledge of state law is irrelevant here.

Were it not for the customer cases, given the preference for the plaintiff's choice of forum, there would be no reason to conclude that Geotag had met its burden of demonstrating that the case should be transferred to the Eastern District of Texas. In my opinion, however, the existence of the customer cases requires consideration whether transfer to the Eastern District of Texas is "in the interest of justice" notwithstanding the otherwise underwhelming basis for seeking transfer. Some of the same issues will arise in both the Delaware cases and the customer cases. Is the patent valid? Do the mapping programs/customer locator services infringe the patent, or whichever claims of the patent are determined to be valid? There is going to have to be a lot of judicial effort to manage these cases and resolve the issues presented, and, if the litigation proceeds in both Texas and Delaware, there is potential for duplicative efforts and inconsistent results, neither of which would be desirable for the administration of justice. It was

---

www.ncsl.org/documents/fiscal/WhichStatesRelyonWhichTax.pdf. I believe this accords with common knowledge, *see* Fed. R. Evid. 201(b)(1), but, since it has not been the subject of adversarial scrutiny, *see* Fed. R. Evid. 201(e), I do not rely on it.

[8] "Given that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware."

represented at oral argument that a motion (presented by 81 of the defendants in the customer cases, according to the transcript of a scheduling conference held in the Eastern District on November 9, 2011, in Nos. 2:10-cv-265, et al.) to stay the customer cases while the Delaware case proceeds was recently denied without prejudice. The plaintiffs in this case have assumed the defense of a some small percentage of the customer cases. Geotag's lead lawyer represents Geotag in both fora. There is overlap, and, all other things being equal, the related litigation should be in one forum and handled by one judge. *See Cashedge, Inc. v. Yodlee, Inc.*, 2006 WL 2038504, *2 (D.Del. 2006) (transfer of patent litigation between two Delaware corporations to Northern District of California).

Defendant argues that the "first-filed" rule applies to this case. Plaintiffs argue that the "customer suit exception to the first-filed rule" applies to this case. I understand this argument to be that the normal rule is "first to the courthouse" wins as to where a suit will be heard. In patent litigation, there is an exception to this, which is that – under some circumstances – a later-filed suit between a patent holder and a manufacturer will take precedence over an earlier-filed suit between the patent holder and the manufacturer's customer. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990);[9] *Delphi Corp. v. Automotive Technologies International, Inc.*, 2008 WL 2941116 (E.D. Mich. 2008); *see also Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F.Supp.2d 554 (D.Del. 2003) (transferring first-filed customer case). In *Delphi*, the District Court denied a

---

[9] "'At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit.... it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.'" *Id.* (quoting *Codex Corp. v. Milgo Electronics Corp.* 553 F.2d 735, 737-38 (1st Cir. 1977)).

transfer request, allowing a later-filed manufacturer's declaratory judgment suit against a patent holder to proceed, notwithstanding that the patent holder had previously filed suit in the Eastern District of Texas against seven of the manufacturer's customers. *Delphi* presented a situation less suitable for a transfer, primarily because there was less connection to the transferee court (Texas) and significantly more connection to the transferor court (Michigan) than there is in the present case. I believe the real dispute here is between Geotag and the companies that provide the mapping services, and not between Geotag and the customers of the companies that provide the mapping services. The plaintiffs produced ten requests for indemnification from their customers who were sued by Geotag. (D.I. 17, Exh. 1). These ten requests were said to be "samples." (D.I. 17, ¶ 7). It is clear that the plaintiffs have exactly the sort of manufacturers' interest as described in *Lear Siegler*. I believe this litigation does fall within the customer suit exception.

The plaintiffs imply that Geotag's connection with the Eastern District of Texas is a "sham," citing *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011), and should carry no weight. Geotag was incorporated under the laws of the State of Delaware on July 16, 2010,[10] and filed its first lawsuit seven days later, against fourteen corporations, none of whom had a principal place of business in Texas or Louisiana, choosing the Marshall Division of the Eastern District as a "convenient" venue. (Geotag v. Frontier Communications, No. 2:10-cv-265-DF, D.I. 1, ¶¶ 17-19). Geotag's office is now in Frisco, Texas,[11] and Geotag's CEO lives nearby in

---

[10] The plaintiffs' brief states the incorporation was in July 2010. (D.I. 14, p. 19). The exact date is easily retrievable from the Delaware Division of Corporations' website.

[11] It was in Plano at the time of the first suit. (No. 2:10-cv-265-DF, D.I. 1, ¶ 1).

-11-

Plano, Texas. Geotag's counsel has an office in Dallas. Frisco and Plano might be described as suburbs of Dallas. They are both in the Sherman Division of the Eastern District of Texas. The Sherman Division's main federal courthouse is in Sherman, about 40 miles from Frisco. The Dallas Division of the Northern District of Texas is also nearby; Dallas is about 28 miles from Frisco. The Geotag lawsuits could have been brought in either of those venues. Frisco is about 173 miles from Marshall, Geotag's preferred choice for "convenient" litigation. It is hard to come to any conclusion other than Geotag has done what it can to maximize its claim on the Marshall Division of the Eastern District of Texas as the only place to litigate.[12] It would be one thing if Geotag had some existence somewhere else, and the Frisco office was a front. That is not the case, however. Geotag does not have any other office. Thus, while its claim on the Marshall Division of the Eastern District is clearly not for the convenience of any party, lawyer, or witness, it is also not fraudulent. The lack of a substantial connection to the Eastern District is taken into account in the balancing of the other factors, and, in particular, by not according Geotag's preference for the Eastern District the same weight as it might otherwise deserve. *Cf. In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) (according no weight to the plaintiff's choice of venue when its "presence in Texas appears to be recent, ephemeral, and an artifact of litigation.").

I have considered *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011),[13]

---

[12] It was represented at oral argument that Geotag, which was a Delaware corporation at the time this suit was filed, has since re-incorporated under the laws of Texas. (D.I. 29, p. 57).

[13] The Federal Circuit's numerous transfer cases arising from the Fifth Circuit are not controlling as the Federal Circuit interprets the law of the Circuit in which the District Court sits. *See In re Link_A_Media Devices Corp.*, 662 F.3d at 1223. The law of the two Circuits in regard to how to conduct a transfer analysis is different in a number of regards. Of greatest relevance,

but I do not think it is particularly helpful in assessing the transfer request in this case, as its facts were very different. I would characterize that case generally as standing for the proposition that when the parties, all the witnesses, and all the evidence are in one distant jurisdiction, and the only connection to Delaware is that it is the state of incorporation of the defendant, and there is no other reason for the suit to be in Delaware, the suit must be transferred, upon timely request, to the distant jurisdiction. While in the present case there is a marginally greater connection to Delaware, as one of the plaintiffs is also a Delaware corporation, of much greater significance is that with the exception of Geotag's CEO, the witnesses have no connection to the proposed transferee district, and most of the evidence is not going to be there either.

I think the "interest of justice" supports management and resolution of all the Geotag cases by one judge, but it does not really provide an answer to the question whether it should be a Texas or a Delaware judge. Under Third Circuit law, considerable deference is given to the plaintiffs' choice of forum. Since there is little beyond the defendant's choice of forum – which is less compelling than usual – to suggest transfer should be ordered, I do not think the defendant has shown that the balance of convenience tips significantly enough in the defendant's favor so that transfer should be ordered. I will therefore deny the defendant's motion to transfer.

An appropriate order will be entered.

---

"Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the [transfer] analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). As noted earlier, the Third Circuit treats the plaintiff's choice as a factor of "paramount importance."

-13-