IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICROSOFT CORPORATION and GOOGLE INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 11-175 (RGA) |
| v. | ) ) | |
| GEOTAG INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**TALEO CORPORATION'S MOTION TO INTERVENE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
*Attorneys for Intervenor-Plaintiff*
*Taleo Corporation*

OF COUNSEL:

Jason C. Kravitz
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000

David C. McKone
NIXON PEABODY LLP
300 S. Riverside Plaza
16th Floor
Chicago, IL 60606
(312) 425-3900

March 26, 2012

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ........................................................................................................ I

I.     NATURE AND STAGE OF THE PROCEEDING .......................................................... 1

II.    SUMMARY OF ARGUMENT ....................................................................................... 2

III.   STATEMENT OF FACTS .............................................................................................. 3

IV.    ARGUMENT .................................................................................................................. 5

      A.     Taleo Meets the Requirements of Rule 24(b) ...................................................... 5

            1.     The Court Has Subject Matter Jurisdiction ................................................ 6

            2.     Taleo's Motion is Timely .......................................................................... 8

            3.     Taleo's Claims Have Issues of Law and Fact in Common With This
                Case .......................................................................................................... 10

            4.     There is No Independent Personal Jurisdiction Requirement .................... 10

      B.     The Court Should Exercise Its Discretion and Permit Taleo to Intervene ........... 12

V.     CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Arris Group, Inc. v. British Telecomm. PLC*,
  639 F.3d 1368 (Fed. Cir. 2011)..........................................................................................6, 8

*Commissariat a L'Energie Atomique v. Dell Computer Corp.*,
  2004 U.S. Dist. LEXIS 9107 (D. Del. May 13, 2004) ........................................................14

*Del. Valley Citizens' Counsel for Clean Air v. Pa.*,
  674 F.2d 970 (3d Cir. 1982) ..................................................................................................9

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011).............................................................................................15

*Honeywell Int'l Inc. v. Audiovox Comm'ns Corp.*,
  2005 WL 2465898 (D. Del. May 18, 2005) .............................................................. 9, 13, 14

*Hyland v. Harrison*,
  2006 WL 288247 (D. Del. Feb. 7, 2006) ...............................................................................8

*Jet Traders Investment Corp. v. TekAir, LTD*,
  80 F.R.D. 560 (D. Del. 1981) ...............................................................................................11

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990).............................................................................................14

*LG Display Co. v. AU Optronics Corp.*,
  2010 U.S. Dist. LEXIS 137396 (D. Del. Dec. 29, 2010) ............................................ 5, 6, 10

*Maxum Indemnity Co. Security Insurance Co. of Hartford v. Eclipse Manufacturing Co.
  of Connecticut*,
  2008 U.S. Dist. LEXIS 89757 (N.D. Ill. 2008) ...................................................................11

*Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995) .....................................................................................................8

*National American Corp. v. Federal Republic of Nigeria*,
  425 F. Supp. 1365 (S.D.N.Y. 1977)......................................................................................11

*Reedsburg Bank v. Apollo*,
  508 F.2d 995 (7th Cir. 1975) ................................................................................................11

*Spread Spectrum Screening, LLC v. Eastman Kodak Company*,
  2010 WL 3516106 (N.D. Ill. Sept. 1, 2010) ........................................................................15

*United States v. Alcan Aluminum*,
   25 F.3d 1174 (3d Cir. 1994) ................................................................................................9

# I.      NATURE AND STAGE OF THE PROCEEDING

On March 1, 2011, Microsoft Corp. and Google Inc. filed a complaint against GeoTag, Inc. for declaratory judgment of noninfringement and invalidity of GeoTag's U.S. Patent No. 5,930,474 ("the '474 patent").  *See* D.I. 1.  On April 29, 2011, GeoTag moved to dismiss this action for lack of subject matter jurisdiction or, in the alternative, to transfer the case to the Eastern District of Texas, where GeoTag has filed several patent infringement lawsuits on the same patent.  *See* D.I. 11.  On December 9, 2011, the Court denied GeoTag's motion to dismiss. *See* D.I. 28.  On January 13, 2012, the Court denied GeoTag's motion to transfer.  *See* D.I. 33. On February 27, 2012, the Court issued a Scheduling Order, *see* D.I. 42, which was amended on March 15, 2012, *see* D.I. 50.  Taleo, a Delaware corporation, now moves for permission to intervene.  Pursuant to Federal Rule of Civil Procedure Rule 24(c), Taleo's Complaint In Intervention is attached as Ex. J to the Grimm Decl.[1]

A concurrent declaratory judgment action involving the same patent was before this Court in *Where 2 Get It, Inc. v. GeoTag Inc.*, 1:11-cv-00223 (filed March 14, 2011) ("*W2GI*"). The Nielsen Company and Wilke Thornton, Inc. moved to intervene in that action.  *See W2GI*, D.I. 21.  This Court, on March 6, 2012, denied the motion to intervene and transferred the case to Texas.  *See W2GI*, D.I. 32.  Taleo's motion for intervention is proper and this memorandum will explain why the Nielsen decision is distinguishable and should not control the Court's decision on Taleo's Motion.

---

[1]     The term "Grimm Decl." refers to the Declaration of Thomas C. Grimm, filed concurrently herewith.

## II.      SUMMARY OF ARGUMENT

1.      Taleo meets the requirements of Federal Rule of Civil Procedure 24(b) for intervention.  Specifically:

a.      Taleo can establish an independent basis for subject matter jurisdiction because several of its customers named as defendants in Eastern District of Texas lawsuits brought by GeoTag have claimed indemnity from Taleo based on GeoTag's specific allegations, in formal infringement contentions, that Taleo-supplied and Taleo-hosted features infringe the '474 patent.  An actual controversy exists between Taleo and GeoTag, thus establishing an independent basis for subject matter jurisdiction.

b.      Taleo's motion is timely and not prejudicial, as discovery has just begun with a cutoff date set for December 14, 2012, the Court has not addressed any substantive issues, and the Court's deadline for joining parties is June 1, 2012.

c.      Taleo's claim of invalidity of the '474 patent shares a common question of law or fact with the primary litigation.  Although Taleo's infringement issues will differ from Microsoft's and Google's in this action, Taleo does not need to show that its action arises from the same transaction or occurrence as the primary action.  Intervention is governed by Rule 24; the joinder rules of Federal Rule of Civil Procedure 20 are inapplicable.

d.      There is no requirement to establish an independent basis for personal jurisdiction.

2.      The Court should exercise its discretion and permit Taleo to intervene because doing so would focus the dispute between GeoTag and the manufacturer (Taleo) rather than diffuse the dispute among GeoTag and several Taleo customers in Texas.  Intervention will further efficiency and judicial economy.

## III.    STATEMENT OF FACTS

Taleo is a Delaware corporation based in California and has been a party to prior actions in this Court.  *See* Grimm Decl. at ¶ 2.  It provides talent management systems that assist customers in various aspects of the human resources process, including recruiting.  *See id.* at ¶ 3.  For example, Taleo manufactures and supplies job search database software that allows job seekers to visit a Taleo customer's website and search for jobs by geographic area.  *See id.*  In most instances, Taleo hosts the job searching software and the job search databases on its own servers, through its own website, on behalf of its customers.  *See id.* at ¶ 4.  In those cases, job seekers who visit a Taleo customer's website are re-directed to Taleo's website and servers where the actual search is performed.  *See id.*

GeoTag is a non-practicing entity that purchased the '474 patent for the purpose of asserting it in infringement lawsuits.  *See* GeoTag, Inc., Registration Statement (Amendment No. 2 to Form S-1), at 1-3 (Jan. 31, 2011) (Grimm Decl. ¶ 41, Ex. K).  GeoTag derives its revenue through patent litigation and licensing.  *See id.*  To that end, GeoTag has sued over 500 defendants in 20 lawsuits in the United States District Court for the Eastern District of Texas alleging infringement of the '474 patent.  *See* Grimm Decl. at ¶ 5.  Several of those defendants (at least nine, but likely many more) are Taleo customers.  GeoTag is asserting the '474 patent against systems it alleges "associat[es] on-line information with geographic areas" and allows for "search[ing] topics within [a] selected geographic search area."  Grimm Decl. at ¶ 42, Ex. L at ¶ 50.  To date, GeoTag has focused its allegations primarily against "store locator," "business locator," and "product locator" functionality on the various defendants' websites.  *See, e.g., id.* at ¶ 65 (identifying a "Global Dealer Locator.").

Only recently has GeoTag begun to assert its patent against job search databases.  *See* Grimm Decl. at ¶ 6.  It is not surprising that GeoTag has been reluctant to assert its patent against

job search databases, such as those manufactured by Taleo.  The '474 patent explicitly disclaims coverage of such products, calling into question GeoTag's basis for making such assertions.  *See* '474 patent at 5:60-65 ("[S]uch a system is **distinguished from systems** which have geographically differentiated listings for the same topic (**such as job search databases** which include information about jobs in different cities), since these listings are primarily related to the topic (e.g., jobs), not to the geographical area.").  (emphasis added)

On June 17, 2011, several defendants filed a motion to stay the Texas actions based on the expectation that the instant Delaware action would resolve the bulk of the disputes in Texas.  *See* Grimm Decl. ¶ 43, Ex. M.  GeoTag opposed the stay in part by arguing that its allegations were not limited to store locators.  *See* Grimm Decl. ¶ 44, Ex. N at 4.  GeoTag's response did not identify any other technologies it believed were implicated and Taleo had, at that time, received no indemnity demands related to its job search databases.  However, shortly after responding to the motion to stay, GeoTag began disregarding its patent's disclaimer and notifying Taleo's customers, through formal infringement contentions, that their job search databases were now accused.  *See* Grimm Decl. at ¶¶ 17-25, Exs. B1-B9.  Taleo received its first indemnity demand related to GeoTag's allegations on October 11, 2011, from its customer Western Union.  *See id.* at ¶ 6, Ex. A1.  Since then, eight other customers have formally demanded indemnity based on GeoTag's allegations, bringing the total to nine of Taleo's customers, in five of the Texas actions.  *See id.* at ¶¶ 7, 9-16, Exs. A2-A9.  Taleo, a market leader in talent management software, expects the eventual number of allegations against Taleo's job search databases to be much higher.

On January 27, 2012, the defendants in several of the Texas actions renewed their motions to stay those actions pending resolution of this action.  *See* Grimm Decl. ¶ 45, Ex. O.  In

response, GeoTag opposed the motions by arguing that it has now "accused virtually every defendants them [sic] of infringement of the '474 patent by using location-based search technology unrelated to the accuse store locator technology, including providing 'careers' and weekly ads and promotions location-based search technology."  Grimm Decl. ¶ 46, Ex. P at 16. Thus, despite the patent's unambiguous disclaimer of job search databases, GeoTag asserted its patent broadly against such products to defeat a stay of the Texas actions pending the resolution of this action.

Of the nine Taleo customers seeking indemnity in the Texas actions, the majority are Delaware corporations (Western Union, AT&T Mobility, Gap, Inc., Deere & Company, Brinker International).  *See* Grimm Decl. at ¶ 8.  Not one is incorporated in Texas.  *See id*.  These customers have principal places of business around the country, with only two (AT&T and Brinker International) having principal places of business in Texas.  *See id*.

## IV.   ARGUMENT

Taleo meets the technical requirements of Rule 24(b).  However, Taleo recognizes that, even if Taleo's motion satisfies Rule 24(b), the Court has discretion to grant or deny Taleo's motion.  As explained below, permitting Taleo to intervene in this case will promote judicial economy by allowing Taleo to directly resolve its dispute with GeoTag in one litigation, rather than in a piecemeal and indirect way through the defense of many Taleo customers in several Texas litigations.

### A.    Taleo Meets the Requirements of Rule 24(b)

"On timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact. . . .  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  FED. R. CIV. P. 24(b).  "To establish that

intervention is warranted under Rule 24(b), the intervenor must demonstrate: (1) an independent basis for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a common question of law or fact with the primary litigation." *LG Display Co. v. AU Optronics Corp.*, 2010 U.S. Dist. LEXIS 137396, at *5 (D. Del. Dec. 29, 2010) (Grimm Decl. at ¶ 37, Ex. G).

### 1.     The Court Has Subject Matter Jurisdiction

The Court has subject matter jurisdiction to hear Taleo's Complaint under 28 U.S.C. § 2201, the Declaratory Judgment Act.  According to the Federal Circuit:

> where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers.

*Arris Group, Inc. v. British Telecomm. PLC,* 639 F.3d 1368, 1375 (Fed. Cir. 2011).  Here, both alternatives are met.  First, several of GeoTag's infringement claims against Taleo's customers in Texas are based on those customers' use of job search databases supplied by Taleo.  So far, nine customers have tendered formal indemnity claims to Taleo.  *See* Grimm Decl. at ¶¶ 6-7, 9-16, Exs. A1-A9.  Taleo's contracts with these customers may obligate Taleo to indemnify them, if the alleged infringement is based on the products it provides.  *See id.*

Second, there is a controversy between Taleo and GeoTag regarding whether Taleo is liable for inducing infringement by, or contributing to the infringement of, the Taleo customers accused by GeoTag.  For several of these customers, the accused location-based searching feature for the job search databases are hosted by Taleo through Taleo's website and by Taleo's servers.  *See* Grimm Decl. at ¶ 4.  For example, GeoTag's formal infringement contentions against Herman Miller, a Taleo customer, explicitly reference, and include screen shots from,

Herman Miller's Job Search tool accessible through Herman Miller's website. *See id.* at ¶ 18, Ex. B2; *see also id.* at ¶¶ 17, 19-25, Ex. B1, B3-B9 (GeoTag infringement contentions accusing additional Taleo customers). GeoTag's infringement contentions provide only cropped portions of the screens from which the images were captured. An examination of a full screen view of the Herman Miller website, which Taleo reproduces below, shows that this website actually resides at https://hermanmiller.taleo.net/, a Taleo website, as can be seen from the uniform resource locator ("URL") in the address field (circled) of the web browser window. *Id.* at ¶ 27, Ex. C2:



*See also id.* at ¶¶ 26, 28-32, Exs. C1, C3-C7 (screen shots for additional Taleo customers).

Here, Herman Miller's website refers or re-directs job seekers to Taleo's website, which maintains the job search database and hosts the search tool that job seekers use to search that database. *See* Grimm Decl. at ¶¶ 4, 27, Ex. C2. Thus, the infringement allegations against Herman Miller are directed to Taleo's product, not something that Herman Miller implemented. GeoTag's allegations against several other Taleo customers involve the same situation, with

Taleo hosting both the allegedly infringing job search database and the tool used to search it.  *See id.* at ¶¶ 4, 26, 28-32, Exs. C1, C3-C7.  Accordingly, GeoTag's formal infringement contentions against Taleo's customers are effectively allegations of contributory or induced infringement against Taleo, creating a justiciable controversy between Taleo and GeoTag.  *See Arris,* 639 F.3d at 1375.

### 2.    Taleo's Motion is Timely

"The timeliness of a motion to intervene is 'determined from all the circumstances and, in the first instance, by the trial court in the exercise of its sound discretion.'"  *Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) (quoting *In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 500 (3d Cir. 1982)).  "To determine whether the intervention motion is timely, we have listed three factors for courts to consider: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay."  *Mt. Top Condo.*, 72 F.3d at 369.

This litigation is in its early stages.  Discovery has just begun, with a Scheduling Order issued approximately a month ago on February 27, 2012.  *See* D.I. 42.  According to the Scheduling Order, the existing parties do not begin exchanging substantive contentions until May 14, and the discovery cutoff is not until December 14, 2012.  *See id.*  Notably, the Scheduling Order contemplates the possibility of joining other parties up until June 1, 2012. *See id.*

Courts have found that intervention at such an early stage of litigation is not likely to cause prejudice to existing parties.  For example, in *Mt. Top Condo.*, 72 F.3d at 370, the Third Circuit determined that "while some written discovery and settlement negotiations had occurred between the [plaintiff] and the [defendant] prior to the [intervenors'] motion, there were no depositions taken, dispositive motions filed, or decrees entered during the four year period in

question. Under these circumstances, we cannot say that intervention at this stage of the litigation would prejudice the current parties." Similarly, in *Hyland v. Harrison*, 2006 WL 288247, at *5 (D. Del. Feb. 7, 2006) (Grimm Decl. at ¶ 34, Ex. D), this Court found no prejudice when a party sought to intervene after motions to dismiss were fully briefed, but before final judgments or decrees were entered on substantive matters. *See also Honeywell Int'l Inc. v. Audiovox Comm'ns Corp.*, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) (Grimm Decl. at ¶ 35, Ex. E) ("Its motion [to intervene] is timely; discovery has not even begun in the case and case management issues are only now being addressed."). In contrast, untimely motions to intervene have generally involved situations where courts have engaged significantly in, and sometimes resolved, substantive matters. *See, e.g., Del. Valley Citizens' Counsel for Clean Air v. Pa.*, 674 F.2d 970, 974 (3d Cir. 1982) (finding a motion to intervene untimely in the context of modifications in a consent decree).

Taleo has not delayed in seeking to intervene. Taleo did not learn of GeoTag's allegations against Taleo's product until October 11, 2011, when it received the first of its customers' demands for indemnity. *See* Grimm Decl. at ¶ 6, Ex. A1. Over the course of the next approximately four months, as GeoTag added allegations against Taleo's products, Taleo received another eight demands. *See id.* at ¶¶ 9-16, Exs. A2-A9. It is now clear that Taleo may have significant exposure to GeoTag's claims against Taleo's customers. Taleo moved quickly to intervene once it became aware of the interest it needs to protect through this litigation. *See, e.g., United States v. Alcan Aluminum*, 25 F.3d 1174, 1182 (3d Cir. 1994) (finding timely a motion to intervene, filed approximately four years after the lawsuit began, when the intervenor moved quickly after learning that its interests were not being protected in the litigation).

Finally, this case is in its early stages so there will be no prejudice to the existing parties

if Taleo is permitted to intervene.  Taleo agrees to be bound by the key deadlines in the Scheduling Order (e.g., the December 14, 2012, Discovery Cutoff), and will work to meet, on an expedited basis, any discovery obligations for which deadlines pass during the pendency of this motion.

### 3.    Taleo's Claims Have Issues of Law and Fact in Common With This Case

Like Microsoft and Google's complaint, Taleo's proposed complaint alleges that the '474 patent is invalid.  As the Court recognized at the March 6, 2012, hearing in the *W2GI* case, "the validity of the patent is a common question of law or fact."  3/6/12 Tr. in *W2GI* at 23:7-11. Thus, Taleo is asserting "a claim or defense that has a common question of law or fact with the primary litigation."  *LG*, 2010 U.S. Dist. LEXIS 137396, at *5.

GeoTag also opposed W2GI's motion to intervene by trying to graft onto Rule 24(b) the requirement of Federal Rule of Civil Procedure 20(a)(1)(A) that parties joined as plaintiffs assert a right to relief based on the same transaction or occurrence.  The Court, at the March 6, 2012, hearing, properly rejected this argument as inconsistent with the language of Rule 24(b), which simply requires "a common question of law or fact."  3/6/12 Tr. in *W2GI* at 22:10-23:11.

### 4.    There is No Independent Personal Jurisdiction Requirement

In opposing Nielsen's motion to intervene in the *W2GI* case, GeoTag attempted to inject a new requirement into Rule 24, namely that an intervention plaintiff must also establish an independent basis for personal jurisdiction.  The Court properly rejected that argument at the March 6, 2012, hearing, ruling that Nielsen could have intervened but for the Court's exercise of its discretion to deny the motion.  *See* 3/6/12 Tr. in *W2GI* at 23:7-24:7.  Indeed, there is no requirement that an intervenor establish an independent basis for personal jurisdiction.  *See LG*, 2010 U.S. Dist. LEXIS 137396, at *5.  Rather, courts exercise jurisdiction over intervening

parties through supplemental jurisdiction in cases in which the court has original jurisdiction. *See* 28 U.S.C. § 1367 ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties"); *see also* Moore's Federal Practice 3d, § 24.22 [1].

None of the cases GeoTag cited in *W2GI* creates an independent personal jurisdiction requirement. In *Jet Traders Investment Corp. v. TekAir, LTD*, 80 F.R.D. 560, (D. Del. 1981), the domiciles of the intervenor and the plaintiff were important, not for personal jurisdiction, but because the introduction of the intervenor would have destroyed complete diversity of the parties, and thus destroyed subject matter jurisdiction. Similarly, in *Maxum Indemnity Co. Security Insurance Co. of Hartford v. Eclipse Manufacturing Co. of Connecticut,* 2008 U.S. Dist. LEXIS 89757, at *7 (N.D. Ill. 2008) (Grimm Decl. at ¶ 38, Ex. H), intervention was permitted in part because the introduction of the intervenor did not destroy diversity jurisdiction.

*National American Corp. v. Federal Republic of Nigeria*, 425 F. Supp. 1365 (S.D.N.Y. 1977), also cited by GeoTag in *W2GI*, was decided long before the enactment of Section 1367, and is thus not applicable. Even it if were, its situation was very different from this case. In *National American,* the intervenors attempted to intervene in a *quasi in rem* action without establishing a *quasi in rem* basis for being in the suit. *See* 425 F. Supp. at 1368. The original plaintiff was seeking to collect on an irrevocable letter of credit, and thus had never established personal jurisdiction over the defendants, while the intervenors sought damages from the defendant that could not be sought in an *in rem* action. *See id.* The *National American* court never had jurisdiction to hear a suit for damages in the original case. That is what the *National American* court was referring to when it cited *Reedsburg Bank v. Apollo*, 508 F.2d 995, 1000 (7th Cir. 1975), for the proposition that "there is no compelling reason to permit the litigation of a claim or defense that could not have been asserted had the intervenor been an original plaintiff

or defendant." In this case, the Court already has personal jurisdiction over GeoTag so there is no concern that Taleo would convert this case from an *in rem* action to an *in personam* action.

### B.      The Court Should Exercise Its Discretion and Permit Taleo to Intervene

Taleo recognizes that this Court found Nielsen and Wilke to have satisfied the requirements of Rule 24(b), yet exercised its discretion to deny their motion to intervene in the *W2GI* case. However, Taleo's situation is different and should not be controlled by the Court's ruling on Nielsen and Wilke's motion.

In *W2GI*, the Court explained that it would be more reasonable for Nielsen and Wilke to be involved in the single Texas litigation in which their two customers were named as defendants rather than to start two new lawsuits in Delaware. *See* 3/6/12 Tr. in *W2GI* at 23:14-24:7. However, the Court noted that adding one lawsuit to Delaware compared to lawsuits against one hundred customers in Texas may have warranted a different result. *See id.* at 23:22-24:1. Taleo's situation is more akin to the latter than the former.

Taleo's motion to intervene is not simply an attempt to trade one lawsuit for two. To date, nine Taleo customers in five separate Texas actions have made claims for indemnity from Taleo. *See* Grimm Decl. at ¶¶ 6-7, 9-16. If Taleo intervenes in Texas, it must do so in at least five separate lawsuits to protect its interests and those of its customers, compared to one lawsuit in Delaware. But that is not the end of the story. In the Texas litigations, more than five hundred defendants have been named in a total of 21 lawsuits. Since Taleo is a market leading provider of job search databases, it is certain that many more of its customers are named defendants in the various Texas lawsuits. *See id.* at ¶¶ 3, 5. It is likely only a matter of time before GeoTag amends its formal infringement contentions to add allegations against job search databases provided by Taleo for more Taleo customers already accused of infringement based on store locators. However, to protect itself, and because of the timeliness requirement for

12

intervening, Taleo cannot wait until GeoTag asserts its claims against a multitude of its customers before filing a motion to intervene here.

The most practical way for Taleo to protect its interests is to intervene in this action. If Taleo is not permitted to intervene here, and instead must attempt to intervene in the five separate Texas actions, it likely will eventually be managing and defending the interests of dozens, if not scores, of customers, some of whom have used more than one job search database system and have additional products accused. This Court has found situations like this to be prejudicial to the manufacturers, who are ultimately the real parties in interest. *See, e.g., Honeywell*, 2005 WL 2465898, at *3 ("It is impracticable to try an infringement case against 40 some defendants or third-party defendants with many different accused devices, and it is unwise to attempt any such thing when liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture and when at least some of the manufacturers of the LCDs are before the court and are willing to stand behind their products in this litigation."). If the cases proceed to trial in Texas, Taleo will have to participate in at least five separate trials (one for each Texas case naming a Taleo customer). Some of those cases include dozens of defendants with multiple accused products and likely will not be amenable to a single trial. Taleo could be facing participation in nine separate trials in Texas, assuming it receives no more indemnity demands (an unlikely scenario). In this Delaware action, Taleo can resolve all nine of those disputes (and any others that later arise) in a single trial.

Moreover, the Texas cases, while now assigned to the same judge, are not following the same tracks. Some of those cases have scheduling orders, but the majority do not. GeoTag appears to be proposing different scheduling orders for different groups of the Texas cases. *See* Grimm Decl. ¶ 47, Ex. Q at 3 and n.3. If Taleo intervenes in Texas, it will likely have to do so

according to several different schedules, even though the core issues will be identical. In other words, although there is really only one dispute between Taleo and GeoTag, Taleo will be forced to litigate as if there were five or more. Permitting Taleo to intervene here would conserve judicial resources and promote efficiency and fairness.

It also makes the most sense for Taleo, a manufacturer of products accused of patent infringement, to litigate its interest in the lawsuit between GeoTag and the manufacturers, rather than the Texas lawsuits between GeoTag and the customers. Consistent with the "customer suit exception," *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990), Microsoft and Google, manufacturers of technology used in store locators, brought this declaratory judgment action to protect their interests as manufacturers. As the Court previously recognized, "the real dispute here is between GeoTag and the companies that provide the mapping services, and not between GeoTag and the customers of the companies that provide the mapping services." D.I. 32 at 11. Taleo, a manufacturer of products accused in Texas, stands in the same situation and similarly desires to defend its job search database products. This action presents a much more fair and efficient vehicle for doing so. *See Honeywell*, 2005 WL 2465898, at *3 ("[F]rom the perspective of the host of defendants [plaintiff] has chosen to sue, and in the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed.").

This Court has found that principles of efficiency and judicial economy favor resolving the dispute between the plaintiff and the real party in interest directly rather than indirectly though suits between the plaintiff and the real party in interest's customers. *See, e.g., Commissariat a L'Energie Atomique v. Dell Computer Corp.*, 2004 U.S. Dist. LEXIS 9107 (D. Del. May 13, 2004) (Grimm Decl. at ¶ 39, Ex. I) ("Because the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best

position to contest the validity and infringement of CEA's asserted patents.  Resolving these issues prior to proceeding against the OEM/distributors and retailers would surely simplify this case.").  The Taleo customers accused by GeoTag of infringement are merely "peripheral," and will likely not be able to meaningfully contribute to resolving the real dispute between GeoTag and Taleo.  *See Spread Spectrum Screening, LLC v. Eastman Kodak Company*, 2010 WL 3516106, at *9 (N.D. Ill. Sept. 1, 2010) (Grimm Decl. at ¶ 36, Ex. F):

> [B]ecause Kodak's Customers merely use a Kodak product, they have nothing substantive to offer during plaintiff's action against Kodak and likely do not even understand how the product software actually works and will not be helpful to determine whether Kodak's Staccato® product infringes the '623 patent. Consequently, they are merely peripheral to the litigation between plaintiff and Kodak.

Moreover, the Federal Circuit looks unfavorably on plaintiffs who seek to extract nuisance settlements rather than to resolve the core disputes.  *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (affirming the district court's finding that a patent holding company "acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement from" the defendant).  In the Texas lawsuits, GeoTag seeks to avoid confronting the manufacturers in favor of extracting nuisance settlements from hundreds of "peripheral" defendants.  By intervening here, Taleo seeks to take GeoTag's claims against its products head on through a suit directly between Taleo and GeoTag.  Given the number of defendants and the difficulty of even getting scheduling orders in the Texas actions, it is likely that the Texas actions will become mired in discovery and case management.  The forest will be lost for the trees.  Taleo has strong defenses against GeoTag's claims and intervention will permit it to resolve the dispute quickly and directly, not indirectly through its customers.

## V.      CONCLUSION

For the foregoing reasons, Taleo respectfully requests the Court's permission to intervene.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*
Thomas C. Grimm (#1098)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
    *Attorneys for Plaintiff-Intervenor*
    *Taleo Corporation*

OF COUNSEL:

Jason C. Kravitz
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000

David C. McKone
NIXON PEABODY LLP
300 S. Riverside Plaza, 16th Floor
Chicago, IL  60606
(312) 425-3900

March 26, 2012
5828560

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 26, 2012, upon the following in the manner indicated:

**BY E-MAIL**

Arthur G. Connolly, III
Thatcher A. Rahmeier
CONNOLLY, BOVE, LODGE & HUTZ
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
aconnollyIII@cblh.com
trahmeier@cblh.com
  *Attorneys for Microsoft Corporation and Google Inc.*

Ramsey M. Al-Salam
Stevan R. Stark, Jr.
Sher S. Kung
PERKINS COIE
1201 Third Avenue, Suite 4800
Seattle, WA 98101
ralsalam@perkinscoie.com
sstark@perkinscoie.com
SKung@perkinscoie.com
  *Attorneys for Microsoft Corporation and Google Inc.*

Christopher Kao
Victoria Q. Smith
PERKINS COIE
3150 Porter Drive
Palo Alto, CA 94304
ckao@perkinscoie.com
vsmith@perkinscoie.com
  *Attorneys for Microsoft Corporation and Google Inc.*

Matthew C. Bernstein
Patrick J. McKeever
PERKINS COIE
11988 El Camino Real, Suite 200
San Diego, CA 92130
mbernstein@perkinscoie.com
pmckeever@perkinscoie.com
  *Attorneys for Microsoft Corporation and Google Inc.*

Melody K. Glazer
PERKINS COIE
1 East Main Street, Suite 201
Madison, WI 83703
mglazer@perkinscoie.com
  *Attorneys for Microsoft Corporation and Google Inc.*

Kenneth L. Dorsney
Mary Matterer
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899-2306
kdorsney@morrisjames.com
mmatterer@morrisjames.com
  *Attorneys for GeoTag Inc.*

Eric Buether
Chris Joe
BUETHER JOE & CARPENTER LLC
1700 Pacific Avenue, Suite 2390
Dallas, TX 75201
Eric.Buether@BJCIPLaw.com
Chris.Joe@BJCIPLaw.com
  *Attorneys for GeoTag Inc.*

                              */s/ Thomas C. Grimm*
                              Thomas C. Grimm (#1098)

5828074

2