IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICROSOFT CORPORATION and GOOGLE INC., | ) ) ) |
| Plaintiffs, | ) ) ) C.A. No. 11-175 (RGA) |
| v. | ) ) |
| GEOTAG INC., | ) ) |
| Defendant. | ) ) ) |

**TALEO CORPORATION'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO INTERVENE**

                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                    Thomas C. Grimm (#1098)
                    1201 N. Market Street
                    P.O. Box 1347
                    Wilmington, DE  19899-1347
OF COUNSEL:            (302) 658-9200
                    tgrimm@mnat.com
Jason C. Kravitz           *Attorneys for Intervenor-Plaintiff*
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000

David C. McKone
NIXON PEABODY LLP
300 S. Riverside Plaza, 16th Floor
Chicago, IL 60606
(312) 425-3900

April 27, 2012

# **TABLE OF CONTENTS**

                                                                       Page

TABLE OF AUTHORITIES .................................................................................................... ii

I.      SUMMARY OF ARGUMENT ....................................................................................... 1

II.     ARGUMENT .................................................................................................................. 1

          A.      Like Microsoft and Google, Taleo Faces a Large Number of Potential Indemnity Claims in Texas .................................................................................................... 1

          B.      One Delaware Case Will Be More Efficient Than the Many Texas Actions .......... 2

          C.      Taleo's Customers in the Texas Actions are Merely Peripheral to the Dispute Between GeoTag and Taleo ................................................................................... 6

          D.      Any Complication of the Delaware Case will be Minimal ...................................... 8

          E.      Rule 24 Has No Independent Personal Jurisdiction Requirement .......................... 9

III.    CONCLUSION ............................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Codex Corp. v. Milgo Elec. Corp.*,
 553 F.2d 735 (1st Cir. 1977)...................................................................................................2, 7, 8

*Delphi Corp. v. Automotive Techs. Int'l, Inc.*,
 2008 U.S. Dist. LEXIS 56463 (E.D. Mich. July 25, 2008) ........................................................3

*Honeywell Int'l Inc. v. Audiovox Comm'ns Corp.*,
 2005 WL 2465898 (D. Del. May 18, 2005)............................................................................6, 9

*Privasys, Inc. v. Visa International*,
 2007 U.S. Dist. LEXIS 86838 (N.D. Cal., Nov. 14, 2007).........................................................7

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
 279 F. Supp. 2d 554 (D. Del. 2003).......................................................................................3, 6

*Spread Spectrum Screening, LLC v. Eastman Kodak Company*,
 2010 WL 3516106 (N.D. Ill. Sept. 1, 2010) ...............................................................................6

*Thermapure, Inc. v. Temp-Air, Inc.*,
 2010 U.S. Dist. LEXIS 136262 (N.D. Ill., Dec. 22, 2010) .........................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24(b) ...................................................................................................................1, 9

I.      SUMMARY OF ARGUMENT

GeoTag argues that Taleo's Motion to Intervene is essentially the same as that filed by Nielsen and WTI in the *Where 2 Get It* (W2GI) case, hoping the Court will deny Taleo's motion as it did Nielsen and WTI's.  GeoTag offers four arguments in support of that position: 1) Taleo has not yet received a large enough number of indemnity requests to warrant litigating in Delaware rather than Texas; 2) Taleo can get the relief it requests just as easily and efficiently in the 500-defendant Texas actions; 3) Taleo's customers, sued in Texas, are more than peripheral, although GeoTag does not explain why; and 4) Taleo has not established personal jurisdiction over GeoTag in Delaware, although as Taleo demonstrated in its Opening Memorandum of Law (hereafter "Opening Brief") this is not a requirement of Federal Rule of Civil Procedure 24(b).  Each of these arguments should be rejected for the reasons stated in Taleo's Opening Brief, and further stated below.

II.     ARGUMENT

   A.   **Like Microsoft and Google, Taleo Faces a Large Number of Potential Indemnity Claims in Texas**

GeoTag's argument that "[u]nlike Microsoft and Google, Taleo does not claim that it has a hundred or more customers who are the target of GeoTag's infringement claims" and instead has received only a "handful" of indemnity demands, GeoTag Br. at 4-5, improperly discounts the true magnitude of Taleo's potential exposure.  In fact, over eighty Taleo customers have been sued by GeoTag in Texas, *see* Declaration of Josh Faddis, filed concurrently herewith, at ¶¶ 2-4, with more than nine of those defendants formally demanding indemnity.  While eighty is less than "a hundred or more," it is on the order of the claims faced by Google and Microsoft rather than that faced by Nielsen and WTI.  Taleo anticipates that it will receive additional indemnity demands once discovery in the Texas actions begins in earnest.  Indeed, since Taleo filed its

1

motion, two additional customers have indicated that they are demanding indemnity. *See id.* at ¶¶ 5-6 and Ex. R.  Moreover, GeoTag still has until June 27, 2012, to serve its Texas infringement contentions for many of the defendants, which may trigger additional indemnity demands.  *See* 272-D.I. 89 (GeoTag Br. Ex. A.).

Even if Taleo does not receive indemnity demands from all eighty of its customers sued in Texas, it still has a strong interest in defending its products as to each of them.  A finding against a Taleo product for one customer could damage that customer relationship and could affect how similar issues are resolved against other customers.  As the First Circuit has recognized, "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products."  *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 738 (1st Cir. 1977).  Thus, Taleo's interest extends far beyond the nine defendants listed in its Opening Brief to all eighty of its customers named in Texas.  That interest is comparable to Google's and Microsoft's interests, and different by a factor of forty from that established by Nielsen and WTI.

**B.    One Delaware Case Will Be More Efficient Than the Many Texas Actions**

Allowing Taleo to intervene in the single Delaware case will also be far more efficient than the many Texas actions.  GeoTag argues that Taleo should have intervened in Texas and suggests that, despite the approximately 500 defendants involved in the Texas actions, those actions can be managed such that similar technologies can be efficiently tried together.  GeoTag "commits to working with Taleo to accomplish this shared goal," GeoTag Br. at 2, but offers no substantive explanation of how this could be done.  As explained below, separately managing and trying the cases as to Taleo's products in Texas is unrealistic, and a single Delaware action provides the only meaningful opportunity for the Court and parties to resolve the substantial amount of claims relating to Taleo's products and services.

First, trying similar technologies together in the Texas actions is not as simple as GeoTag suggests. Even if the dispute between GeoTag and Taleo were limited to nine defendants in five lawsuits, and the cases could be realigned to group them together, it would still be very difficult to try those nine in a single trial without causing significant difficulty elsewhere. For example, GeoTag has also accused each of these nine defendants of infringing through its use of other technologies (e.g., store locator technology, mobile technology, and/or promotional technology) unrelated to Taleo's products. And those other technologies are not the same for each of the nine defendants (e.g., not all of the nine defendants use the same store locator technology, and individual defendants may have used more than one over the course of the damages period). Thus, trying the Taleo customers together would be at the expense of trying other similar technology together.

In contrast, by allowing a single action to proceed in Delaware, the Court and parties can focus on whether or not Taleo's products infringe GeoTag's patent – without the distraction of other companies' products – and the results of that dispute will directly impact issues in over 80 separate customer actions. Put differently, "any resolution vis-à-vis [Taleo] would be global as far as its [] customers and, for that matter, [GeoTag] would be concerned. . . . As a matter of judicial economy, global settlement is preferred over piecemeal litigation." *Delphi Corp. v. Automotive Techs. Int'l, Inc.,* 2008 U.S. Dist. LEXIS 56463, *14 (E.D. Mich. July 25, 2008); *accord Ricoh*, 279 F. Supp. 2d at 558 ("[T]he California court's determination regarding infringement and validity of the '432 patent will efficiently dispose of the infringement issues regarding [manufacturer's] customers in this case."). To avoid piecemeal litigation and potentially inconsistent results, and to efficiently resolve the entire dispute between GeoTag and Taleo, intervening in Delaware is the only realistic option.

Second, the cases in Texas are also progressing much more slowly than the Delaware case. GeoTag highlights that a single judge is now handling all the Texas cases and has ordered the parties to meet and confer regarding case management, but this does not mean that the parties will reach agreement or that the Texas court will issue a comprehensive case management order any time soon. The history of those cases suggests otherwise. For example, the circuitous path of Texas action 2:2010-cv-265, filed on July 23, 2010, illustrates the difficulty the Texas court has had in even formulating a schedule:

- On January 20, 2011, Judge Ward, the first of at least four judges to handle these cases, ordered the parties in cv-265 and other cases (e.g., 2:10-cv-272) to meet and confer and to submit docket control and discovery orders. *See* 272-D.I. 23 (Reply Declaration of Thomas C. Grimm filed concurrently herewith ("Grimm R. Decl.") Ex. S);

- At a February 16, 2011, Status Conference, Judge Ward again ordered the parties to meet and confer on a schedule;

- On March 18, 2011, Judge Ward entered discovery and docket control orders. *See* 272-D.I. 31, 32 (Grimm R. Decl. Exs. T, U);

- However, on October 4, 2011, the case was reassigned to Judge Folsom. *See* 272-D.I. 47 (Grimm R. Decl. Ex. V);

- On November 9, 2011, Judge Folsom held a Scheduling Conference and explained that he was retiring and another judge would have to make long term scheduling decisions. *See* 272-D.I. 62 (Grimm R. Decl. Ex. W);

- On November 14, 2011, Judge Folsom ordered the parties to again meet and confer (in person) about a discovery plan. *See* 272-D.I. 64 (Grimm R. Decl. Ex. X);

- On December 20, 2011, the case was reassigned to Judge Gilstrap;

- On January 4, 2012, the case was reassigned back to Judge Folsom;

- On January 20, 2012, GeoTag moved for entry of a disputed case management plan. *See* 272-D.I. 80 (Grimm R. Decl. Ex. Y);

- On February 23, 2012, the case was once again reassigned, this time to Judge Schneider. *See* 272 D.I. 83 (Grimm R. Decl. Ex. Z).

- On April 11, 2012, Judge Schneider ordered the parties to submit a joint report by June 27, 2012, and appear for a Scheduling Conference on July 11, 2012, which is where the cases stand today. *See* 272-D.I. 89 (GeoTag Br. Ex. A).

Along the way, GeoTag added lawsuit after lawsuit, and may continue to add lawsuits in the future.

It remains to be seen whether the Texas court's most recent order to meet and confer will result in an agreed schedule, or simply more disagreement for that court to resolve. Given the progression of those cases so far, the prospect of a comprehensive schedule being agreed to by 500 companies appears optimistic. In any case, the schedule of the Texas actions is up in the air until at least July 11, 2012, when the Texas court presumably holds its case management conference. In the meantime, the Delaware action is progressing with a schedule – which Taleo has no intention of disturbing – and is likely to reach major case milestones (claim construction, summary judgment, and trial) much sooner than any of the Texas actions.[1]

Finally, GeoTag makes a veiled accusation of delay on the part of Taleo for not immediately intervening in Texas, misstating that Taleo "has been representing the interests of these customers in the Texas litigation for months." GeoTag Br. at 1. As explained in its Opening Brief at 9, Taleo first learned of one indemnity demand in October 2011, and only learned of the eight other demands as they came in over the course of four months. Taleo quickly, and timely, moved to intervene when it realized its potential substantial exposure in the

---

[1]   Practically speaking, the decisions of this Court (including claim construction) will have a significant impact on the Texas actions and likely will impact Taleo's interests regardless of whether Taleo intervenes. For example, while Taleo and its customers might not be technically bound by this Court's claim construction, the Texas court is likely to find it highly persuasive. Fairness suggests that Taleo be given an opportunity to influence the claim construction in this case given that its customers may effectively be bound by it in Texas.

Texas actions. Taleo has not been representing its customers' interests in Texas and instead seeks to do so globally through intervention in Delaware.[2]

### C. Taleo's Customers in the Texas Actions are Merely Peripheral to the Dispute Between GeoTag and Taleo

In its Opening Brief at 14-15, Taleo explained that the real dispute is between GeoTag and Taleo, not between GeoTag and several of Taleo's customers. In such situations, "dealing with the manufacturers first is the fairest and most efficient way to proceed." *Honeywell Int'l Inc. v. Audiovox Comm'ns Corp.*, 2005 WL 2465898, at *3 (D. Del. May 18, 2005); *accord Ricoh*, 279 F. Supp. 2d at 557. Taleo's customers did not design or implement the job search databases; they merely make ordinary use of products supplied by Taleo. As one court explained, "[customers] have nothing substantive to offer during plaintiff's action against [the manufacturer] and likely do not even understand how the product software actually works and will not be helpful to determine whether [Taleo's] product infringes the ['474] patent." *Spread Spectrum Screening, LLC v. Eastman Kodak Company*, 2010 WL 3516106, at *9 (N.D. Ill. Sept. 1, 2010).

GeoTag does not dispute that Taleo technology forms the basis of GeoTag's claims in each of the more-than-80 lawsuits directed towards Taleo's customers. Instead, GeoTag suggests that the customers are somehow not peripheral because they purportedly derive more

---

[2] If permitted to intervene in Delaware, Taleo will seek a complete resolution of all GeoTag's claims against Taleo's products in one lawsuit. At the very least, the resolution of issues in Delaware will greatly simplify the disputes in Texas. *See Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003) ("[B]ased on the outcome of the California case, either [manufacturer] will prevail and use of the [supplied product] will be determined to be non-infringing, or [patentee] will prevail, and [manufacturer] will be forced to pay damages or license the patent. In the latter situation, [manufacturer's] customers would then be immunized from liability."); *Thermapure, Inc. v. Temp-Air, Inc.*, 2010 U.S. Dist. LEXIS 136262, *34 (N.D. Ill., Dec. 22, 2010).

benefits from Taleo's job search databases than "any vendor of that technology" does. GeoTag Br. at 6. GeoTag points to no evidence supporting or explaining its facially-incredible position – it offers only attorney argument. Moreover, the case law GeoTag cites in its opposition illustrates that Taleo, rather than its customers, is the proper defendant.

For example, GeoTag's citation to *Codex*, 553 F.2d at 738 n.6, for the premise that a patentee may have a "special interest in proceeding against a customer himself" is misplaced. *Codex* makes clear, and in fact holds, that this "special interest" is the rare exception, not the rule; in the general case, the real dispute is presumed to be between the patentee and the manufacturer. In *Codex*, a patentee brought an infringement suit against a customer of Codex in Kansas. Codex then filed a declaratory judgment action in Massachusetts, which the Massachusetts court stayed. The First Circuit reversed the stay, explaining that "at the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit." *Codex,* 535 F.2d at 737-38. The *Codex* court went so far as to state a "rebuttable presumption" that a manufacturer's action takes precedence over an action against a mere customer. *Id.*

*Privasys, Inc. v. Visa International*, 2007 U.S. Dist. LEXIS 86838 (N.D. Cal., Nov. 14, 2007), which GeoTag also cites and where the *Codex* presumption was rebutted, is very different from this case. In *Privasys*, the plaintiff showed that the defendants were not "mere customers" because "they manufacture[d] and issue[d] payWave cards themselves . . . ." *Id.* at *12. Unlike the patentee in *Privasys,* GeoTag has not shown a special reason why its customer suits are anything more than peripheral. GeoTag simply argues without explanation that Taleo's customers are "the principle beneficiaries" of the technology but offers no evidence that the defendants manufacture and issue the technology like the defendant in *Privasys*. Any plaintiff

7

could assert, as GeoTag does, that customers somehow value the manufacturer's technology differently than the manufacture does. If this were all that was necessary, there would be no presumption. *Codex*'s statement that there may be situations where a patentee has a "special interest" against a customer was simply a qualifier to avoid the rule from becoming "inflexible." 553 F.2d at 738. Contrary to GeoTag's arguments, it was not an exception that should swallow the rule.

### D. Any Complication of the Delaware Case will be Minimal

Contrary to GeoTag's contention, adding Taleo to the Delaware case will add minimal, if any, complication. *See* GeoTag Br. at 2. GeoTag argues that Taleo's technology is new to the case and different from Microsoft and Google's technology. However, according to GeoTag's Notice of Accused Instrumentalities, GeoTag is already accusing the "Microsoft careers feature" in this case. *See* D.I. 60, Exhibit A, at 3. Thus, job search database technology is already a part of this case and the infringement issues related to the Taleo products should have substantial overlap.[3] The addition of Taleo will not add significant complication.

GeoTag's argument also cuts both ways. GeoTag would have Taleo attempt to protect its interests only in the Texas actions, where the infringement issues are far more complicated. With approximately five hundred defendants, the Texas actions involve a multitude of accused products, many of which are not part of the Delaware case. Taleo cannot say with certainty how many different accused products are at issue in Texas, but the number is substantially higher than in Delaware. The level of complication in Texas will make it difficult for Taleo to protect its

---

[3] Moreover, as explained in Taleo's Opening Brief at 3-4 (citing '474 patent at 5:60-65), GeoTag's patent explicitly disclaims coverage of job search databases such as those provided by Taleo. Taleo expects that this will present an opportunity to quickly resolve the case as to Taleo, possibly through an early summary judgment motion.

8

interests there. *See, e.g., Honeywell*, 2005 WL 2465898, at *3 ("It is impracticable to try an infringement case against 40 some defendants or third-party defendants with many different accused devices . . . ."). In contrast, if Taleo is permitted to intervene in Delaware, this Court will be addressing infringement issues related to the products of just three companies. Efficiency and fairness weigh in favor of permitting Taleo to resolve its dispute with GeoTag in Delaware rather than in Texas.

Finally, the Court will not need to rework its schedule to accommodate Taleo. As explained in its Opening Brief at 9-10, Taleo agrees to be bound by the Court's key deadlines, and will work to meet, on an expedited basis, any discovery obligations for which deadlines pass during the pendency of this motion. Accordingly, the number of "special deadlines" the Court will need to set will be small and will not impact the major milestones in the case. On this point, Microsoft and GeoTag have filed a Response to Taleo's Motion, indicating that they do not oppose intervention as long as it does not delay the Court's schedule. *See* D.I. 70.

### E.     Rule 24 Has No Independent Personal Jurisdiction Requirement

GeoTag improperly accuses Taleo of "sidestep[ing]" the issue of personal jurisdiction by noting that the Court ruled against GeoTag on that issue in the *W2GI* case. Taleo believes that the Court did rule against GeoTag when it held that Nielsen and WTI could have intervened but for the Court's exercise of discretion. *See* 3/6/2012 Tr. at 23-24. However, Taleo did not sidestep the issue. Rather, Taleo explained in detail in its Opening Brief at 10-12, why the Court was correct in determining that Nielsen's motion to intervene met the requirements of Rule 24(b). If the Court did not reach the issue in *W2GI*, the Court should rule in Taleo's favor for the reasons presented by Taleo in its Opening Brief.

### III. CONCLUSION

For the foregoing reasons, and those stated in Taleo's Opening Brief, the Court should permit Taleo to intervene.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*

---

Thomas C. Grimm (#1098)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
*Attorneys for Intervenor-Plaintiff*

OF COUNSEL:

Jason C. Kravitz
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000

David C. McKone
NIXON PEABODY LLP
300 S. Riverside Plaza, 16th Floor
Chicago, IL 60606
(312) 425-3900

April 27, 2012
5891241