

# CONNOLLY BOVE LODGE & HUTZ LLP

ATTORNEYS AT LAW

Arthur G. Connolly, III
Partner

DIRECT DIAL: (302) 888 6318
DIRECT FAX: (302) 658 0380
EMAIL: AConnollyIII@cblh.com
REPLY TO: Wilmington Office

WILMINGTON, DE

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

May 7, 2012

**BY E-FILING**

The Honorable Richard G. Andrews
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801-3570

      Re:    *Google Inc. and Microsoft Corp. v. GeoTag*, No. 1:11-cv-175-RGA

Dear Judge Andrews:

      This is Plaintiff Microsoft's response to GeoTag's May 4, 2012 letter to the Court (D.I. 84). Microsoft respectfully submits that if GeoTag is unable to meet the May 14 deadline for serving its initial infringement contentions, it has nobody but itself to blame. Microsoft and Google initiated this case because GeoTag had sued numerous Microsoft and Google customers, alleging that the store locators on the customer web sites infringed GeoTag's patent. Accordingly, the declaratory judgment action filed by Microsoft and Google solely addressed store locator technology. After failing to have Your Honor dismiss or transfer this case, GeoTag dramatically expanded it by adding 18 additional Microsoft products and 13 additional Google products (the "newly added products") in an effort to slow down adjudication of this case so that they can achieve maximum leverage from their lawsuits against Microsoft's and Google's customers.

      Until filing its letter to the Court last Friday, GeoTag was unwilling to provide any detail on its infringement allegations on the newly added products beyond identifying URLs. D.I. 60 at Exhibit A (GeoTag's Notice of Accused Instrumentalities). Plaintiffs repeatedly tried to get GeoTag to provide more detail, but were unsuccessful. After last month's hearing, Plaintiffs again contacted GeoTag seeking clarification on seven products for which Plaintiffs could not even hazard a guess as to which aspects GeoTag was accusing. Attached as Exhibit 1. GeoTag *never responded.* Now, unable to meet next week's deadline to serve infringement contentions, GeoTag is suddenly willing to identify the accused aspects of these products and describe the documents and source code it purportedly needs for each product. Other than delay, there is no reason why GeoTag did not provide this information earlier.

      Notwithstanding GeoTag's lack of cooperation, Microsoft has been working diligently to produce the relevant technical documents and source code GeoTag needs to understand the operation of the accused products. Microsoft's counsel has conducted dozens of interviews with engineers and product managers, including some located in foreign countries, in order to identify the relevant documents and source code and make them available to GeoTag. Pursuant to the Court's order, Microsoft produced nearly *500,000* pages of core technical documents on April

The Honorable Richard G. Andrews
May 7, 2012
Page 2

16, 2012. On the same date, Microsoft made more than *10,000* source code files available for inspection. Microsoft's production has focused on the source code and documents which GeoTag asked for during last month's hearing.

A.   **GeoTag's Alleged Discovery Issues**

GeoTag's letter flags a number of issues for the Court's attention.

1.   **Alleged Source Code Issues**

GeoTag's letter suggests that there are a number of source code-related issues. In reality, the inspection of Microsoft's source code has been running smoothly since it began two weeks ago. Microsoft has been more than accommodating to GeoTag's source code reviewers. For example, source code inspection has been permitted outside of normal business hours. The reviewers have been provided with a breakout room with a printer for non-source code printing. GeoTag also requested a printout of all source code folders and file names on the source code computer. Although not required by the Protective Order, Microsoft provided the printout and agreed that it would not count toward GeoTag's 500-page limit in order to facilitate and expedite GeoTag's review. Much of the relevant source code has been produced and the parties are working to identify any additional source code modules that are needed. Attached as Exhibit 2.

GeoTag also seeks to delay by reopening provisions of the Protective Order the parties agreed to and the Court ordered over a month ago. The Protective Order provides for the installation of "software tools for *viewing and searching* Source Code." D.I. 61 at § 5(a)(2). The various programs installed on the source code computers, including many that were requested by GeoTag, undisputedly allow GeoTag to view and search the accused source code. The additional source code tools to which GeoTag requested and Microsoft objected were unnecessary programs such as additional web browsers and database software. Also, in an April 23, 2012 letter, Microsoft invited GeoTag to explain why these additional tools were necessary. Attached as Exhibit 3. GeoTag *never responded*.

GeoTag's letter also complains about its inability to compile the source code. The protective order negotiated by the parties does not provide for compiling the source code. Compiling the source code does not provide any information that cannot be determined by reviewing and understanding the source code itself. It is the source code that reveals precisely how the product operates. *See Leader Techs., Inc. v. Facebook, Inc.*, No. 08-862-JJF, 2010 WL 2545960, at *3 (D. Del. Jun. 24, 2010) (denying motion to compel production of additional technical information where all relevant source code had been produced along with documents that would enable an expert to understand the source code). The newly added products, moreover, are not standalone applications that could be easily compiled on the source code computers. GeoTag has accused functionality within the two largest search engines in the world. Indeed, the Bing search engine itself is one of the accused products. Given the Bing platform needs to support high volumes of simultaneous users around the world, it should not be

The Honorable Richard G. Andrews
May 7, 2012
Page 3

surprising that the software and hardware platforms that power Bing are highly complex and specialized. Other district courts have rejected similar requests for a producing party to create an environment which provides compilation and execution capabilities for the accused source code. *Kelora Sys., LLC v. Target Corp.*, 2011 WL 6000759, at *2 (N.D. Cal. Aug. 29, 2011) ("[T]he benefits of making it easier for [Plaintiff] to evaluate the Accused Infringer's source code do not outweigh the burdens associated with the proposal.").

GeoTag also claims that the accused source code is not organized by Accused Product. The source code on the source code computers is organized in the same manner in which it is organized at Microsoft. Most of the accused products are components of Microsoft's Bing platform of interrelated web applications and web-based services. The source code that is used in these products is not organized according to GeoTag's breakdown of accused products.

2. **Alleged Expert Issues**

Microsoft has approved one of GeoTag's proposed experts. Microsoft objected to GeoTag's two other proposed experts based on the fact that they actively consult for various software companies. The parties are continuing to meet and confer regarding those two proposed experts. GeoTag cannot claim any prejudice, however, because it was free to have as many of its attorneys (and technical specialists) review Microsoft's code as it wanted. GeoTag, however, chose to only have a single attorney and a single technical specialist review Microsoft's source code for the past two weeks.

B. **GeoTag's Proposed Schedule**

Microsoft does not believe that any extension for GeoTag to serve its initial infringement contentions is warranted. GeoTag's counterclaims added 31 new accused products, including Microsoft's Bing search engine and the Google search engine, the two largest search engines in the world. Despite its decision to drastically expand the scope of this case, GeoTag has sent only two source code reviewers to look at Microsoft's source code and has yet to look at any of Google's source code. It was not until two weeks after the protective order in this case was signed, that GeoTag made its first disclosure of expert consultants. Further, while Microsoft produced source code on April 16, 2012 pursuant to the Court's order (Attached as Exhibit 4), GeoTag waited more than a week to begin inspecting that source code despite the aggressive schedule set for this case.

Notwithstanding GeoTag's lack of diligence, Microsoft would not oppose a short extension for GeoTag to serve its preliminary infringement contentions, so long as it does not impact the *Markman* schedule. Microsoft believes the construction of a few disputed claim terms will likely resolve this case. Pushing off the *Markman* schedule in this case will only cause the parties to incur expenses litigating secondary issues.

The Honorable Richard G. Andrews
May 7, 2012
Page 4

                                                       Respectfully,

                                                       */s/Arthur G. Connolly III*

                                                       Arthur G. Connolly, III (#2667)

cc: All Counsel of Record (*by CM/ECF*)

4755189

Case 1:11-cv-00175-RGA   Document 89   Filed 05/07/12   Page 4 of 4 PageID #: 3008