**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| MICROSOFT CORPORATION and GOOGLE INC., | ) ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) | Case No. 1:11-cv-00175-RGA |
| v. | ) ) | |
| GEOTAG, INC., | ) ) | |
| Defendant and Counterclaim Plaintiff. | ) ) ) | |

**JOINT CLAIM CONSTRUCTION BRIEF OF
MICROSOFT CORPORATION AND GOOGLE INC., PLAINTIFFS,
AND GEOTAG, INC., DEFENDANT**

## TABLE OF CONTENTS

I.     THE '474 PATENT.................................................................................................1

    A.     GeoTag:  Overview of the '474 Patent .....................................................1

        (i)     *The '474 patent teaches databases, generally, in a system for integrating geographical and topical information.*.............................1

        (ii)    *Another aspect of the invention uses the tremendous advantage of integrating geographical and topical information by "dynamically replicating" entries from broader geographical areas into narrower geographical areas.*............................................................................2

    B.     Plaintiffs:  Background of the Purported Invention..................................3

        (i)     *The '474 Patent Purported to Introduce an Organizational System to Search Geographically and then Topically*.........................................3

        (ii)    *The Examiner Required the Patentee to Add the Dynamically-Replicated Limitation*.............................................................................4

        (iii)   *Plaintiffs Correctly Summarize the Purported Invention and Prosecution History*........................................................................5

II.    APPLICABLE LAW ..........................................................................................6

III.   THE *IDEARC* CLAIM CONSTRUCTIONS ....................................................9

    A.     GeoTag:  the *Idearc* Claim Constructions Should Be Adopted .................9

    B.     Plaintiffs:  the *Idearc* Claim Constructions are not Binding......................9

    C.     GeoTag: the *Idearc* Claim Constructions .................................................11

    D.     Plaintiffs: The Court Should Critically Examine the *Idearc* Claim Constructions...........................................................................................11

IV.    AGREED-UPON CONTRUCTIONS ...............................................................12

V.     DISPUTED CONSTRUCTIONS ......................................................................12

    A.     The "Hierarchy" Phrases........................................................................12

        (i)     *GeoTag's Opening Positions* ..............................................................14

            (a)   *Terms # 1, 5, 6.*...........................................................14

            (b)   *Terms # 2, 3, 4.*...........................................................15

            (c)   *Terms # 7, 8, 9, 10.*.....................................................16

        (ii)    *Plaintiffs' Opening Positions*.............................................................17

            (a)   *Google: Terms #1, 3, 4* ...............................................17

            (b)   *Microsoft: Term #2* .....................................................20

            (c)   *Plaintiffs: Terms # 5, 6.*..............................................24

            (d)   *Plaintiffs: Terms # 7, 8, 9, 10.*....................................25

        (iii)   *GeoTag's Reply Positions* .................................................................27

            (a)   *Term # 1, 5, 6.*............................................................27

            (b)   *Term # 2* ....................................................................28

            (c)   *Terms # 7, 8, 9, 10.*.....................................................30

        (iv)    *Plaintiffs' Sur-Reply Positions* .........................................................31

            (a)   *Google: Term #1* .........................................................31

            (b)   *Microsoft: Term #2* .....................................................34

            (c)   *Plaintiffs: Terms # 5, 6.*..............................................37

            (d)   *Plaintiffs: Terms # 7, 8, 9, 10.*....................................37

    B.     The "Dynamically Replicated" Phrases..................................................38

        (i)     *GeoTag's Opening Positions* ..............................................................40

            (a)   *Term # 11* ...................................................................40

            (b)   *Term # 12* ...................................................................41

            (c)   *Term # 13* ...................................................................41

|  |  | (d) | Terms # 14, 15 | 43 |
|  | (ii) | | **Plaintiffs' Opening Positions** | **43** |
|  |  | (a) | Google: Term #11 | 43 |
|  |  | (b) | Google: Term #12 | 47 |
|  |  | (c) | Microsoft: Terms # 11, 12, 13, 14, 15 | 48 |
|  | (iii) | | **GeoTag's Reply Positions** | **53** |
|  |  | (a) | Term #11 | 53 |
|  |  | (b) | Terms # 11, 12, 13, 14, 15 | 54 |
|  | (iv) | | **Plaintiffs' Sur-Reply Positions** | **56** |
|  |  | (a) | Google: Term #11 | 56 |
|  |  | (b) | Google: Term #12 | 57 |
|  |  | (c) | Microsoft: Terms # 11, 12, 13, 14, 15 | 58 |
| **C.** | | | **The "Topics" Phrases** | **60** |
|  | (i) | | **GeoTag's Opening Positions** | **61** |
|  |  | (a) | Term #16 | 61 |
|  |  | (b) | Term #17 | 62 |
|  | (ii) | | **Plaintiffs' Opening Positions** | **62** |
|  |  | (a) | Term #16 | 62 |
|  |  | (b) | Term #17 | 64 |
|  | (iii) | | **GeoTag's Reply Positions** | **65** |
|  |  | (a) | Term #16 | 65 |
|  |  | (b) | Term #17 | 66 |
|  | (iv) | | **Plaintiffs' Sur-Reply Positions** | **67** |
|  |  | (a) | Plaintiffs: Term #16 | 67 |
|  |  | (b) | Plaintiffs: Term #17 | 68 |
| **D.** | | | **The "Entries" Phrases** | **69** |
|  | (i) | | **GeoTag's Opening Positions** | **70** |
|  |  | (a) | Term #18 | 70 |
|  |  | (b) | Terms # 19, 20, 21, 22 | 72 |
|  | (ii) | | **Plaintiffs' Opening Positions** | **73** |
|  |  | (a) | Term # 18 | 73 |
|  |  | (b) | Terms # 19, 20, 21, 22 | 77 |
|  | (iii) | | **GeoTag's Reply Positions** | **78** |
|  |  | (a) | Term #18 | 79 |
|  |  | (b) | Terms #19, 20, 21, 22 | 80 |
|  | (iv) | | **Plaintiffs' Sur-Reply Positions** | **81** |
|  |  | (a) | Plaintiffs: Term #18 | 81 |
|  |  | (b) | Plaintiffs: Terms # 19, 20, 21, 22 | 83 |
| **E.** | | | **Additional Terms and Phrases** | **84** |
|  | (i) | | **GeoTag's Opening Positions** | **84** |
|  |  | (a) | Term # 23 | 84 |
|  |  | (b) | Term #24 | 85 |
|  |  | (c) | Term #25 | 86 |
|  |  | (d) | Term #26 | 86 |
|  |  | (e) | Term #27 | 87 |
|  |  | (f) | Term #28 | 87 |
|  |  | (g) | Terms # 29, 30, 31 | 88 |
|  | (ii) | | **Plaintiffs' Opening Positions** | **89** |
|  |  | (a) | Terms # 23, 24, 25, 26, 27, 19, 30, 31 | 89 |
|  | (iii) | | **GeoTag's Reply Positions** | **90** |

*(a)*      *Terms #23, 24, 25, 26, 27, 28, 29, 30, 31*.......................................*91*
***(iv)***      ***Plaintiffs' Sur-Reply Positions***..........................................................***91***
*(a)*      *Terms #23, 24, 25, 26, 27, 28, 29, 30, 31*.......................................*91*

## TABLE OF AUTHORITIES

### Cases

*Acumed LLC v. Stryker Corp.,*
  483 F.3d 800 (Fed. Cir. 2008)..................................................................passim

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,*
  340 F.3d 1298 (Fed. Cir. 2003)...............................................................71, 79

*Apple, Inc. v. Samsung Electronics Co.,*
  No. 2012-1507, __ F.3d __, 2012 WL 4820601 (Fed. Cir. Oct. 11, 2012) ........................18

*AquaTex Indus. v. Techniche Solutions.,*
  419 F.3d 1374 (Fed. Cir. 2005)...............................................................33

*C.R. Bard, Inc. v. U .S. Surgical Corp.,*
  388 F.3d 858 (Fed. Cir. 2004)...............................................................6

*Civix-DDI, LLC v. Hotels.com,*
  No. 05 C 06869, 2010 WL 4386475 (N.D. Ill. Oct. 25, 2010) ...........................10

*Comcast Cable Comm'ns Corp. v. Finisar Corp.,*
  No. C 02-04206, 2007 WL 1052821(N.D. Cal. Apr. 6, 2007) ...........................10

*Cooper Tech. Co. v. Thomas & Betts Corp.,*
  2008 WL 438339 (Feb. 15, 2008, E.D. Tex.) ........................................7

*Cybor Corp. v. FAS Techs., Inc.,*
  138 F.3d 1448 (Fed. Cir. 1998)...............................................................10

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.,*
  672 F.3d 1270 (Fed. Cir. 2012)...............................................................20

*Exxon Research & Eng. Co. v. United States,*
  265 F.3d 1371 (Fed. Cir. 2001).................................................................55

*Felix v. American Honda Motor Co., Inc.,*
  562 F.3d 1167 (Fed. Cir. 2012).............................................................27, 64

*Foster v. Hallco Mfg. Co., Inc.,*
  947 F.2d 469 (Fed. Cir. 1991)...............................................................11

*Gen-Probe Inc. v. Becton Dickinson & Co.,*
  No. 09cv2319, 2011 U.S. Dist. LEXIS 131820 (S.D. Cal. Nov. 15, 2011) ............25, 31, 90

*Honeywell Int'l, Inc. v. ITC,*
  341 F.3d 1332 (Fed. Cir. 2003)...............................................................49

*In re Suitco Surface, Inc.,*
  603 F.3d 1255 (Fed. Cir. 2010).................................................................6

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,*
  381 F.3d 1111 (Fed. Cir. 2004)...............................................................20

*Innovative Sonic Ltd. v. Research in Motion Ltd.,*
  No. 3:11-CV-0706, 2012 U.S. Dist. LEXIS 149429 (N.D. Tex. Oct. 17, 2012).....25, 31, 90

*Interactive Gift Express, Inc. v. CompuServe Inc.,*
  256 F.3d 1323 (Fed. Cir. 2001).............................................................25, 89

*Irdeto Access, Inc. v. Echostar Satellite Corp.,*
  383 F.3d 1295 (Fed. Cir. 2004)...............................................................32

*Jack Guttman, Inc. v Kopykake Enterprises, Inc.,*
  302 F.3d 1352 (Fed Cir 2002)...............................................................10

*Kara Tech. Inc. v. Stamps.com Inc.,*
  582 F.3d 1341 (Fed. Cir. 2009).............................................................28, 29

*Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.,*
  554 F.3d 1010 (Fed. Cir. 2009).........................................................33, 57, 67

iv

*Liebel-Flarsheim Co. v. Mallinckrodt, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004).................................................................passim
*Linear Tech. Corp. v. ITC*,
  566 F.3d 1049 (Fed. Cir. 2009)........................................................................47
*MarcTec LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012)...................................................................27, 64
*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995)..................................................................6, 7, 8
*Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*,
  515 F.3d 1331 (Fed. Cir. 2008).......................................................................11
*Nilssen v. Motorola, Inc.*,
  80 F.Supp.2d 921 (N.D. Ill. 2000) ................................................................11
*Nystrom v. TREX Co., Inc.*,
  424 F.3d 1136 (Fed. Cir. 2005)...........................................................33, 57, 67
*O.I. Corp. v. Tekmar Co*,
  115 F.3d 1576 (Fed. Cir. 1997)........................................................................82
*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
  521 F.3d 1351 (Fed. Cir. 2008).......................................................................52
*Old Town Canoe Co. v. Confluence Holding Corp.*,
  448 F.3d 1309 (Fed. Cir. 2006).......................................................................64
*On Demand Mach. Corp. v. Ingram Indus., Inc.*,
  442 F.3d 1331 (Fed. Cir. 2006).......................................................................64
*Panavision Imaging, LLC v. Omnivision Techs., Inc.*,
  No. 2:09-cv-01577, 2012 WL 367056 (C.D. Cal. Feb. 3, 2012) ...................21, 29
*Pfizer, Inc. v. Apotex, Inc.*,
  488 F.3d 1377 (Fed. Cir. 2007).......................................................................11
*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005).................................................................passim
*Renishaw PLC v. Marposs Societa' per Azioni*,
  158 F.3d 1243 (Fed. Cir. 1998).........................................................................9
*S3 Inc. v. nVIDIA Corp.*,
  259 F.3d 1364 (Fed. Cir. 2001).......................................................................49
*Salazar v. Procter & Gamble Co.*,
  414 F.3d 1342 (Fed. Cir. 2005).......................................................................46
*Skyhook Wireless, Inc. v. Google, Inc.*,
  No. 10-11571, 2012 U.S. Dist. LEXIS 131403 (D. Mass. Sept. 14, 2012) .............25, 31, 90
*Southwestern Bell Telephone, L.P. v. Arthur Collins, Inc.*,
  No. 3:04-cv-0669-B, 2005 WL 6225305 (N.D. Tex. Oct. 14, 2005) ...................10
*Structural Rubber Prods. Co. v. Park Rubber Co.*,
  749 F.2d 707 (Fed. Cir. 1984).........................................................................56
*Sulzer Textil AG v. Picanol NV*,
  358 F.3d 1356 (Fed. Cir. 2004).................................................................54, 56
*Sunrace Roots Enter. Co. v. SRAM Corp.*,
  336 F.3d 1298 (Fed. Cir. 2003).................................................................34, 82
*Superguide Corp. v. DirecTV Enters.*,
  358 F.3d 870 (Fed. Cir. 2004).........................................................................20
*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997).......................................................................53
*Vas-Cath Inc. v. Mahurkar*,
  935 F.2d 1555 (Fed. Cir. 1991).....................................................................3, 5

v

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996)..............................................................6, 17, 19, 31
*Wang Labs., Inc. v. America Online, Inc.,*
    197 F.3d 1377 (Fed. Cir. 1999)........................................................................60
*Watts v. XL Sys., Inc.,*
    232 F.3d 877 (Fed. Cir. 2001).........................................................................35
*Wellman, Inc. v. Eastman Chem. Co.,*
    642 F.3d 1355 (Fed. Cir. 2011)........................................................................55
*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,*
    239 F.3d 1225 (Fed. Cir. 2001)...................................................................34, 82

## **Statutes**

35 U.S.C. § 112, ¶ 2 .............................................................................................49

Pursuant to the September 19, 2012 Order of the Court, plaintiffs-counterclaim defendants Microsoft Corporation ("Microsoft") and Google Inc. ("Google") (collectively, "Plaintiffs"), and defendant-counterclaim plaintiff GeoTag, Inc. ("GeoTag"), submit this Joint Claim Construction Brief to the Court.

## I.     THE '474 PATENT

### A.     GeoTag:  Overview of the '474 Patent

#### (i)     The '474 patent teaches databases, generally, in a system for integrating geographical and topical information.

U.S. Patent No. 5,930,474 ("the '474 patent")[1] discloses systems and a method "for integrating geographically organized information with topical information."[2]  The inventors recognized that organizing data in databases, both geographically and topically, was advantageous because such organization permitted the system to provide specific topical information to the Internet user for the specific level(s) of geography that interested the user (*e.g.,* local information at the city or even the zip code level, or regional information at the broader regional or state level).[3]

The patent does not require that the systems be implemented using any specific type of databases.  Throughout the patent, the databases are referred to generically as "databases" rather than the more restrictive "hierarchical database."[4]  On the contrary, the patent teaches that *geographical* information in the databases was organized into hierarchies: "[t]he organizer comprises a database of information organized into a hierarchy of geographical areas"; "[t]he geography database contains hierarchically ordered geographic information."

---

[1]     A copy of the '474 patent is attached as Exhibit A ("Ex. A") in the Joint Appendix. Citations to the '474 patent will be in the form of "column number:line number(s)." Hereinafter, all citations to exhibits refer to the exhibits in the Joint Appendix (App.).

[2]     (Ex. A at 2:49-52 (App. 24).)

[3]     (Ex. A, *e.g.,* Abstract; 7:20-30 (App. 1; 27).)

[4]     The only mention of "hierarchically structured database" is in the background section of the patent.  (Ex. A at 1:14-15 (App. 24).)

(Ex. A at 8:37-9:4 (App. 27).)   Moreover, the patent does not enumerate the number of databases.  For example, Figure 8 of the specification teaches that information may be stored over several routing hubs.[5]

> **(ii)    Another aspect of the invention uses the tremendous advantage of integrating geographical and topical information by "dynamically replicating" entries from broader geographical areas into narrower geographical areas.**

The inventors realized the tremendous practical benefit of organizing data both geographically and topically.  Namely, such organization permits data such as a business yellow page listing (*e.g.,* business name, address, telephone number, etc.), to exist at multiple geographic and/or topical levels without the need to store the listing at each individual level.  Not only does such organization greatly simplify changing listing information,[6] but it also permits businesses to geographically and topically tailor their Internet presence to their specific customer base and business type.

"Bill's hardware,"[7] for example, sells hardware products locally in Los Angeles.  Bill, therefore, may only want to be associated with a local, city-level geographical area (*e.g.,* Los Angeles) and a single topical category (*e.g., "*Hardware Stores").[8]   Referring to the "Welcome to Los Angeles" interface view of Figure 15, an Internet user could locate Bill's hardware by, for example, clicking on the appropriate graphical icon depicting the topic hardware stores (*see* box 1520),[9] clicking a related entry 1540 (for interfaces where the topical information was displayed, for example, as related entries), or by any number of other methods.  The organization of Bill's data both geographically and topically makes such an

---

[5]    (Ex. A at 18:55-59 (App. 32).)

[6]    For example, if a business changed its address or telephone number there is only one listing to change as opposed to changing listings for each city, county, or state where the business has chosen to advertise.

[7]    (Ex. A at 16:57-58 (App. 31).)

[8]    (*Id.* at 16:59 (App. 31).)

[9]    (*Id.* at 22:6-27 (App. 34).)

operation possible.

At §I(B)(i) *infra*, plaintiffs erroneously attempt to characterize the hierarchical geography database as the "centerpiece" of the patented invention.    Plaintiffs' characterization should be dismissed because it is legally erroneous.   Under Federal Circuit law, there is no "gist" or "heart" of the invention.  *See*, *e.g.*, *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1565 (Fed. Cir. 1991).   Rather, the invention is defined by the claims as a whole. *Id.*

At §I(B)(ii) *infra*, plaintiffs assert that the examiner "equated" the term "dynamic replication" to "a parent-child relationship" and "inheriting attributes."   The examiner did so, however, not for the purpose of defining the scope of the claims, but for the purpose of searching the prior art.  (*See* Ex. D (App. 58-97).)  That the claims may be broad enough to include parent-child relationships as well as inheriting attributes does not restrict the scope of the claims.

## B.    Plaintiffs:  Background of the Purported Invention

### (i)    The '474 Patent Purported to Introduce an Organizational System to Search Geographically and then Topically

The '474 patent features an Internet "organizer" that purports to allow users to search for information geographically and then topically.   The organizer has several parts: (1) a hierarchical geography database; (2) a topical database; (3) a Yellow Pages database; and (4) a search engine.

The hierarchical geography database is the purported invention's centerpiece.[10]  This database is organized into a hierarchy of geographical areas in which broader geographical

---

[10]   The application originally contained two sets of distinct claims.  The first was "drawn to a search engine for remotely accessing data from a database where the data is arranged geographically and topically."   The second was "drawn to a display composer that generates a display page."   (Ex. D at [11/25/97 Office Action at 2] (App. 60).)   The Examiner required the applicants to elect a claim set, and the applicants elected the search engine set.  (*Id.* [1/12/98 Response to Restriction Requirement] (App. 64).)

3

areas encompass narrower geographical areas.  (Ex. A at 12:27–32 (App. 29).)  For instance, the city of Huntington Beach might be organized in the geography database as: United States—California—Southern California—Huntington Beach.  According to the patent, the geographical database allows a user to "ascend or descend in the geographic hierarchy to the particular geographic area about which information is desired." (*Id*. at 9:1–4 (App. 28).)

The second part of the purported invention—the topical database—contains topical information for the particular geographical area.  (*Id*. at Fig. 2B (App. 4).)  The topics are arranged as categories of goods and services, and each topic may have sub-topics.  For example, the topic "schools" in the geographical area "Los Angeles" might include elementary, high school, or colleges and universities sub-topics.  (*Id*.)

The third part of the purported invention—the Yellow Pages database—contains specific information about listings within the selected topic.  For instance, if the user selects a particular elementary school in Los Angeles, the Yellow Pages database would contain the contact information for the school.  (Ex. A at Fig. 2C (App. 5).)

The fourth part of the purported invention—the search engine—searches for, and retrieves information from, the hierarchical geography database.  (*Id*. at 11:20-34 (App. 29).)  In contrast to systems where a user enters search terms or keywords, the patent teaches that the search engine allows a user to browse information by selecting geographical areas and topics "using standard point-and-click techniques." (*Id*. at 2:52-58 (App. 24).)

### (ii)     The Examiner Required the Patentee to Add the Dynamically-Replicated Limitation

A mere hierarchical geography database that could be searched topically as originally claimed, however, was not new.  The Examiner rejected all of the application's claims because the prior art Yahoo! database disclosed "a database of information organized into a hierarchy of geographical areas wherein the information corresponding to each one of said hierarchy of geographical areas is further organized into topics." (Ex. D [2/10/98 Office

Action at 3] (App. 68).)  The Examiner explained that Yahoo!'s "Regional" database was geographically organized based on a hierarchy of geographical areas, including countries, regions, and states.  (Ex. E [Using Netscape at 184] (App. 105).)

In response, the applicants amended the claims to add the "dynamic replication" limitation.  The Examiner suggested that the addition of this limitation would overcome the prior art:  "The dynamic replication of an entry in [sic] narrow geographical area would overcome prior art of record."  (Ex. D [Interview Summary] (App. 81).)  The Examiner referred to dynamic replication as "automatic inheritance," which she equated to a parent-child relationship and "inheriting attributes."  (Ex. D [Search Request Form] (App. 91).)

Despite "dynamic replication" appearing nowhere in the specification, the Examiner identified it as the basis for the invention's alleged novelty.  The applicants confirmed that they added the "dynamic replication" limitation to secure the claims:  "Applicants have amended Claims 1, 32, 38 and 43 to clarify the patentably [sic] distinguishing features of Applicants' inventions . . . ."  (Ex. D [8/7/98 Response at 7] (App. 88).)

### (iii) Plaintiffs Correctly Summarize the Purported Invention and Prosecution History

GeoTag incorrectly charges that Plaintiffs' characterization of the invention is "legally erroneous" because there is no "gist" or "heart" of the invention.  (§I(A)(ii).) GeoTag bases this argument on its misreading of *Vas-Cath Inc. v. Sakharam D. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991).  In *Vas-Cath*, the Federal Circuit criticized the district court's invalidity analysis because it did not focus on the claim language, but instead on the "heart" of the supposed invention.  *Id*. at 1565.  Plaintiffs' claim constructions, in contrast, focus on the claim limitations and their meanings based on the intrinsic evidence.  Plaintiffs' background accurately summarizes the state of the art and the alleged invention as described in the specification and prosecution history.  Litigants and courts typically describe the patented technology at a high level to provide background for later analysis of specific claim

5

terms.  Indeed, GeoTag also provides an overview of the patent.

GeoTag next faults Plaintiffs' description of the prosecution history.  According to GeoTag, the Examiner did not define the broadest scope of the term "dynamic replication" because she only construed it to search the prior art.  Yet the law required the Examiner to analyze the claim language in view of the prior art and apply the "broadest reasonable construction" possible.  *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1260 (Fed. Cir. 2010).  The Examiner accordingly properly defined the broadest reasonable scope of "dynamic replication."

## II.     APPLICABLE LAW

Claim construction presents a question of law to be decided by the court.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 388-90 (1996).  "[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (internal quotation marks omitted).  In construing claims, courts rely primarily on the patent's intrinsic evidence (*i.e.*, the patent and its prosecution history) to determine the scope of the invention.  *See C.R. Bard, Inc. v. U .S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004).  A court also may rely on "extrinsic evidence," which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Markman*, 52 F.3d at 980; *see also, Phillips*, 415 F.3d at 1314.

"[T]he 'words of a claim are generally given their ordinary and customary meaning.'"  *Id*. at 1312 (quoting *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  This is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention…."  *Id.* at 1313.  However, "claims must be read in view of the specification, of which they are a part."  *Id.* at 1315.  In addition to the

6

specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman*, 52 F.3d at 980.  The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317.

Where that ordinary meaning is "readily apparent," claim construction "involves little more than the application of the widely accepted meaning of commonly understood words."[11] In other in instances, however, the ordinary and customary meaning of a claim term or phrase is not apparent and must be divined from other sources, including "the words of the claims themselves, the remainder of the specification, the prosecution, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."[12]

The claims themselves provide "substantial guidance" to the meaning of particular claim terms.[13]  Differences in a term's usage in claims, for example, often provide a useful guide in understanding the meaning of a particular claim term.[14]  The presence of a dependent claim containing a particular limitation, in fact, creates a presumption that the limitation in question is not present in the independent claim.[15]

The claims, of course, are not read alone.  Rather, the person of ordinary skill in the art is deemed to read the claim terms in the context of the entire patent, including the

---

[11]  *Phillips*, 415 F.3d at 1314.

[12]  *Id., see also Cooper Tech. Co. v. Thomas & Betts Corp.,* 2008 WL 438339 *2 (Feb. 15, 2008, E.D. Tex.).

[13]  *Id.*

[14]  *Id.; see also Cooper Tech.,* 2008 WL at *6.

[15]  *Acumed LLC v. Stryker Corp.,* 483 F.3d 800, 806 (Fed. Cir. 2008); *Phillips,* 415 F.3d at 1315; *Liebel-Flarsheim Co. v. Mallinckrodt, Inc.,* 358 F.3d 898, 906, 910 (Fed. Cir. 2004) ("the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intent to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'") (citations omitted).

specification and prosecution history.[16]   The Federal Circuit's *Phillips* decision emphasizes the importance of the specification in construing the claims.[17]   For example, where the specification reveals a special definition given to a claim term by the inventor that differs from the meaning it would otherwise possess, the inventor's lexicography controls.[18] Similarly, where the specification reveals an intentional disclaimer, or disavowal, of claim scope by the inventor, the objective evidence of the inventor's intention is again dispositive.[19] But, the *Phillips* court cautioned, "[a]lthough the specification often describes very specific embodiments of the invention," it is improper to "confin[e] the claims to those embodiments."[20]   The function of the specification is, after all, "to teach and enable those of skill to make and use the invention," and one way to do so is to provide examples.[21]   Limiting the scope of the invention to the specific disclosed embodiments would obviate the need for claims.[22]

A court should also consider a patent's prosecution history, if it is in evidence.[23]   The prosecution history, however, cannot "enlarge, diminish, or vary" the limitations of the claims."[24]   Additionally, although extrinsic evidence (*e.g.,* expert and inventor testimony, dictionaries, and treatises) may be used in claim construction, such evidence is generally "less reliable than the patent and its prosecution history in determining how to read claim

---

[16]   *Phillips,* 415 F.3d at 1313.

[17]   *Id.* at 1315-17.

[18]   *Id.* at 1316.

[19]   *Id.*

[20]   *Id.* at 1323; *see also Liebel-Flarsheim,* 358 F.3d at 906.

[21]   *Acumed,* 483 F.3d at 809 (citing *Phillips,* 415 F.3d at 1323).

[22]   *Id.*

[23]   *Phillips,* 415 F.3d at 1317.

[24]   *Markman,* 52 F.3d at 98.

terms."[25]   There is, ultimately, no magic formula for claim construction—the correct construction will be the one that "stays true to the claim language and most naturally aligns with the patent's description of the invention."[26]

## III.   THE *IDEARC* CLAIM CONSTRUCTIONS

### A.   GeoTag:  the *Idearc* Claim Constructions Should Be Adopted

GeoTag alleges that Plaintiffs infringe the '474 patent.  In total, the parties are requesting the Court to construe twenty-three terms found in the asserted claims of the '474 patent.  Of these, nineteen terms have previously been construed by Magistrate Judge Charles Everingham IV in *Geomas (Int'l) Ltd., et al. v. Idearc Media Services-West, Inc.*, Civil Action No. 2:06-cv-00475 in the Eastern District of Texas ("*Idearc*").  A copy of that opinion is submitted as Exhibit F.  As set forth below, in order to prevent inconsistent claim constructions and because the rulings were correct, GeoTag submits that this Court should adopt *in toto* the construction rulings made in *Idearc*.[27]  In addition, the parties have agreed on the meaning of one phrase originally in dispute.[28]

### B.   Plaintiffs:  the *Idearc* Claim Constructions are not Binding

GeoTag argues that the Court should adopt *in toto* Magistrate Judge Everingham's claim constructions in the Eastern District of Texas *Idearc* litigation.  GeoTag was effectively a party to the *Idearc* litigation because it is the successor-in-interest to Geomas.  Microsoft and Google, however, were not involved.   Yet GeoTag seeks to impose the prior constructions on them even though (1) in some cases the *Idearc* parties stipulated to the

---

[25]   *Phillips,* 415 F.3d at 1318.

[26]   *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

[27]   No objections were made in *Idearc* to the rulings of Magistrate Judge Everingham.  The case settled prior to trial.

[28]   A copy of the asserted claims identifying the terms and phrases in dispute in bold/underline is attached as Ex. C for the Court's convenience.  The agreed-upon term is discussed below in §IV.

constructions; (2) the district court judge never adopted the magistrate's constructions; and (3) the parties never appealed the constructions to the Federal Circuit. GeoTag claims that the *Idearc* constructions are "correct," but its primary justification for a wholesale adoption of the *Idearc* constructions is to purportedly "prevent inconsistent claim constructions." (§§III(A), V(A)(i)(a)-(b), V(B)(i)(c)-(d), V(D)(i)(b), V(E)(i)(b)-(c).) This rationale fails for three reasons.

*First*, prior claim construction orders are not binding on those who were not parties to the earlier action—like Microsoft and Google. *See Comcast Cable Comm'ns Corp. v. Finisar Corp.*, No. C 02-04206, 2007 WL 1052821, at *2 (N.D. Cal. Apr. 6, 2007); *see also Southwestern Bell Telephone, L.P. v. Arthur Collins*, *Inc.*, No. 3:04-cv-0669-B, 2005 WL 6225305, at *4-5 (N.D. Tex. Oct. 14, 2005). And stipulated claim constructions—such as some *Idearc* constructions—carry little, if any, weight in a later dispute between different parties. *See, e.g.*, *Civix-DDI, LLC v. Hotels.com*, No. 05 C 06869, 2010 WL 4386475, at *3 (N.D. Ill. Oct. 25, 2010).

*Second*, the Federal Circuit has endorsed the practice of revisiting claim constructions as understanding of the case develops. Claim constructions are not final orders, and, therefore, the Court should engage in "rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Jack Guttman, Inc. v Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed Cir 2002).

*Third*, claim construction is reviewed *de novo*. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*). As such, this Court should only accept the *Idearc* claim constructions that are supported by the intrinsic evidence in light of Federal Circuit claim-construction doctrines. Accordingly, while a court should be "respectful" of prior claim construction orders, it is "not compelled to reach the same conclusions." *Nilssen*

*v. Motorola, Inc.*, 80 F.Supp.2d 921, 926 n.4 (N.D. Ill. 2000) (later claim construction argument "will receive an independent review to ensure fairness to the parties in [the later] litigation").

### C.     GeoTag: the *Idearc* Claim Constructions

At §III(B), plaintiffs argue that the claim constructions made by Magistrate Judge Everingham in the *Idearc* litigation are not binding.  Notably, GeoTag has not argued that those constructions are binding in this case.  Rather, GeoTag requests that those constructions be adopted in this case, as such will achieve uniformity in claim construction between the *Idearc* case and this case.  The Federal Circuit has repeatedly stated that one of the objectives of its founding was to achieve uniformity in patent cases.  *See*, *e.g.*, *Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1338 n. * (Fed. Cir. 2008) (noting that adopting a claim construction that is not consistent with prior construction would run counter to *Markman*); *see also Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 475 (Fed. Cir. 1991) ("fundamental purpose" of Federal Circuit is to reduce non-uniformity in patent cases); *Pfizer, Inc. v. Apotex, Inc.*, 488 F.3d 1377, 1380 (Fed. Cir. 2007) ("a nationally uniform, consistent, and correct patent law is an essential foundation of technological innovation") (Newman, J., dissenting).  Thus, in order to obtain uniformity in construction, and because Magistrate Judge Everingham's construction is correct, this Court should adopt such construction.

### D.     Plaintiffs: The Court Should Critically Examine the *Idearc* Claim Constructions

GeoTag justifies its rote application of the *Idearc* constructions with a *non sequitur*, claiming the Court should adopt those constructions because the Federal Circuit was established to achieve patent-law uniformity.  GeoTag never explains *why* the Federal Circuit's mandate to create patent-law uniformity would have any relevance to particular claim constructions, and none of GeoTag's authority endorses its proposed approach.  Nor

does GeoTag explain why this Court should adopt claim constructions that are (1) in some cases incorrect, (2) in other cases stipulated, and (3) in all cases were never analyzed by a district judge or appealed to the Federal Circuit.  This Court should reach its own conclusions as to the proper constructions.

## IV.   AGREED-UPON CONTRUCTIONS

| Claim Term/Phrase | Agreed-Upon Construction |
|---|---|
| "geographic search area" | "the particular selected geographical area for which the associated data records in the database are to be searched" |

The parties have agreed to construe one term, "geographic search area," as described in the above table.

## V.   DISPUTED CONSTRUCTIONS

The parties dispute the following terms/phrases.  In several instances, the parties propose that slightly different phrasings of similar terms be considered together.  These groupings are not always consistent between the parties, but are reconciled as best as possible below.  The parties have provided a numbered chart of the disputed constructions in Exhibit B.  The terms fall into five general categories:   (A) the "hierarchy" phrases, (B) the "dynamically replicated" phrases, (C) the "topics" phrases, (D) the "entries" phrases, and (E) additional terms or phrases.

### A.   The "Hierarchy" Phrases

The "hierarchy" phrases include ten similar or related terms.   Generally, GeoTag believes that claim terms # 1 and 3-6 are the appropriate terms to construe, and those constructions should reflect "an arrangement of related information or data, ordered from broader general categories to narrower specific ones."   (*See* §V(A)(i)(a), below.)   Google believes that the main sub-limitation that needs construction is claim term #1, along with related terms #7-10, and the constructions should reflect that "broader general geographic

areas encompass narrower specific ones." (*See* §V(A)(ii)(a), below.)   Finally, Microsoft believes that the larger phrase of claim term #2, and the related terms # 7-10, should be construed to reflect "parent geographic areas and child geographic areas." (*See* §V(A)(ii)(b), below.)  In essence, the Court must decide which concept of geographical hierarchy is correct in view of the intrinsic record.

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#1:** "hierarchy of geographical areas" (Claims 1, 4, 20) | "related geographical areas, ordered such that broader general geographic areas encompass narrower specific ones" | No separate construction necessary. *See* construction for term #2 | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones" (same as #5, 6, 17) |
| **#2:** "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics" (Claim 1) | Rather than construe the entire limitation, Google focuses on separate terms in the limitation as discussed in §V(A)(ii)(a). | "a database of records primarily organized into interrelated geographic areas such that there are parent geographic areas and child geographic areas, wherein the records associated with a geographic area are further organized into topics" | No need to separately construe; see constructions for #3 and #19 |
| **#3:** "a database of information organized into a hierarchy of geographical areas" (Claim 1) **#4:** "said database of information organized into a predetermine | No need to separately construe; see construction for term #1. | No separate construction necessary. *See* construction for term #2 | "a collection of interrelated information or data organized such that a computer program can quickly retrieve selected information or data, ordered from broader geographical categories to narrower geographical |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| hierarchy of geographical areas"<br><br>(Claim 20) | | | categories" |
| **#5:** "hierarchy"<br><br>(Claims 1, 5, 20)<br><br>**#6:** "hierarchically organized"<br><br>(Claims 32) | No need to separately construe. *See* term #1, term #16 for "topics," and term #17 for "wherein said topics are hierarchically organized" | No separate construction necessary. *See* construction for term #2, term #16 for "topics" and term #17 for "wherein said topics are hierarchically organized" | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones"<br><br>(same as #1, 17) |
| **#7:** "narrower geographical area"<br><br>(Claim 1)<br><br>**#8:** "geographical area of relatively smaller expanse"<br><br>(Claim 20) | "a geographic area in the database encompassed by a broader geographic area in the database" | "a geographic area in the database which is a child of the broader geographic area" | No need to construe. Plain and ordinary meaning |
| **#9:** "broader geographical area"<br><br>(Claims 1, 31)<br><br>**#10:** "geographical area of relatively larger expanse"<br><br>(Claim 20) | "a geographic area in the database that encompasses one or more narrower geographic areas in the database" | "a geographic area in the database which is a parent of one or more narrower geographic areas" | No need to construe. Plain and ordinary meaning |

(i)     **GeoTag's Opening Positions**

*(a)     Terms # 1, 5, 6*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#1:** "hierarchy of geographical areas"<br><br>(Claims 1, 4, 20) | "related geographical areas, ordered such that broader general geographic areas | No separate construction necessary. *See* construction for term | "an arrangement of related information or data, ordered from broader general |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| | encompass narrower specific ones" | #2 | categories to narrower specific ones"<br><br>(same as #5, 6, 17) |
| **#5:** "hierarchy"<br><br>(Claims 1, 5, 20)<br><br>**#6:** "hierarchically organized"<br><br>(Claims 32) | No need to separately construe. *See* term #1, term #16 for "topics," and term #17 for "wherein said topics are hierarchically organized" | No separate construction necessary. *See* construction for term #2, term #16 for "topics" and term #17 for "wherein said topics are hierarchically organized" | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones"<br><br>(same as #1, 17) |

These three phrases were construed together in *Idearc* via construction of "hierarchy." (*See* Ex. F at 8-10 (App 122-24).) Magistrate Judge Everingham construed the term "hierarchy" as used in these phrases as "an arrangement of related information or data, ordered from broader general categories to narrower specific ones." (*Id*. at 10 (App. 124).) GeoTag's proposed definitions above adopt the *Idearc* construction. Accordingly, the same construction should be adopted herein to avoid inconsistent claim construction; as such construction is also consistent with the specification. (*See* Ex. A at 8:59-9:4; 3:46-56; 9:28-34; 8:22-36 (App. 27-28; 25.)

      *(b)*    *Terms # 2, 3, 4*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#2:** "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy | Rather than construe the entire limitation, Google focuses on separate terms in the limitation as discussed in §V(A)(ii)(a). | "a database of records primarily organized into interrelated geographic areas such that there are parent geographic areas and child | No need to separately construe; see constructions for #3 and #19 |

15

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| of geographical areas is further organized into topics" (Claim 1) | | geographic areas, wherein the records associated with a geographic area are further organized into topics" | |
| **#3:** "a database of information organized into a hierarchy of geographical areas" (Claim 1) **#4:** "said database of information organized into a predetermine hierarchy of geographical areas" (Claim 20) | No need to separately construe; see construction for term #1. | No separate construction necessary. *See* construction for term #2 | "a collection of interrelated information or data organized such that a computer program can quickly retrieve selected information or data, ordered from broader geographical categories to narrower geographical categories" |

These phrases were effectively construed together in *Idearc* via that Court's construction of "a database of information organized into a hierarchy of geographical areas." (*See* Ex. F at 11-13 (App. 125-27).)  As indicated therein, Magistrate Judge Everingham construed this phrase as set forth in GeoTag's proposed constructions for #3 and #4 above. (*Id*. at 13 (App. 127).)  This construction is consistent with the specification and should be adopted herein.  (*See* Ex. A at 28:16-21; 23:16-21 (App. 37; 35).)  With respect to proposed construction of #2 above, GeoTag submits that no separate construction is required in view of the construction of #3 and #4 above.  Thus, adoption of GeoTag's proposed constructions are consistent with the specification and will avoid inconsistent claim construction.

>    *(c)     Terms # 7, 8, 9, 10*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#7:** "narrower geographical area"<br><br>(Claim 1)<br><br>**#8:** "geographical area of relatively smaller expanse"<br><br>(Claim 20) | "a geographic area in the database encompassed by a broader geographic area in the database" | "a geographic area in the database which is a child of the broader geographic area" | No need to construe. Plain and ordinary meaning |
| **#9:** "broader geographical area"<br><br>(Claims 1, 31)<br><br>**#10:** "geographical area of relatively larger expanse"<br><br>(Claim 20) | "a geographic area in the database that encompasses one or more narrower geographic areas in the database" | "a geographic area in the database which is a parent of one or more narrower geographic areas" | No need to construe. Plain and ordinary meaning |

These terms have not been construed previously.  GeoTag proposes that the terms do not need to be construed and that the plain and ordinary meaning should be adopted by Court. More importantly, these terms will be readily understood by reasonable jurors and, therefore, do not require construction.  *See Vitronics*, 90 F.3d at 1592.

(ii) **Plaintiffs' Opening Positions**

(a) *Google: Terms #1, 3, 4*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#1:** "hierarchy of geographical areas"<br><br>(Claims 1, 4, 20) | "related geographical areas, ordered such that broader general geographic areas encompass narrower specific ones" | No separate construction necessary.  *See* construction for term #2 | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones"<br><br>(same as #5, 6, 17) |

17

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#3:** "a database of information organized into a hierarchy of geographical areas" (Claim 1) **#4:** "said database of information organized into a predetermine hierarchy of geographical areas" (Claim 20) | No need to separately construe; see construction for term #1. | No separate construction necessary. *See* construction for term #2 | "a collection of interrelated information or data organized such that a computer program can quickly retrieve selected information or data, ordered from broader geographical categories to narrower geographical categories" |

> *(1)   Google's Construction Is Supported By the Claims and Specification*

Google believes that the appropriate term to construe is "hierarchy of geographical areas," rather than the larger phrases that use that term, because the crux of the dispute relates to the hierarchical structure of the database, not the definition of database.[29]

Claim terms must always be construed consistently with the plain language of the claim. *Phillips*, 415 F.3d at 1312-13 (en banc); *Apple, Inc. v. Samsung Electronics Co*., No. 2012-1507, __ F.3d __, 2012 WL 4820601, at *7 (Fed. Cir. Oct. 11, 2012).  The plain claim language supports Google's construction.

Claim 1, for example, requires "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographic areas is organized into topics."  (Ex. A at claim 1 (App. 38).)  Thus, the database stores entries for each hierarchal level of geographical areas.  The claims then define that the

---

[29]   While Google prefers to construe the phrase "hierarchy of geographical areas," its positions on the meaning of the limitation as a whole are consistent with Microsoft's.  As discussed below in §V(A)(ii)(b), one difference between the constructions is that Microsoft uses the terms "parent" and "child" to define the hierarchical structure, whereas Google prefers "encompassed by."

hierarchy includes entries for broader and narrower geographic areas.  Specifically, in each independent claim, the database entries from a "broader geographical area" are dynamically replicated into a "narrower geographical area" upon a user search.  (*Id.* at claim 1 (App. 38); *see also* claims 20, 26, and 31 (App. 43).)  The claims therefore require that a broader geographical area in the database encompass a "narrower geographic area" or the "geographical area of relatively smaller expanse," as phrased in certain claims, and vice versa.  (*Id.*)  Google's construction reflects these requirements.

The specification is in accord.  "The specification 'is the single best guide to the meaning of a disputed term' and it 'acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.'"  *Phillips*, 415 F.3d at 1321 (quoting *Vitronics*, 90 F.3d at 1582).  The specification teaches:

> [T]he hierarchy has a structure comprising plural geographical levels into which the geographical areas are geographically categorized by size to provide a low level, one or more intermediate levels and a high level. *Each of the geographical levels above the lowest level encompasses a plurality of lower level geographical areas*.

(Ex. A at 3:18–25 (emphasis added) (App. 25); *see also id.* at 3:46–56.)  The specification further explains the hierarchical nature of the entries in the database:

> [A] "parent" entry is an entry (e.g., geographic or topical) which *encompasses one or more* children entries within the geographic or topical hierarchy, and a "child" entry is an entry which *is encompassed by* a parent entry within the geographical or topical hierarchy.

(*Id.* at 12:28–33 (emphasis added) (App. 29).)  Thus the parent, or "broader," geographical area must encompass at least "narrower" geographical area.  Similarly, the narrower geographical area must be "encompassed by a broader geographic area."  (*Id.*; *see also id.* at 8:59–9:4 (App. 27-28); Figs. 2A and 13 (App. 3, 16); Table 7 at 31:60 (App. 39).)

In sum, both the claims and specification confirm that "hierarchy of geographical areas" should be construed as "related geographical areas, ordered such that broader general geographic areas encompass narrower specific ones."

*(2)      GeoTag's Constructions Do Not Adhere to Claim Language*

GeoTag's constructions suffer from two critical flaws: they improperly rewrite the claims to remove a key limitation; and they add broad language found nowhere in the intrinsic record.

GeoTag improperly removes a critical phrase from the claims, and replaces it with three new terms.  The claim limitations refer to "geographical areas," *not* generically to "categories," "information," or "data."   Adopting GeoTag's constructions would erase the key claim limitation of "geographic areas."  *See Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012) (noting the "well-established rule that 'claims are interpreted with an eye toward giving effect to all terms in the claim'"); *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("While not an absolute rule, all claim terms are presumed to have meaning in a claim.").

GeoTag's attempt to rewrite the claims to add the words "arrangement," "information," "data," and "categories" is improper.  *See Superguide Corp. v. DirecTV Enters.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("it is important not to import into a claim limitations that are not a part of the claim.").  Moreover, GeoTag fails to explain what the terms "arrangement" or "categories" even mean.  This is hardly surprising as all of these words are broad and imprecise, and none appears in the intrinsic record.

The Court should therefore reject GeoTag's constructions.

### (b)      Microsoft: Term #2

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#2:**  "a database of information organized into a hierarchy of geographical areas | Rather than construe the entire limitation, Google focuses on separate terms in the limitation as | "a database of records primarily organized into interrelated geographic areas | No need to separately construe; see constructions for #3 and #19 |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics" <br><br> (Claim 1) | discussed in §V(A)(ii)(a). | such that there are parent geographic areas and child geographic areas, wherein the records associated with a geographic area are further organized into topics" | |

     *(1)     Microsoft's Proposed Construction Should be Adopted Because It Correctly Aligns the Claim Limitation with Its Proper Meaning While Facilitating Understanding by the Fact Finder[30]*

Microsoft proposes that the Court construe the entire database-of-information limitation instead of divvying up the limitation into a number of smaller sub-limitations as proposed by GeoTag. This approach allows the jury to better understand the entire limitation in context, particularly that the database must be "organized into a hierarchy of geographical areas." Other courts have followed Microsoft's approach of construing entire claim limitations—instead of carving a single limitation into sub-limitations—to provide more context and meaning for the fact finder. For instance, in *Panavision Imaging, LLC v. Omnivision Techs., Inc.*, No. 2:09-cv-01577, 2012 WL 367056, at *2 (C.D. Cal. Feb. 3, 2012), the court construed an entire claim limitation instead of dividing it into subparts because construction of the subpart was "inadequate by itself to permit understanding of the actual invention that was patented." By deconstructing the database-of-information limitation into the numerous tiny subparts suggested by GeoTag, each of which requires its own nested construction, GeoTag effectively obscures the centerpiece of the invention—"a hierarchy of geographical areas" —from the fact finder.

---

[30]   While Microsoft prefers to construe the entire limitation, its substantive positions on the meaning of the limitation are consistent with Google's as discussed below.

*(2)   The Geographical Database's Primary Organizational
Scheme is Parent-Child*

The database-of-information limitation describes the organization of the geographical database as both *geographical* and *hierarchal*.   The limitation explicitly recites this requirement: "a database of information organized into a *hierarchy* of *geographical* areas." (Ex. A at 38:44–46 (emphasis added) (App. 42).)  But GeoTag, trying to expand the scope of the patent beyond anything the inventors could plausibly claim to have invented, attempts to sever this phrase from its linguistic moorings.  So, GeoTag proposes that the information in the database does not need to be either geographic or hierarchal.   Instead, GeoTag's construction requires only that "information or data"—not *geographical* information or data—be "ordered from broader general categories to narrower specific ones."  (§V(A)(i)(b).) But GeoTag's re-invention of claim language is neither supported by the intrinsic evidence nor helpful to the jury.  For instance, would a database with only Wilmington, Delaware and Dover, Delaware contain "information" "ordered from broader general categories to narrower specific ones," and how would one know?

By contrast, Microsoft's construction is true to both of the database's key organizational principles of *hierarchy* and *geography*.  So, Microsoft's construction requires that the database records be "primarily organized into interrelated geographic areas such that there are parent geographic areas and child geographic areas."  This construction captures both of the key aspects of the limitation, whereas GeoTag's captures neither.

The notion that the geography database is organized around parent-child relationships is *the* central organizing feature in the '474 patent.  The patent teaches that the geographical areas in the database consist of parent geographical areas containing child geographical areas. Indeed, the specification defines "parent" and "child" in just this context:

> As used herein, a "parent" entry is an entry (e.g., geographic or topical) which encompasses one or more children entries within the geographic or topical

22

hierarchy, and a "child" entry is an entry which is encompassed by a parent entry within the geographical or topical hierarchy.

(Ex. A at 12:27–32 (App. 29).)

The disclosed database structure also reflects these parent-child geographical relationships. For example, the preferred embodiment uses a special field called the "namekey," which ties each child geographical area to its parent geographical areas. This is accomplished by building the child namekey from the parents' namekeys. (*Id*. at 19:10–22 (App. 33)). "Each namekey is made unique by appending text to its *parent's* hierarchical name." (*Id.* at 19:10 (emphasis added) (App. 33).) Because of this built-in parent-child relationship, the patent warns against changing the namekeys: "Once these namekeys have been established, they should not be changed. This is because subentries contain a reference to these names as their *parent* hierarchy." (*Id.* at 19:23–25 (emphasis added) (App. 33).) While the claims are not limited to a specific namekey implementation, the namekey implementation illustrates the fundamental principle for organizing the geography database: parent-child relationships between the geographic areas.

In accord with the intrinsic evidence, Microsoft's construction also requires the database of information to be *primarily* organized according to the parent-child hierarchy of geographical areas. This is also compelled by the intrinsic evidence because the specification specifically discloses that the database's primary organizational topography is geographical as opposed to topical. For instance, the Summary of the Invention emphasizes the geography-first approach:

> A user interface organizes information into a consistent presentation of menu selections and geographically organized information. Furthermore, at specified levels of the geographically organized information, the user is presented with the option of accessing topically organized information from among several topic selections, wherein the topical information is *defined by the fact that the topical information is associated with a particular geographic area.*

(Ex. A at 2:42–49 (emphasis added) (App. 24).)

23

Further, the patent specifically teaches that topics are used to find information *only after* the user arrives at the geographical area of interest: "[O]nce the user has located the appropriate geographic area about which information is desired, the user changes to topical references using the image map reference." (*Id.* at 9:12-14 (App. 28).)

The geography-first organization is also demonstrated by the fact that the lengthy specification never suggests that the user can search for topical information across distinct geographical areas. Indeed, the specification explicitly distinguishes the invention from prior-art systems that presented a topic-first organization. Those systems did not provide "geographically differentiated listings for the same topic (such as job search databases which include information about jobs in different cities), since these listings are *primarily* related to the topic (e.g., jobs), not to the geographical area." (Ex. A at 5:60–65 (emphasis added) (App. 26).) As a consequence, the Court's construction should reflect the fact that the database is primarily organized by geography.

### (c)      *Plaintiffs: Terms # 5, 6*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#5:** "hierarchy" (Claims 1, 5, 20) **#6:** "hierarchically organized" (Claims 32) | No need to separately construe. *See* term #1, term #16 for "topics," and term #17 for "wherein said topics are hierarchically organized" | No separate construction necessary. *See* construction for term #2, term #16 for "topics" and term #17 for "wherein said topics are hierarchically organized" | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones" (same as #1, 17) |

Plaintiffs and GeoTag disagree as to which claim terms should be construed to instruct the jury on the central concept of a hierarchical geographic database. Plaintiffs propose that the Court construe the phrases that use the term "hierarchy" in connection with other terms and in a special way to describe the geography hierarchy where a broader, parent

geographical area encompasses at least one narrower, child area.  This approach ensures that the jury is instructed on the key phrases that carry special meanings in the claims and specification.

The two limitations GeoTag proposes relate to the clear term "hierarchy" by itself and do not need to be separately construed.  The inventors did not give the term "hierarchy" when used by itself any special meaning, and, therefore, there is no need to construe it.  *Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (en banc) ("If the claim language is clear on its face, then our consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified.").[31]  Accordingly, the Court should construe the hierarchy related terms in context with the surrounding limitations as proposed by Plaintiffs in the above chart.

### (d)        Plaintiffs: Terms # 7, 8, 9, 10

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#7:**  "narrower geographical area" <br><br> (Claim 1) <br><br> **#8:** "geographical area of relatively smaller expanse" <br><br> (Claim 20) | "a geographic area in the database encompassed by a broader geographic area in the database" | "a geographic area in the database which is a child of the broader geographic area" | No need to construe. Plain and ordinary meaning |

---

[31]  *See also Innovative Sonic Ltd. v. Research in Motion Ltd*., No. 3:11-CV-0706, 2012 U.S. Dist. LEXIS 149429, at *28-29 (N.D. Tex. Oct. 17, 2012) ("If a claim term is readily understood by a lay jury, there is no need for the court to construe the term."); *Skyhook Wireless, Inc. v. Google, Inc*., No. 10-11571, 2012 U.S. Dist. LEXIS 131403, at *34, 50 (D. Mass. Sept. 14, 2012) (Declining to construe terms where the proposed construction "provides no additional clarity," was "not mentioned in the patent and would only complicate the term"); *Gen-Probe Inc. v. Becton Dickinson & Co*., No. 09cv2319, 2011 U.S. Dist. LEXIS 131820, at *51 (S.D. Cal. Nov. 15, 2011) (declining to construe terms where the terms are "common terms that need no clarification.").

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#9:** "broader geographical area" (Claims 1, 31) **#10:** "geographical area of relatively larger expanse" (Claim 20) | "a geographic area in the database that encompasses one or more narrower geographic areas in the database" | "a geographic area in the database which is a parent of one or more narrower geographic areas" | No need to construe. Plain and ordinary meaning |

        *(1)      Google's Proposed Constructions Should be Adopted*

Each of these phrases is interrelated to the "hierarchy of geographical areas" phrase, and should be construed consistently with that phrase. As discussed above regarding "hierarchy of geographical areas," the claims and specification mandate that geographic areas "encompass" or are "encompassed by" other geographic areas in the database. Google therefore incorporates its analysis of "hierarchy of geographical areas" for these four related terms. (§V(A)(ii)(a).)

        *(2)      Microsoft's Proposed Constructions Should be Adopted*

The difference between Microsoft and Google's proposed constructions comes down to Microsoft's preference for the use of the parent-child relationship specifically described and defined in the specification. Thus, Microsoft relies on the parent-child geographical relationship for its construction, as it did for the construction discussed in §V(A)(ii)(b), *supra*. The parent-child relationship puts the proper boundaries around the purported invention in the '474 patent, was specifically used and defined by the applicants, and should be adopted by the Court.

        *(3)      GeoTag's Proposed Constructions Should be Rejected*

GeoTag's proposal to give these terms a plain and ordinary meaning fails to account for the context of these phrases in the claims the teachings in the specification. (§V(A)(i)(c).)

GeoTag also cites no evidence that these phrases have a plain and ordinary meaning to one of ordinary skill in the art or what that meaning would be.  More importantly, a lay juror would not understand this encompassing concept—whether something is "broader" or "narrower" or in a "relatively smaller [or larger] expanse"—without guidance.  For example, is a zip code broader or narrower than a county when it overlaps with two counties?  Or, is Wilmington, Delaware a broader or narrower geographical area than Dover, Delaware?

The Court must therefore construe these terms to capture the particular meaning the inventors gave to them.  *See, e.g.*, *MarcTec LLC v. Johnson & Johnson*, 664 F.3d 907, 918 (Fed. Cir. 2012); *Felix v. American Honda Motor Co., Inc.*, 562 F.3d 1167, 1177–79 (Fed. Cir. 2012).

### (iii)   GeoTag's Reply Positions

#### (a)   Term # 1, 5, 6

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#1:** "hierarchy of geographical areas" (Claims 1, 4, 20) | "related geographical areas, ordered such that broader general geographic areas encompass narrower specific ones" | No separate construction necessary. *See* construction for term #2 | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones" (same as #5, 6, 17) |
| **#5:** "hierarchy" (Claims 1, 5, 20) **#6:** "hierarchically organized" (Claims 32) | No need to separately construe. *See* term #1, term #16 for "topics," and term #17 for "wherein said topics are hierarchically organized" | No separate construction necessary. *See* construction for term #2, term #16 for "topics" and term #17 for "wherein said topics are hierarchically organized" | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones" (same as #1, 17) |

As with Microsoft (discussed below), Google's proposed construction of these phrases, including "hierarchy of geographical areas," impermissibly seeks to import limitations from the specification into the claims. Google cites to where the specification states that a higher or parent level "encompasses" a lower or child level. (§V(A)(ii)(a).) As a result, Google argues that the term "encompass" should be added to the claim, as indicated in its proposed construction. Google's argument must be rejected because it, like Microsoft, is attempting to add limitations from the specification to the claims. Such is legally impermissible. *See Acumed*, 483 F.3d at 805; *Kara Tech. Inc. v. Stamps.com Inc*., 582 F.3d 1341, 1348 (Fed. Cir. 2009). Further undermining the legal legitimacy of Google's proposed construction is the fact that dependent claim 5 explicitly uses the term "encompasses" in this context. (Ex. A at 39:2-4 ("each of the geographical levels above the lowest level encompassing a plurality of lower geographical areas") (App. 43).) As the term "encompassing" appears in the dependent claim, it is improper under the doctrine of claim differentiation to read "encompass" into the independent claims as Google suggests. *See Phillips*, 415 F.3d at 1314-15; *Liebel-Flarsheim*, 358 F.3d at 910 ("doctrine of claim differentiation at its strongest" where limitation sought to be read into an independent claim already appears in dependent claim).

Contrary to Google's argument (§V(A)(ii)(a)), GeoTag's proposed construction is proper, consistent with the specification, and in accordance with Magistrate Judge Everingham's construction for the reason set forth at §V(A)(i)(a).

### (b) Term # 2

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#2:** "a database of information organized into a hierarchy of geographical areas | Rather than construe the entire limitation, Google focuses on separate terms in the limitation as | "a database of records primarily organized into interrelated geographic areas | No need to separately construe; see constructions for #3 and #19 |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics" <br><br>(Claim 1) | discussed in §V(A)(ii)(a). | such that there are parent geographic areas and child geographic areas, wherein the records associated with a geographic area are further organized into topics" | |

Citing *Panavision Imaging, LLC v. Omnivision Technologies, Inc.*, 2012 WL 367056, at *2 (C.D. Cal. Feb. 3, 2012), Microsoft argues that this entire phrase should be construed altogether as one. Microsoft is simply attempting to avoid Magistrate Judge Everingham's construction. *Panavision* is inapposite. In that case, the Court found that the word "coupled" was inadequate to permit understanding of the invention. That is not the situation with respect to the above phrase.

Microsoft's proposed construction is legally impermissible because it imports extraneous limitations into the claims. More particularly, Microsoft wants to read the terms "parent" and "child" into the claim from the specification. (*See* §V(A)(ii)(b).) These terms do not appear in the claims and it is improper to import them into the claims as Microsoft would do. *See Acumed*, 483 F.3d at 805 (Fed. Cir.), *cert. denied*, 552 U.S. 1022 (2007) ("attempt to import a feature from a preferred embodiment into the claims" is "flawed"). Microsoft's argument that this phrase should be construed as "geography-first" (§V(A)(ii)(b)) is similarly flawed. Claims are not to be limited to the preferred embodiment. *Kara Tech.*, 582 F.3d at 1348 ("patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims"). The claims do not require that geography be first and Microsoft's attempt to import such a limitation into the claims is, once again, legally flawed and impermissible. *Acumed*,

483 F.3d at 805.  This phrase should be construed in accordance with Magistrate Judge Everingham's construction, and as set forth in GeoTag's opening brief.[32]

> ### (c)    Terms # 7, 8, 9, 10

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#7:** "narrower geographical area" (Claim 1) **#8:** "geographical area of relatively smaller expanse" (Claim 20) | "a geographic area in the database encompassed by a broader geographic area in the database" | "a geographic area in the database which is a child of the broader geographic area" | No need to construe. Plain and ordinary meaning |
| **#9:** "broader geographical area" (Claims 1, 31) **#10:** "geographical area of relatively larger expanse" (Claim 20) | "a geographic area in the database that encompasses one or more narrower geographic areas in the database" | "a geographic area in the database which is a parent of one or more narrower geographic areas" | No need to construe. Plain and ordinary meaning |

Google and Microsoft disagree between themselves upon the construction of these terms.  All of their proposed respective constructions, however, should be rejected as legally impermissible.  Once again, Google is attempting to add an "encompassing" limitation from the specification into the claims.  Similarly, once again, Microsoft is attempting to read in "parent" and "child" limitations.   As set forth in §§V(A)(iii)(a)-(b) above, plaintiffs' proposed constructions violate the rule against reading limitations into the claims and the doctrine of claim differentiation.  Thus, plaintiffs' proposed constructions should be rejected.

---

[32]  Google does not join in Microsoft's proposed construction of this phrase.

Terms such as "broader," "narrower," "relatively smaller" and "relatively larger" are ordinary terms that lay jurors will readily understand. Thus, for the reasons set forth at §V(A)(i)(c), construction of these terms is not required. *See Vitronics*, 90 F.3d at 1592; *Innovative Sonic*, 2012 U.S. Dist. LEXIS 149429, at **28-29 ("[i]f a claim term is readily understood by a jury, there is no need for the court to construe the term"); *Skyhook Wireless*, 2012 U.S. Dist. LEXIS 131403, at *34, *50 (declining to construe terms where the proposed construction "provides no additional clarity" and "would only complicate the term"); *Gen-Probe*, 2011 U.S. Dist. LEXIS 131820, at *51 (declining to construe terms where the terms are "common terms that need no clarification").

**(iv)   Plaintiffs' Sur-Reply Positions**

*(a)     Google: Term #1*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#1:** "hierarchy of geographical areas"<br><br>(Claims 1, 4, 20) | "related geographical areas, ordered such that broader general geographic areas encompass narrower specific ones" | No separate construction necessary. *See* construction for term #2 | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones"<br><br>(same as #5, 6, 17) |

*(1)     Google's Construction is Correct in View of the Specification*

As Google explained in §V(A)(ii)(a), the term "hierarchy of geographical areas" has no meaning apart from the intrinsic record, and GeoTag cites no evidence to the contrary. Complying with settled Federal Circuit law, Google therefore construed "hierarchy of geographic areas" in the context of the claims and specification. GeoTag's argument that Google seeks to "import limitations from the specification into the claims" is specious.

The specification is "the single best guide to the meaning of a disputed term," and

"[u]sually, it is *dispositive*." *Phillips*, 415 F.3d at 1315 (citations omitted) (emphasis added); *see also Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004) ("Even when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents."). As *Phillips* noted, a careful review of the specification will make clear whether an inventors' embodiment is exemplary, or "whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive." 415 F.3d at 1315.

As Google explained in §V(A)(ii)(a), the "encompassing" concept of the "hierarchy of geographical areas" was not merely exemplary; it was a fundamental requirement for the alleged invention and is coextensive with the claims. Every description of the "hierarchy of geographical areas" describes the importance of a broader geographical area encompassing a "narrower geographic area" or the "geographical area of relatively smaller expanse," as phrased in certain claims, and vice versa. The concept is similar to the example of Russian nesting dolls—when you open the largest doll, a smaller doll is encompassed within it and, likewise, when you open that doll another smaller doll is encompassed within it. Google's construction reflects the intrinsic record's description of this type of hierarchy.

> *(2)*  *GeoTag's Construction Improperly Broadens and Rewrites the Claim*

GeoTag's construction, in contrast, seeks to impermissibly rewrite and broaden the claim language. It seeks to remove the key term "geographical areas" from the claim completely and replace it with new expansive terms, some of which are not even described in the specification (*i.e.* "arrangement," "categories," "data," and "information."). (§V(A)(i)(a).)

As the Federal Circuit has made clear, "a claim term should not be read to encompass a broader definition 'in the absence of something in the written description and/or

32

prosecution history to provide explicit or implicit notice to the public--i.e., those of ordinary skill in the art--that the inventor intended a disputed term to cover more than the ordinary and customary meaning revealed by the context of the intrinsic record.'" *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1145 (Fed. Cir. 2005) (citing *Phillips*, 415 F.3d at 1303); *see also Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*, 554 F.3d 1010, 1019 (Fed. Cir. 2009); *AquaTex Indus. v. Techniche Solutions*, 419 F.3d 1374, 1381 (Fed. Cir. 2005).  In *Nystrom*, the Federal Circuit found the patentee's attempt to broadly construe the term "board" beyond the definitions in the intrinsic record "misplaced" and contrary to *Phillips'* warning that patentees are "not entitled to a claim construction divorced from the context of the written description."  *Nystrom*, 424 F.3d at 1145.

GeoTag cites no evidence that the intrinsic record supports its broad construction or that the phrase has any meaning apart from the definition in the intrinsic record.  *See id.*

### (3)    Claim 5 Supports Google's Construction, Not GeoTag's

Finally, GeoTag's claim differentiation argument about dependent claim 5's use of "encompass" misses the mark.  (§V(A)(iii)(a).)   Indeed, claim 5 supports Google's construction, not GeoTag's.

"Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips*, 415 F.3d at 1314.  Claim 5 adds to claim 1's "hierarchy of geographical areas" that the "geographic areas are geographically categorized by size to provide a low level, one or more intermediate levels, and a high level, each of the geographic levels above the lowest level *encompassing a plurality of lower level geographical areas*."  (Ex. A at Claim 5 (emphasis added) (App. 42-43).)   Thus, claim 5 confirms that Google's "encompassing" construction is correct.

33

The law is clear that the doctrine of claim differentiation applies "when the limitation in dispute is the *only* meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *Sunrace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003) (emphasis added); *see also Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1224 (Fed. Cir. 2001). Claim 5 adds several limitations to claim 1; including (i) at least three geographic levels that (ii) are "geographically categorized by size." The "encompassing" language articulates the inherent aspect of claim 1's hierarchy, *i.e.*, that each broader level encompasses the levels below it. Because claim 5 adds numerous meaningful limitations to claim 1, the doctrine of claim differentiation for "encompass" does not apply. *See id.*

### *(b)   Microsoft: Term #2*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#2:** "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics" (Claim 1) | Rather than construe the entire limitation, Google focuses on separate terms in the limitation as discussed in §V(A)(ii)(a). | "a database of records primarily organized into interrelated geographic areas such that there are parent geographic areas and child geographic areas, wherein the records associated with a geographic area are further organized into topics" | No need to separately construe; see constructions for #3 and #19 |

GeoTag directs two attacks towards Microsoft's construction. First, GeoTag argues that the Court should not construe Microsoft's proposed phrase because Microsoft is "attempting to avoid Magistrate Judge Everingham's construction." (§V(A)(iii)(b).) But other than this strange, irrelevant, and incorrect observation, GeoTag fails to make any actual

*argument* suggesting that Microsoft is wrong to want the longer term construed.  GeoTag

does not suggest that construing the longer phrase as Microsoft requests would confuse the

jury or is in any other way inappropriate.  Indeed, GeoTag does not even defend its own

proposed term for construction, which it could not do in any event, as GeoTag's proposal

results in an impenetrable mess of constructions within constructions as the below chart

shows. GeoTag's Franken-construction is sure to be misunderstood by the jury, and should be

rejected.

| Terms for construction | GeoTag's intermediate constructions | GeoTag's fully substituted construction |
|---|---|---|
| *"a database of information organized into a hierarchy of geographical areas"* and **"entries corresponding to each one of said hierarchy of geographical areas is further organized into topics"** | a database of information organized into a hierarchy of geographical areas: *a collection of interrelated information or data organized such that a computer program can quickly retrieve selected information or data, ordered from broader geographical categories to narrower geographical categories*<br><br>entries corresponding to each one of said hierarchy of geographical areas is further organized into topics: **data in the** <u>database</u> **associated with a geographic area in the *hierarchy of geographical areas* is further organized to permit selected data to be retrieved into topics**<br><br>database**:** <u>collection of information or data organized such that a computer program can quickly retrieve selected information or data</u><br><br>hierarchy of geographical areas***: "an arrangement of related information or data, ordered from broader general categories to narrower specific ones"*** | *a collection of interrelated information or data organized such that a computer program can quickly retrieve selected information or data, ordered from broader geographical categories to narrower geographical categories* wherein <u>data in the</u> <u>collection of information or data organized such that a computer program can quickly retrieve selected information or data</u> **associated with a geographic area in the *arrangement of related information or data, ordered from broader general categories to narrower specific ones* is further organized to permit selected data to be retrieved into topics** |

GeoTag's second criticism is similarly wide of the mark.  GeoTag accuses

Microsoft's construction of "importing extraneous limitations" into the claims.  But this is

wrong, Microsoft's construction uses the specification and other intrinsic evidence to

demonstrate the meaning of the claim terms, as the Federal Circuit has said time and again is

the proper course of action: "In construing a claim, a court principally consults the evidence

intrinsic to the patent, including the claims, the written description, and the relevant

prosecution history."  *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2001).  Indeed, in

*Phillips*, the Federal Circuit reaffirmed the dominant use of the specification to understand disputed claim terms: "[C]laims 'must be read in view of the specification, of which they are a part.'  As we stated in *Vitronics*, the specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Phillips*, 415 F.3d at 1315–16.

The geographical-hierarchy terms are terms of art that the specification unambiguously defines in terms of the parent-child relationship.  Microsoft offered numerous examples drawn from the specification showing that the inventors intended the geographical hierarchy to include the parent-client relationship.  (*See e.g.,* Ex. A at 12:27–32, 19:10–22, 19:23–25 (App. 29, 33).)   Microsoft further demonstrated that the ***only*** embodiment described in the specification is the geography database 210, which is structured in a parent-child relationship.  Yet, GeoTag fails to even address these references.  And other than its rote criticism of importing limitations, GeoTag fails to offer any support from the specification for its own construction.

GeoTag also contends that Microsoft's use of the term "primary" in its proposed construction to capture the primacy of the geographical hierarchy is wrong.  But again, GeoTag does not offer a single citation from the specification showing *why* Microsoft is wrong.  Instead, without offering any evidence that it is true, GeoTag incants its mantra that Microsoft is attempting to import limitations from the specification.

The claims and specification make the case for geographic primacy, confirming that Microsoft's construction is correct.  For instance, the claim says: "a database of information organized into a hierarchy of geographical areas wherein entries . . . [are] *further* organized into topics."  (Ex. A at 38:46 (emphasis added) (App. 42).)  So, the claim language requires data to be primarily organized by geography because otherwise it cannot be *further* organized into topics.  Later the claim language again demonstrates geographic primacy by requiring

that the geographical areas be selected before the topic: " . . . said search engine further configured to [s]elect one of said hierarchy of geographical areas *prior* to selection of a topic." (*Id.* at 38:51 (emphasis added) (App. 42).)  Thus, far from importing limitations from the specification, Microsoft's construction stays true to the claim language, and is consistent with the specification.

### (c)     *Plaintiffs: Terms # 5, 6*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#5:** "hierarchy" (Claims 1, 5, 20) **#6:** "hierarchically organized" (Claims 32) | No need to separately construe. *See* term #1, term #16 for "topics," and term #17 for "wherein said topics are hierarchically organized" | No separate construction necessary. *See* construction for term #2, term #16 for "topics" and term #17 for "wherein said topics are hierarchically organized" | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones" (same as #1, 17) |

GeoTag does not address any of Plaintiffs' arguments regarding these two sub-terms. GeoTag offers no rationale for separately construing them.  For the reasons in §V(A)(ii)(c), these terms do not need to be separately construed.

### (d)     *Plaintiffs: Terms # 7, 8, 9, 10*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#7:** "narrower geographical area" (Claim 1) **#8:** "geographical area of relatively smaller expanse" (Claim 20) | "a geographic area in the database encompassed by a broader geographic area in the database" | "a geographic area in the database which is a child of the broader geographic area" | No need to construe. Plain and ordinary meaning |

GeoTag's §V(A)(iii)(c) addresses none of Plaintiffs' arguments.  As discussed above,

neither Google's nor Microsoft's constructions improperly import a limitation from the specification into the claims.  Both seek to construe the terms to convey the "hierarchy" concept as it relates to geographic areas consistent with the only definitions in the intrinsic evidence.

GeoTag's proposed construction, however, improperly rewrites and broadens the claim.  GeoTag argues that terms such as "broader," "narrower," "relatively smaller," and "relatively larger" are ordinary terms and need no construction.  (§V(A)(iii)(c).)  But these are not the terms in dispute in the context of the limitation; GeoTag again ignores the key phrase "geographical area."  As discussed above regarding "hierarchy of geographical areas," GeoTag specifically defined the concept "broader" and "narrower" in conjunction with "geographical areas."  These phrases should be construed consistently with the "hierarchy of geographical areas" phrases as proposed by Plaintiffs.

### B.     The "Dynamically Replicated" Phrases

The "dynamically replicated" phrases include five similar or related terms.  Generally, GeoTag believes that all of the phrases should be construed.  (*See* §V(B)(i), below.)  Google believes that the term "dynamically replicated"/"dynamically replicating" can be construed based on the prosecution history, but that in the context of the asserted claims which describe search engine performing "dynamic replication," the term is not supported by the specification.  (*See* §V(B)(ii)(a), below.)  Microsoft believes that each of the "dynamically replicated" phrases are incapable of construction because they are indefinite and/or lack written description.  (*See* §V(B)(ii)(c), below.)

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#11**: (collectively)<br><br>"dynamically replicating" | "automatically inheriting at the time of a search" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite | "automatically copying or inheriting, at the time needed rather than at a time decided or established |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| "dynamically replicated"<br><br>(Claims 1, 20, 31) | | and/or lacks written description. | in<br>advance" |
| **#12**: (collectively)<br><br>"replicated"<br><br>"replicating"<br><br>(Claims 1, 20, 31) | No need to separately construe; see constructions for term #11: "dynamically replicating" / "dynamically replicated" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "copied or inherited" and "copying or inheriting" |
| **#13**: "dynamically replicating an entry from broader geographical area into said geographical search area"<br><br>(Claim 31) | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance, at least a piece of data contained in a database that is associated with a broader geographical area into an area from which topical information can be accessed that is a subset of that broader geographical area" |
| **#14**: "wherein within said hierarchy of geographic areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area"<br><br>(Claim 1)<br><br>**#15**: "wherein at least one of said entries in said geographical area of relatively larger | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | | "wherein within the hierarchy of geographical areas, at the time needed rather than at a time decided or established in advance, at least a piece of data in a database associated with a broader geographical area is automatically copied or inherited into at least one narrower geographical area" |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| expanse is dynamically replicated into at least one of said geographical areas of smaller expanse" (Claim 20) | | | |

### (i)   GeoTag's Opening Positions

#### (a)   Term # 11

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#11**: (collectively) "dynamically replicating" "dynamically replicated" (Claims 1, 20, 31) | "automatically inheriting at the time of a search" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance" |

GeoTag submits that these phrases be construed as "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance." GeoTag asserts that not only is there support in the patent for its proposed claim construction but two federal authorities have endorsed this position.

Magistrate Judge Everingham dealt with these phrases at length in *Idearc*. (*See* Ex. F at 21-23 (App. 135-37).) As set forth therein, these terms do not appear *per se* in the specification. (Ex. F at 22 (App. 136).) Rather, they appear in a response from the inventors to the Patent Office wherein the phrase "dynamically replicating" was employed "'to clarif[y] the patentability distinguishing features of the invention.'" (*Id.*; *see* Ex. D [8/7/98 Response] (App. 82-90).) As Magistrate Judge Everingham also noted, in the Notice of Allowance, the patent examiner cites "dynamically replicating" to mean "'automatically inheriting an entry

40

from a broader geographical area into said geographical search area.'" (Ex. F at 22 (App. 136); *see* Ex. D [Notice of Allowability at 3] (App. 95).)  The court therein found that the specification supported such an interpretation. (Ex. F at 23 (App. 137) (citing '474 Patent at 19:29-39; 19:46-63) (App. 33).)   Thus, these phrases were construed in *Idearc* as "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance" and such construction should be adopted herein.

### (b)    Term # 12

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#12**: (collectively)<br><br>"replicated"<br><br>"replicating"<br><br>(Claims 1, 20, 31) | No need to separately construe; see constructions for term #11: "dynamically replicating" / "dynamically replicated" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "copied or inherited" and "copying or inheriting" |

The Court in *Idearc* interpreted these words in connection with the terms immediately above. (*See* Ex. F at 21-23 (App. 135-37).)  The construction given therein was as requested by GeoTag above in this case.  (*Id.*)  For the reasons stated by the *Idearc* court, this Court should adopt the *Idearc* construction requested by GeoTag herein, which construction is supported by the specification.  (*See* Ex. A at 19:29-39; 19:46-63; 22:32-38 (App. 33-34).)

### (c)    Term # 13

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#13**: "dynamically replicating an entry from broader geographical area into said geographical search area"<br><br>(Claim 31) | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance, at least a piece of data contained in a database that is associated with a |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| | | | broader geographical area into an area from which topical information can be accessed that is a subset of that broader geographical area" |
| **#14**: "wherein within said hierarchy of geographic areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area" (Claim 1) **#15**: "wherein at least one of said entries in said geographical area of relatively larger expanse is dynamically replicated into at least one of said geographical areas of smaller expanse" (Claim 20) | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | | "wherein within the hierarchy of geographical areas, at the time needed rather than at a time decided or established in advance, at least a piece of data in a database associated with a broader geographical area is automatically copied or inherited into at least one narrower geographical area" |

This phrase was construed in *Idearc* in connection with the construction of the terms in §§V(B)(i)(a)-(b) above.  (Ex. B at 24-25 (App. 136-37).)  GeoTag's proposed construction set forth above is the same as the *Idearc* construction and, therefore, should be adopted to avoid inconsistent claim construction.

*(d)      Terms # 14, 15*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#14**: "wherein within said hierarchy of geographic areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area"<br><br>(Claim 1)<br><br>**#15**: "wherein at least one of said entries in said geographical area of relatively larger expanse is dynamically replicated into at least one of said geographical areas of smaller expanse"<br><br>(Claim 20) | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | | "wherein within the hierarchy of geographical areas, at the time needed rather than at a time decided or established in advance, at least a piece of data in a database associated with a broader geographical area is automatically copied or inherited into at least one narrower geographical area" |

These phrases were construed in *Idearc* in connection with the phrases in sections (a)-(c) above.  (*See* Ex. F at 23-24 (App. 135-36).)  GeoTag's proposed construction above is the same as the construction made in *Idearc* and should be adopted herein to avoid inconsistent claim construction.

**(ii)      Plaintiffs' Opening Positions**

*(a)      Google: Term #11*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#11**: (collectively)<br><br>"dynamically replicating"<br><br>"dynamically replicated"<br><br>(Claims 1, 20, 31) | "automatically inheriting at the time of a search" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance" |

  (1) *The Intrinsic Record Supports Google's Construction that the Replication Occurs "at the Time of the Search"*

Google and GeoTag agree that these phrases, found in each of the independent claims, require an action to occur "automatically." But they disagree what that action is (*i.e.*, "inheriting" or "copying or inheriting") and when it occurs (*i.e.*, "at the time of a search" or "at a time needed rather than at a time decided or established in advance"). Google's proposed construction for both concepts more closely adheres to the claims, specification, and file history.

In the *Idearc* litigation, the parties did not dispute "dynamically" and stipulated that the construction should include the phrase "at the time needed rather than at a time decided or established in advance." (Ex. F at 21-23 (App 135-37).) Google, however, is not bound by that stipulation and does not agree with it. Google's construction clarifies that dynamic replication occurs "at the time of the search." This definition better reflects the claim language and specification and explains when exactly the replication occurs.

Indeed, Geomas' description of the vague phrase "the time needed" in the *Idearc* litigation confirms that dynamic replication occurs at the time of the search. Geomas conceded that "dynamically replicated . . . encompasses the reproducing, duplicating, repeating, and/or including of data from broader geographical areas into narrower geographical areas by the search engine *at the time of a search*." (Ex. G at 25 (emphasis

added) (App. 175).)[33]

This admission is hardly surprising since the claim language mandates that the search engine replicate an entry from a broader area into a narrower area at the time of the search. The "search engine" limitation in each claim focuses on the search engine's operation while performing a search.   (Ex. A at Claims 1, 20, 26, and 31 (App. 42-43).)   Google's construction is therefore consistent with the claims.  *Phillips*, 415 F.3d at 1312–13.

The specification also supports Google's construction.  For example, the specification describes the search process where geographical entries are "the key to displaying related entries to the internet user, and are automatically inherited from the parent entry."  (Ex. A at 19:32–36 (App. 33).)  It also discloses that after a selection of content "to be searched is provided by the user," entries in the content database are "automatically inherited from the parent entry."  (*Id*. at 23:30–39 (App. 35).)  Thus, where the specification refers to the replication of entries, it does so in the context of the search engine performing a search at the user's request.

Accordingly, the claim language, the specification, and Geomas' admissions in the *Idearc* litigation support Google's construction.

> (2)    The Intrinsic Record Supports Google's Construction
>          Requiring "Inheriting"

The phrases "dynamically replicated" and "dynamically replicating" are not disclosed in the specification.  Rather, they only appear in the prosecution history, which confirms Google's construction of "automatically inheriting."

After rejecting the patentees' original claims, the Examiner summarized the results of her interview with the inventors:  "The dynamic replication of an entry in [sic] narrow geographical area would overcome the prior art of record."  (Ex. D [Interview Summary]

---

[33]   Geomas also argued that, "dynamically replicated is a retrieval-related process accomplished with the help of the search engine."  (Ex. G at 25 (App. 175).)

(App. 81).)  The applicants responded by including the "dynamically replicated" phrases in Claims 1, 20, and 31 "to clarif[y] the patentability distinguishing features of the invention." (Ex. D [8/7/98 Response at 7] (App. 82-90).)  The Examiner defined the new "dynamically replicated" phrase to mean "automatic inheritance."  (Ex. D at [Search Request Form] (App. 91).)  In the Notice of Allowance, she also cited the phrase "dynamically replicating" as a basis for distinguishing the prior art and confirmed her interpretation that it meant "automatically inheriting."  (Ex. D [Notice of Allowance at 3] (App. 95).)

In sum, the Examiner interpreted "dynamically replicating" as "automatically inheriting" and expressly allowed the claims on that basis.  The inventors never challenged that interpretation.  *See Salazar v. Procter & Gamble Co*., 414 F.3d 1342, 1347 (Fed. Cir. 2005) (an Examiner's statements about a claim term during prosecution may be evidence of how one skilled in the art understood the term at the time the application was filed).  The prosecution history therefore supports Google's construction of "automatically inheriting."[34]

### (3)  GeoTag's Construction Conflicts with the Claims and Specification

GeoTag proposes the *Idearc* construction and offers no support for its construction other than the prosecution history, which as discussed above, supports Google's construction. (§V(B)(i)(a).)[35]

This Court should reject GeoTag's inclusion of the phrase "at the time needed rather than at a time decided or established in advance" for multiple reasons.  First, this construction has no support in the intrinsic record.  Second, this definition fails to specify when the "time needed" occurs and could confuse the jury to believe that replication occurs before the search.  Third, defining the claim term in both the affirmative ("at the time needed") and

---

[34]  The phrase "automatically inheriting" is also found in the specification.  (Ex. A at 19:29-39; 19:46-63 (App. 33).)

[35]  Prior claim construction orders are not binding on this Court or on parties who were not a party to the prior action.  *See supra*, §III(B),(D).

negative ("rather than at a time decided or established in advance") adds superfluous language that could confuse the jury. *See Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1060 (Fed. Cir. 2009) (Commission's claim construction was erroneous "because there is no basis in the patent specification for adding the negative limitation") (citation omitted). Google's construction obviates these issues.

Finally, none of GeoTag's cited evidence supports adding the word "copying" into the construction. GeoTag relies upon several of the same passages as Google for its interpretation of these limitations. (Dkt. 115, at 2 [Joint Claim Construction Statement, Exhibit C], citing '474 Patent at 19:29–39; 19:46–63; 22:32–38 (App. 33-34).) As discussed above, however, the prosecution history and specification never refer to "automatically copying or inheriting."

*(b)*     *Google: Term #12*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#12**: (collectively) "replicated" "replicating" (Claims 1, 20, 31) | No need to separately construe; see constructions for term #11: "dynamically replicating" / "dynamically replicated" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "copied or inherited" and "copying or inheriting" |

Instead of construing these terms separately, Google proposes the Court construe only the larger "dynamically replicated" phrases as discussed above. The inventors added "dynamically replicated" as a whole during prosecution. Nothing in the intrinsic record supports construing the terms "replicated" or "replicating" separately—even GeoTag proposes constructions for the larger phrase. As discussed above, there is no intrinsic evidence that "replicated" means "copied"—to the contrary, the prosecution history confirms the special definition given to this term in the context of the larger phrase "dynamically replicated" means "inherited."

**(c)     Microsoft: Terms # 11, 12, 13, 14, 15**

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#11**: (collectively)<br><br>"dynamically replicating"<br><br>"dynamically replicated"<br><br>(Claims 1, 20, 31) | "automatically inheriting at the time of a search" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance" |
| **#12**: (collectively)<br><br>"replicated"<br><br>"replicating"<br><br>(Claims 1, 20, 31) | No need to separately construe; see constructions for term #11: "dynamically replicating" / "dynamically replicated" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "copied or inherited" and "copying or inheriting" |
| **#13**: "dynamically replicating an entry from broader geographical area into said geographical search area"<br><br>(Claim 31) | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance, at least a piece of data contained in a database that is associated with a broader geographical area into an area from which topical information can be accessed that is a subset of that broader geographical area" |
| **#14**: "wherein within said hierarchy of geographic areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | | "wherein within the hierarchy of geographical areas, at the time needed rather than at a time decided or established in advance, at least a piece of data in a database associated with a broader geographical area is automatically copied |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| (Claim 1)<br><br>**#15**: "wherein at least one of said entries in said geographical area of relatively larger expanse is dynamically replicated into at least one of said geographical areas of smaller expanse"<br><br>(Claim 20) | | | or inherited into at least one narrower geographical area" |

GeoTag's construction of the various dynamically-replicated limitations all suffer from the same basic problems.  First, GeoTag's constructions are not based on anything described in the specification.  Simply put, GeoTag's constructions describe an invention that the inventors did not invent.  Second, GeoTag's construction does not, in any way, clarify the dynamically-replicated limitations' scope, defeating the purpose of claim construction. Microsoft does not separately propose a construction for the dynamically-replicated limitations because the limitation cannot be construed in a manner that is consistent with the intrinsic and extrinsic evidence.  As a result, each claim incorporating the dynamically-replicated limitation is invalid under 35 U.S.C. § 112, ¶ 2.  As the Federal Circuit stated in *Honeywell Int'l, Inc. v. ITC*, 341 F.3d 1332, 1338 (Fed. Cir. 2003) (quoting *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371-72 (Fed. Cir. 2001)), "[t]he definiteness requirement of § 112 ¶ 2 'focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude.'"  Claims with the dynamically-replicated limitations do not meet this standard.

> (1)    *The Intrinsic Evidence Does Not Support GeoTag's Claim Construction*

GeoTag's construction has two pieces: GeoTag substitutes "automatically copying or inheriting" for "replicating" and "at the time needed rather than at a time decided or established in advance" for "dynamically."  As to this second portion of the construction, Microsoft agrees with Google that if "dynamic" means anything at all in this context, it means "at the time of a search."  From Microsoft's perspective, the first part of GeoTag's construction—substituting "automatically copying or inheriting" for "replicating"—is the nut of GeoTag's error.

GeoTag's error is apparent from the language of the claims themselves.  GeoTag does not dispute that the claims' logic and plain language require that—whatever dynamically replicating means—the search engine must do it.  The claim language specifically says so: "said search engine configured to search geographically and topically . . . wherein within said hierarchy of geographical areas at least one of said entries associated with a b[roa]der geographical area is dynamically replicated . . . ."  (Ex. A at 38:48–55 (App. 42).)

Further, Geomas—GeoTag's predecessor—in fighting the definition GeoTag now advocates, confirmed that automatically inheriting *was not* the same thing as dynamically replicating because dynamic replication is a search engine process while automatically inheriting is not: "This process of automatically inheriting fields from a parent entry into a child entry is <u>not</u> the same as the dynamic replication process, but rather relates to data entry."  (Ex. H [Geomas Reply Br. at 10] (emphasis in original) (App. 403).)  Thus, even GeoTag acknowledges the distinction between the search engine process of dynamic replication and the data-entry process of automatic inheritance.

Because it is undisputed that dynamic replication must describe something the search engine does, GeoTag must propose a construction describing the search engine functionality.  But, each of GeoTag's citations identified in support of its construction of "automatically copying or inheriting" as "dynamically replicating" actually undermines its position.  For

instance, GeoTag points to column 19, lines 29–39 as defining "dynamically replicate" as "automatically copying or inheriting."  That pincite reads:

> The data contained within the geographic database 210 also includes reference fields 1305 which include a reference city, reference region, reference state, province or territory, reference country, reference continent, and reference world values.  These values are the parentage name keys related to the current entry, and provide the key to displaying related entries to the internet users, and are automatically inherited from the patent entry.

This reference unambiguously refers to the data-entry process, not some search engine functionality.  Indeed, even inventor Dunworth confirms this understanding of this very portion of the specification:

> Q.    [I]t is your understanding that statement [on column 19, line 35] that these values are automatically inherited from the parent entry refers to something occurring during the retrieval process?
>
> A.    That describes how the values are [] initially created.
>
> Q.    Okay. So during the creation of the child entry?
>
> A.    Correct.

(Ex. I at 161:10–18 [Dunworth Dep. Tr.] (App. 453).)

GeoTag's other citations likewise fail to show that the search engine does any "automatically copying or inheriting" at the time of a search (or any other time for that matter).  For instance, GeoTag points to column 19, lines 46–63 as supporting the substitution of "automatically copying or inheriting" for "dynamically replicating."  But that excerpt applies to data storage, not search engine functionally: "The data *stored* within the geographic database 210 further includes label fields 1315 which include text fields shown to the user as folder titles . . . ."  (Ex. A at 19:46–48 (emphasis added) (App. 33).)

GeoTag's last citation, column 22, lines 32–38 also fails to show how a search engine can automatically copy or inherit.  This reference is so off-the-mark that Magistrate Everingham held that it had nothing to do with "dynamically replicating:" "This citation [('474 patent at 22:32–38 (App. 34))] does not support [GeoTag's] construction . . .  There is no replication or copying of any information from a broader area into a narrower area at the

time it is needed to respond to a search inquiry." (Ex. F at 23 [*Idearc* Markman Order] (App. 137).)

GeoTag's only other suggestion as to why the Court should construe the dynamically-replicated limitations as GeoTag now proposes is because the Magistrate in the *Idearc* litigation did. But as discussed above, it is error to accept another court's claim construction without critical evaluation. Given that GeoTag cannot offer any intrinsic evidence to support its construction, and given that GeoTag has not even tried to find supporting extrinsic evidence, the Court should reject GeoTag's construction. Further, because there is no meaningful construction that is consistent with the intrinsic evidence, the Court should find that any claim incorporating the dynamically-replicated limitation is invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2.

### (2)    GeoTag's Construction Does Not Clarify Claim Scope

Aside from being unsupportable by the intrinsic or extrinsic evidence, GeoTag's proposed construction does nothing to clarify claim scope and resolve the disputes among the parties. For instance, what does it mean for a search engine (as opposed to a database) to "automatically copy or inherit" a "piece of data" associated with a broader geographical area "into" a narrower geographical area at the time of a search? How would the jury know if an accused search engine does that? GeoTag urges Magistrate Everingham's construction without ever addressing the critical question: what does it mean? If this Court accepts GeoTag's construction, it will simply delay resolution of the dispute over the meaning of this limitation and risk the parties improperly arguing issues of claim interpretation to the jury. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (noting that parties' claim construction arguments were "improperly submitted to the jury"). GeoTag will contend that Microsoft and Google's accused products dynamically replicate, and Microsoft and Google will contend that they do not with each party likely

interpreting the construction in different ways.  Indeed, GeoTag's ability to exploit the substantial ambiguity in the *Idearc* construction explains why it now proposes the construction it previously opposed.

The point of claim construction is not to punt, but to give specific meaning to the claim terms—guided by the intrinsic and extrinsic evidence —that the fact finder can use to determine whether an accused device infringes.  As the Federal Circuit held in *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997), "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement."  GeoTag's proposed construction fails to provide meaning that a fact finder can use to determine whether an accused device infringes.  If the Court is inclined to accept GeoTag's construction (or anything similar to it), the Court should explain what the construction means, so that the dispute over its meaning is not pushed into the noninfringement phase, but rather, is resolved now.

### (iii)   GeoTag's Reply Positions

#### (a)   Term #11

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#11**: (collectively) <br><br> "dynamically replicating" <br><br> "dynamically replicated" <br><br> (Claims 1, 20, 31) | "automatically inheriting at the time of a search" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance" |

Google and Microsoft disagree among themselves regarding these terms, with Microsoft asserting that no construction is possible.  Microsoft's argument should be rejected because both GeoTag and Google have proposed (albeit differing) constructions of these

terms and Magistrate Judge Everingham construed the terms in the *Idearc* litigation.  (*See* Ex. F at 21-23 (App. 135-37).)

With respect to "inheriting" versus "copying or inheriting" argument, Magistrate Judge Everingham's construction is consistent with the specification (Ex. A at 19:29-39; 19:46-63; 22:32-38 (App. 33-34).) and simply makes plain to the jury that, in this context of computer database searching, the term "inheriting" also includes "copying."  *See Sulzer Textil AG v. Picanol NV*, 358 F.3d 1356, 1366 (Fed. Cir. 2004).   Accordingly, Google's overly restrictive proposed construction should be rejected.  For the reasons set forth at §V(B)(i)(a), GeoTag's construction should be adopted.

### (b)    Terms # 11, 12, 13, 14, 15

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#11**: (collectively)  "dynamically replicating"  "dynamically replicated"  (Claims 1, 20, 31) | "automatically inheriting at the time of a search" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance" |
| **#12**: (collectively)  "replicated"  "replicating"  (Claims 1, 20, 31) | No need to separately construe; see constructions for term #11: "dynamically replicating" / "dynamically replicated" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "copied or inherited" and "copying or inheriting" |
| **#13**: "dynamically replicating an entry from broader geographical area into said geographical search area"  (Claim 31) | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance, at least a piece of data contained in a database that is associated with a broader geographical |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| | | | area into an area from which topical information can be accessed that is a subset of that broader geographical area" |
| **#14**: "wherein within said hierarchy of geographic areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area"<br><br>(Claim 1)<br><br>**#15**: "wherein at least one of said entries in said geographical area of relatively larger expanse is dynamically replicated into at least one of said geographical areas of smaller expanse"<br><br>(Claim 20) | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | | "wherein within the hierarchy of geographical areas, at the time needed rather than at a time decided or established in advance, at least a piece of data in a database associated with a broader geographical area is automatically copied or inherited into at least one narrower geographical area" |

Google and Microsoft disagree on the construction of these terms, with Microsoft asserting that the terms are incapable of being construed. Once again, GeoTag and Google have offered proposed constructions and Magistrate Judge Everingham made a construction. Thus, these terms are not indefinite as Microsoft asserts. Accordingly, Microsoft's argument that construction is not possible should be rejected. *See Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1365-66 (Fed. Cir. 2011), *cert. denied*, 132 S. Ct. 1541 (2012); *Exxon Research & Eng. Co. v. United States*, 265 F.3d 1371, 1375-76 (Fed. Cir. 2001). Moreover,

having argued that these terms are not capable of being construed, Microsoft's criticism of Magistrate Judge Everingham's construction should also be rejected.

In any event, Microsoft's argument regarding inheriting and copying is simply wrong. As set forth above, the terms copied and copying will assist the jury in understanding what the terms "inherited" and "inheriting" mean in the context of this technology.   Such construction is fully consistent with Federal Circuit law. *See Sulzer Textil*, 358 F.3d at 1366; *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 723 (Fed. Cir. 1984).[36]

Finally, on this issue, Microsoft argues that the proposed claim construction will not clarify claim scope.  (§V(B)(ii)(c)(2).)  Microsoft questions how a jury will know if an accused search engine automatically inherits or copies a piece of data associated with a broader geographical area into a narrower geographical area at the time of a search.  (*Id.*) The answer, as in other patent cases, is that the witnesses and other evidence will describe how the accused devices work.  There is nothing exceptionally difficult about this case as compared with other infringement cases involving computer-related technology.  Microsoft threatens that, if the Court were to accept GeoTag's construction, it will "risk the parties improperly arguing issues of claim construction to the jury." (*Id.*)  But that argument can be made by any party that does not obtain the claim construction it seeks.  Thus, Microsoft's threat of arguing claim construction issues to the jury should be rejected.  The Court should construe these terms.

### (iv)   Plaintiffs' Sur-Reply Positions

#### (a)   *Google: Term #11*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
|  |  |  |  |

---

[36]   Google's position is that term #12 should be construed as part of term #11: "dynamically replicated" and "dynamically replicating." (§V(B)(ii)(b).)  GeoTag has addressed those terms *supra*.  Those arguments are incorporated herein.

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#11**: (collectively)<br><br>"dynamically replicating"<br><br>"dynamically replicated"<br><br>(Claims 1, 20, 31) | "automatically inheriting at the time of a search" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance" |

GeoTag again does not address any of Google's arguments.  (§V(B)(iii)(a).)  Instead, it argues that the *Idearc* construction of "copying or inheriting" is correct because Magistrate Judge Everingham adopted it.  In *Idearc*, however, the concept of "copying" was not really disputed as Geomas proposed "duplicated," among other verbs, and Idearc wanted "copying." (Ex. F at 23 (App. 173).)  Rejecting Geomas' argument that "replicate" should be broader than "copying," the Judge noted that "[t]here is no replication or copying of any information from a broader area into a narrower area at the time it is needed to respond to a search inquiry" in the specification.  (*Id.* at 23 (App. 173).)  Magistrate Judge Everingham was correct—none of GeoTag's citations refers to "copying."  Rather, they all use "automatically inheriting."[37]

GeoTag never explains why "copying" should be imported into the claim when it appears nowhere in the intrinsic evidence.  It is improper to construe a term broader than the intrinsic record supports.  *E.g.*, *Kinetic*, 554 F.3d at 1019; *Nystrom*, 424 F.3d at 1145-46; *Phillips*, 415 F.3d at 1303.  GeoTag's repeated attempts to do so should be rejected.

### (b)  Google: Term #12

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| | | | |

---

[37]   The claims require that a search engine perform the dynamic replication.  The specification does not enable a search engine for performing the claimed dynamic replication.

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#12**: (collectively)<br><br>"replicated"<br><br>"replicating"<br><br>(Claims 1, 20, 31) | No need to separately construe; see constructions for term #11: "dynamically replicating" / "dynamically replicated" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "copied or inherited" and "copying or inheriting" |

GeoTag incorporates its arguments for "dynamically replicating" without addressing any of Google's arguments.   As previously stated, these sub-terms do not need to be construed.

### (c)     *Microsoft: Terms # 11, 12, 13, 14, 15*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#11**: (collectively)<br><br>"dynamically replicating"<br><br>"dynamically replicated"<br><br>(Claims 1, 20, 31) | "automatically inheriting at the time of a search" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance" |
| **#12**: (collectively)<br><br>"replicated"<br><br>"replicating"<br><br>(Claims 1, 20, 31) | No need to separately construe; see constructions for term #11: "dynamically replicating" / "dynamically replicated" | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | "copied or inherited" and "copying or inheriting" |
| **#13**:  "dynamically replicating an entry from broader geographical area into said geographical search area"<br><br>(Claim 31) | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance, at least a piece of data contained in a database that is associated with a broader geographical area into an area from |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| | | | which topical information can be accessed that is a subset of that broader geographical area" |
| **#14**: "wherein within said hierarchy of geographic areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area"<br><br>(Claim 1)<br><br>**#15**: "wherein at least one of said entries in said geographical area of relatively larger expanse is dynamically replicated into at least one of said geographical areas of smaller expanse"<br><br>(Claim 20) | Incapable of being construed because term or phrase is part of a claim limitation which is indefinite and/or lacks written description. | | "wherein within the hierarchy of geographical areas, at the time needed rather than at a time decided or established in advance, at least a piece of data in a database associated with a broader geographical area is automatically copied or inherited into at least one narrower geographical area" |

GeoTag misconstrues Microsoft's position.  Microsoft's argument is that because (1) GeoTag's proposed construction is not supported by the patent's written description, and (2) there are no other proposed constructions that are supported by the patent's written description, the dynamically-replicated limitation renders the claims invalid under 35 U.S.C. § 112.  That a former Texas Magistrate Judge settled on a construction is beside the point.  The fact is the *Idearc* construction cannot be squared with the specification, and because GeoTag has offered no other construction, the Court should find the claim term indefinite.

The Federal Circuit's decision in *Wang Labs., Inc. v. America Online, Inc.*, 197 F.3d 1377 (Fed. Cir. 1999) illustrates Microsoft's point.   In *Wang*, the plaintiff proposed a construction for the term "frame" as including both bit-mapped and character-based systems. But the specification only described character-based systems.   The Federal Circuit rejected the plaintiff's proposed construction because the patent's written description did not support bit-mapped systems.   The Federal Circuit cautioned, "claims are not properly construed to have a meaning or scope that would lead to their invalidity for failure to satisfy the requirements of patentability."   *Id.* at 1383.   In *Wang*—as here—the patent did not have written-description support for bit-mapped systems, and if the claim were construed to cover those systems, they would not have satisfied the requirements of patentability.   *Id.*   Because the written-description requirement "was not met as to protocols other than character-based," the construction including bit-mapped protocols was necessarily wrong.   *Id.*

So too here.   The specification does not support the *Idearc* construction, and it is, therefore, wrong in exactly the same way that the *Wang* plaintiff's construction was wrong. Indeed, the only difference between *Wang* and this case is that in *Wang* there was a supported alternative construction for the claim term.   That is not the case here, as there is no support for a construction of the dynamic-replication limitation; not a *single citation* offered by GeoTag or in Magistrate Judge Everingham's order squares with the undeniable fact that the *search engine* must dynamically replicate.   As such, the claims fail to meet the requirements of 35 U.S.C. § 112.

## C.     The "Topics" Phrases

The "topics" phrases include 2 similar or related terms.   Generally, GeoTag believes that "topics" should be given its plain and ordinary meaning, and that term #17 should be construed the same as terms # 1, 4, and 5 of the "hierarchy" phrases in §V(A).   (*See* §V(C)(i)(a), below.)   Microsoft and Google believe that the proper construction for "topics"

(term #16) is a "grouping of goods or services."  Microsoft and Google disagree slightly on

the construction of "wherein said topics are hierarchically organized" (term #17).  Consistent

with their positions on the construction of the "hierarchy" phrases in §V(A), above, Microsoft

advances the parent-child relationship, while Google prefers "encompassed by."  (*See*

§V(C)(ii)(b), below.)

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#16**: "topics"<br><br>(Claims 1, 15, 16, 18, 20, 31, 34, 35, 36, 37) | "grouping of goods or services"[38] | | No need to construe. Plain and ordinary meaning. |
| **#17**: "wherein said topics are hierarchically organized"<br><br>(Claims 16, 35) | "related goods or services, ordered such that broader general goods or services encompass narrower specific ones" | "interrelated goods or services such that there are parent goods and services and child goods and services" | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones"<br><br>(same as # 1, 5, 6) |

**(i)       GeoTag's Opening Positions**

**(a)       Term #16**

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#16**: "topics"<br><br>(Claims 1, 15, 16, 18, 20, 31, 34, 35, 36, 37) | "grouping of goods or services" | | No need to construe. Plain and ordinary meaning. |

The term "topic" has a well-understood plain and ordinary meaning.  Such a

definition comports completely with the specification wherein, for example, it provides that:

---

[38]   While Plaintiffs do not believe this term should be afforded a "plain and ordinary
meaning" for the reasons discussed below, Plaintiffs have revised their proposed
construction for "topics" so that it is consistent with GeoTag's description of "topics" in
its Opening Brief.

"…the topic list presented to the user includes a list of topics such as business services, entertainment, news, consumer goods, historic sites, etc."[39]

Consequently, the term "topics" should be accorded its plain and ordinary meaning.

### (b)   Term #17

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#17**: "wherein said topics are hierarchically organized"<br><br>(Claims 16, 35) | "related goods or services, ordered such that broader general goods or services encompass narrower specific ones" | "interrelated goods or services such that there are parent goods and services and child goods and services" | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones"<br><br>(same as # 1, 5, 6) |

Magistrate Judge Everingham construed term #17 separately, but consistently, with his construction of the terms # 1, 5, and 6.  (*See* §V(A)(i)(a).)  GeoTag submits that this Court should adopt the same construction for the reasons set forth therein and above.

### (ii)   Plaintiffs' Opening Positions

### (a)   Term #16

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#16**: "topics"<br><br>(Claims 1, 15, 16, 18, 20, 31, 34, 35, 36, 37) | "grouping of goods or services" | | No need to construe. Plain and ordinary meaning. |

### (1)   The Intrinsic Record Supports Plaintiffs' Proposed Construction

Plaintiffs' proposed construction of "topics"—"grouping of goods or services"—is consistent with the plain language of the claim.  "Topics" appears in each independent claim.  Claim 1 is representative, requiring "a database of information organized into a hierarchy of

---

[39]   (Ex. A at 9:28-30 (App. 28).)

geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics." (Ex. A at Claim 1 (App. 42).) Because the entries in the "database of information" are "organized into topics," the "topics" in the claims are an "organization," or "grouping," of information.

As described in the specification, topics are groupings of goods and services. Figure 10 depicts a "list of topics within a selected geographical region." (*Id.* at 5:6–9 (App. 26).) As Figure 10 shows, each "topic" is a grouping of related goods and services (*e.g.*, "Amusement Parks" or "City Government") associated with a geographic area (*e.g.*, "Los Angeles"):



(Ex. A at Figure 10 (App. 13).)  The specification further teaches "the user is presented with the option of accessing topically organized information from among several topic selections." (*Id.* at 5:47–50; *see also* 5:51–65 (App. 26).)  Thus the "topic selections" or "topics" are organized into a "grouping of goods and services."

(2)    *GeoTag's Argument for Plain and Ordinary Meaning is Misplaced*

GeoTag's proposal to give the term "topics" its plain and ordinary meaning fails to account for the meaning given to the term by the specification.  GeoTag cites no evidence that "topics" has a plain and ordinary meaning to one of ordinary skill in the art or what that meaning would be.  (§V(C)(i)(a).)  As discussed above, the inventors used the term "topic" in a specific way in the claim and specification.  *See Phillips*, 415 F.3d at 1316 ("the specification may reveal a special definition given to a claim term by the patentee that differs

63

from the meaning it would otherwise possess.  In such cases, the inventor's lexicography governs.").

Without guidance, a lay juror would not understand the meaning the intrinsic record ascribes to "topics."  For example, Webster's Dictionary defines "topic" as: "the subject of conversation or discussion: *to provide a topic for discussion.*"  (Ex. J [Webster's New Universal Unabridged Dictionary at 1997 (1996)] (App. 459).)  Such a broad definition fails to reflect the inventors' intent.  The Federal Circuit has repeatedly emphasized that constructions grounded in the intrinsic record are correct even when narrower than a "plain meaning" approach.[40]

### (b)    Term #17

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#17**: "wherein said topics are hierarchically organized" (Claims 16, 35) | "related goods or services, ordered such that broader general goods or services encompass narrower specific ones" | "interrelated goods or services such that there are parent goods and services and child goods and services" | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones" (same as # 1, 5, 6) |

As discussed above in §§V(A)(ii)(a)-(b) regarding the "hierarchy of geographical areas" and "a database of information organized into a hierarchy of geographical areas . . . " limitations, the inventors specially defined the hierarchy concept to require that a broader, parent geographical area encompass at least one narrower, child area.  Microsoft and Google offer alternative constructions for this requirement.   Nonetheless, they agree GeoTag's construction is flawed because it effectively eliminates the "hierarchy of geographical areas" from the claims.

---

[40]   *See, e.g.*, *Marctec*, 664 F.3d at 917-18; *Felix*, 562 F.3d at 1177-79; *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1339-40 (Fed. Cir. 2006); *Old Town Canoe Co. v. Confluence Holding Corp.*, 448 F.3d 1309, 1315-17 (Fed. Cir. 2006).

The intrinsic record describes the hierarchical nature of the databases for both geography and topics as having the same requirement: "As used herein, a 'parent' entry is an entry (e.g., geographic *or topical*) which encompasses one or more children entries within the geographic or topical hierarchy, and a 'child' entry is an entry which is encompassed by a parent entry within the geographical or *topical hierarchy*." (Ex. A at 12:27-32 (emphasis added.) (App. 29))

Microsoft and Google therefore incorporate their arguments above in §§V(A)(ii)(a)-(b) regarding the "hierarchically" part of this phrase and §V(C)(ii)(a) regarding "topic."

### (iii)    GeoTag's Reply Positions

#### *(a)    Term #16*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#16**: "topics" <br><br> (Claims 1, 15, 16, 18, 20, 31, 34, 35, 36, 37) | "grouping of goods or services" | | No need to construe. Plain and ordinary meaning. |

Once again, plaintiffs are attempting to violate one of the "cardinal sins" of patent law – reading limitations from the specification into the claims. *See Phillips v. AWH*, 415 F.3d at 1320. First, plaintiffs urge the Court to read in the limitation "grouping,' as in "grouping" of topics. (§V(C)(ii)(a).) This is impermissible because the limitation of grouping of topics is not found in any of the claims of the '474 patent. *Phillips v. AWH*, 415 F.3d at 1320. Plaintiffs argue that the specification supports their proposed construction because Figure 10 of the patent shows that "each 'topic' [disclosed in Figure 10] is a grouping of related goods and services (*e.g.*, 'Amusement Parks' or 'City Government') associated with a geographic area (*e.g.*, 'Los Angeles')." (§V(C)(ii)(a).)  GeoTag disputes that a listing such as "City Government" is a listing of goods and services.  That topic may simply provide the telephone number for contacting City Hall.  In any event, Figure 10 also lists "Calendar." (Ex. A at Fig.

10 (App. 13).)  A "Calendar" is not a "grouping of goods and services."  Figure 12 of the

'474 Patent also contradicts plaintiffs' proposed construction.  Figure 12 lists the seven

continents, such as "Africa." "Asia" and "North America."  (*Id.* at Fig. 12 (App. 15).)  None

of these are a "grouping of goods or services."  Thus, plaintiffs' proposed construction should

also be rejected as being contrary to the intrinsic evidence.

### (b)    Term #17

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#17**:  "wherein said topics are hierarchically organized"  (Claims 16, 35) | "related goods or services, ordered such that broader general goods or services encompass narrower specific ones" | "interrelated goods or services such that there are parent goods and services and child goods and services" | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones"  (same as # 1, 5, 6) |

Google and Microsoft disagree among themselves regarding the construction of this

term.   (§V(C) chart.)    As  with  their  other  claim  construction  disagreements,  such

disagreements alone warrant adopting GeoTag's proposals, particularly those that are in line

with Magistrate Judge Everingham's constructions.  Plaintiffs state that they disagree with

GeoTag's proposal because it "effectively eliminates the 'hierarchy of geographical areas'

from the claims [16 and 35]."  (§V(C)(ii)(b).)  Plaintiffs' argument is incorrect.  Claim 16

depends from claim 1 which recites "a database of information organized into a hierarchy of

geographical  areas  wherein  entries  corresponding  to  each  one  of  said  hierarchy  of

geographical areas is further organized into topics."  (Ex. A, 38:44-47 (App. 42).)  Similarly,

claim 35 depends from claim 31 which recites "organizing said entries corresponding to said

plurality of geographical areas into one or more topics" and "dynamically replicating an entry

from broader geographical area into said geographical search area."  (*Id.* at 40:48-49, 53-54

(App. 43).)   Thus, contrary to plaintiffs' argument, GeoTag's proposal does not vitiate a hierarchy of geographical areas when the entire claim is considered.

Plaintiffs otherwise incorporate their arguments in §§V(A)(ii)(a)-(b), regarding "hierarchically" and §V(C)(ii)(a) regarding "topic."   As a result, GeoTag likewise incorporates §§V(A)(i)(a)-(b) and V(C)(i)(a), respectively, *supra*.

### (iv)   Plaintiffs' Sur-Reply Positions

### (a)   *Plaintiffs: Term #16*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#16**: "topics"<br><br>(Claims 1, 15, 16, 18, 20, 31, 34, 35, 36, 37) | "grouping of goods or services" | | No need to construe. Plain and ordinary meaning. |

GeoTag argues Plaintiffs "violate one of the 'cardinal sins' of patent-law reading limitations from the specification into the claims."   But, as explained in §V(C)(ii)(a), the term "topics" has no special meaning in the art and its dictionary definition would convey an inaccurate meaning to a lay juror.   The specification gives a special meaning to "topics," which Plaintiffs' construction captures.   The Court must construe "topics" consistent with the intrinsic record.   *E.g.*, *Kinetic*, 554 F.3d at 1019; *Nystrom*, 424 F.3d at 1145-46.

GeoTag's critique of Plaintiffs' construction fails to withstand scrutiny.   GeoTag's arguments that "City Government" is not a service proves the point.   Under any definition, "City government" listed in Figure 10 is a *service*.   GeoTag's notion that it "may simply provide the telephone number for contacting City Hall" is speculative, as the specification is silent, and irrelevant, as it would still be organized by the service "City government." Similarly, "Calendar," as listed in Figure 10, could be a "grouping of goods or services" available by month, week, or day.   More importantly, the specification describes these very topics in Figure 10 as "goods and services": ". . . the user is able to geographically pinpoint

the location *of the desired goods or services* in which the user is interested.  For example, FIG. 10 depicts an exemplary screen display which would be presented to the user when the local content topic reference is accessed."  (Ex. A at 9:13-19 (App. 28).)  Finally, GeoTag's argument that the "continents" shown in Figure 12 are not "goods and services" misconstrues Figure 12.  Figure 12 does not purport to depict "topics," but rather the *geographical* database.  (*Id*. at 5:13-15 (App. 26).)

### *(b)      Plaintiffs: Term #17*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#17**: "wherein said topics are hierarchically organized" (Claims 16, 35) | "related goods or services, ordered such that broader general goods or services encompass narrower specific ones" | "interrelated goods or services such that there are parent goods and services and child goods and services" | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones" (same as # 1, 5, 6) |

GeoTag's false logic regarding Plaintiffs' disagreements on the specific definition for this term, and the other hierarchy terms, fails to salvage its proposed construction.  Because Plaintiffs' agree that GeoTag's proposal is inconsistent with the specification but offer alternative definitions does not mean the Court should adopt GeoTag's construction by default.

Contrary to GeoTag's claims, Plaintiffs do not argue that GeoTag's construction eliminates the term "hierarchy of *geographical areas*" from the claim.  Rather, because the specification describes a hierarchy of topics and hierarchy of geographical areas as having the same "parent-child" (Microsoft preferred) or "encompassing" (Google preferred) structure, the "hierarchy" terms related to "geographical areas" and "topics" should be construed consistently.

### D.    The "Entries" Phrases

The "entries" phrases include the term "entry" or "entries" along with four longer phrases which include the term "entry" or "entries."  Generally, GeoTag believes that "entry" or "entries" should be construed as "data contained in a database," and that the longer phrases should be construed to include that the entries are organized "to [further] permit selected data to be retrieved into one or more topics."  (*See* §V(D)(i)(a)-(b), below.)  Microsoft and Google believe that the proper construction for "entry" / "entries" (term #18) is "a record in the database," and that the four longer terms need no separate construction because they can be understood by reference to term #2 (Microsoft) or terms # 18, 1, and 16: "entries," "hierarchy of geographical areas," and "topics" (Google).  (*See* §V(D)(ii)(a)-(b), below.)

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#18**: (collectively)  "entry"  "entries"  (Claims 1, 17, 18, 20, 24, 31, 36) | "a record in the database" | | "data contained in a database" |
| **#19**: "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics"  (Claim 1)  **#20**: "entries corresponding to each of said hierarchy of geographical is further organized into topics"  (Claim 1) | No need to separately construe; see constructions for terms # 18, 1, and 16: "entries," "hierarchy of geographical areas," and "topics" | No separate construction necessary.  See construction for term #2: "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics." | "data in the database associated with a geographic area in the hierarchy of geographical areas is further organized to permit selected data to be retrieved into topics" |

69

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#21**: "entries corresponding to each of said geographical areas is further organized into topics"<br><br>(Claim 26) | | | |
| **#22**: "organizing said entries corresponding to said plurality of geographical areas into one or more topics"<br><br>(Claim 31) | No need to separately construe; see constructions for terms # 18, 1, and 16: "entries," "hierarchy of geographical areas," and "topics" | No separate construction necessary.  See construction for term #2: "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics." | "organizing data contained in the database corresponding to one or more geographical areas to further permit selected data to be retrieved into one or more topics" |

(i)     **GeoTag's Opening Positions**

(a)     *Term #18*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#18**:  (collectively)<br><br>"entry"<br><br>"entries"<br><br>(Claims 1, 17, 18, 20, 24, 31, 36) | "a record in the database" | | "data contained in a database" |

Both the claims and the specification support GeoTag's proposed construction.  Each

of the three independent claims (as well as independent claim 26, although not asserted in this

matter) describes organizing entries corresponding to geographical areas into topics.[41]  And each independent claim has dependent claims that further limit "entries" to "data records."[42] The claim language, thus, is clear and unambiguous.  An "entry" may be a data record; but it is not limited to a (data) record only.[43]

This is consistent with the specification, throughout which the words "entry" and "entries" are used to broadly to encompass both an individual item or piece of data (*e.g.,* a city name), as well as to refer to compilations of data (*e.g.,* a yellow page listing, final destination, or data records), and to entries as a complete set of data about specific businesses or institutions.[44]  These multiple usages are consistent with the term's usage in the claims– broadly in the independent claims and more narrowly in the dependent claims–and support GeoTag's construction because it is the only construction that encompasses the full scope of the specification's meanings.[45]

Once again, GeoTag's proposed construction of "entry"/"entries" herein was adopted by Judge Everingham in *Idearc.*[46]  Accordingly, GeoTag believes that any interpretation to the contrary should be rejected here as well.

---

[41]  (Ex. A at 38:45-47; 39:49-51; 40:18-20, 48-49 (App. 42-43).)

[42]  (*See* Ex. A at 39:34-35; 40:5-6, 28-29, 66-67 (App. 43), claim 18 ("wherein said entries comprises a plurality of data records") and claims 24, 27 and 36 ("wherein entries comprise data records").)

[43]  *Acumed,* 483 F.3d at 806; *Phillips,* 415 F.3d at 1315; *Liebel-Flarsheim,* 358 F.3d at, 910.

[44]  (*See, e.g.,* Ex. A at 12:3-5, 22:39-23:3 (App. 29; 34-35) (describing each of the geographic links of Figure 15 as an entry—"the entry 'Points of Interest for Los Angeles," the entry 'Southern California,' ... the entry 'California,'…"); 18:62-63; Table 7 (App. 32; 39-41) (referring to sample "entries" for the geography database); 24:30-31, Table 9 (App. 35; 42) (depicting sample "entries" in the yellow page database as including business name, address, phone number, etc.).)

[45]  *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1308 (Fed. Cir. 2003) ("varied use of a disputed term in written description attests to the breadth of a term rather than providing a limiting definition").

[46]  (Ex. F at 15-17 (App. 129-131).)

*(b)*        ***Terms # 19, 20, 21, 22***

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#19**: "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics"<br><br>(Claim 1)<br><br>**#20**: "entries corresponding to each of said hierarchy of geographical is further organized into topics"<br><br>(Claim 1)<br><br>**#21**: "entries corresponding to each of said geographical areas is further organized into topics"<br><br>(Claim 26) | No need to separately construe; see constructions for terms # 18, 1, and 16: "entries," "hierarchy of geographical areas," and "topics" | No separate construction necessary.  See construction for term #2: "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics." | "data in the database associated with a geographic area in the hierarchy of geographical areas is further organized to permit selected data to be retrieved into topics" |
| **#22**: "organizing said entries corresponding to said plurality of geographical areas into one or more topics"<br><br>(Claim 31) | No need to separately construe; see constructions for terms # 18, 1, and 16: "entries," "hierarchy of geographical areas," and "topics" | No separate construction necessary.  See construction for term #2: "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics." | "organizing data contained in the database corresponding to one or more geographical areas to further permit selected data to be retrieved into one or more topics" |

These four phrases were construed in *Idearc*.  (See Ex. F at 15-16 (App. 129-130.)

Magistrate Judge Everingham adopted GeoTag's proposed constructions therein.  (*Id.*)  As

indicated above, GeoTag proposes that the same constructions be adopted in this case in

order to avoid inconsistent claim construction.  Moreover, such constructions are consistent

with the specification.  (*See, e.g.* Ex. A at 2:45-52 (App. 24).)

**(ii)    Plaintiffs' Opening Positions**

*(a)      Term # 18*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#18**:  (collectively)  "entry"  "entries"  (Claims 1, 17, 18, 20, 24, 31, 36) | "a record in the database" | | "data contained in a database" |

Plaintiffs propose that the terms "entry" and "entries" be construed as "a record in the

database," whereas GeoTag wants the broader, vague concept of "data."  The intrinsic record,

however, support Plaintiffs' construction.

*(1)      The Intrinsic Record Supports Plaintiffs' Proposed
Construction*

As the specification makes clear, records contain one or more fields: "As is well

known in the art, *records* stored within a database format typically include one or more *fields*,

wherein each *field* is given a name so that the *field* is independently accessible."  (Ex. A at

27:3–9 (emphasis added) (App. 37).)  According to the patent, then, a database is not just

data.  Rather, it is a way of organizing data that includes records with independently

accessible fields.

Throughout the specification, the inventors conformed to this well-known convention,

describing fields within various database entries:

73

- The title *field* 1620 includes a text which is shown to the user as the descriptor for this particular entry.  (*Id.* at 23:40–41 (emphasis added) (App. 35).)

- Sample *entries* to the yellow pages database 245 are included as Table 9.  An expiration *date field* 1700 includes the date or dates that this listing expires, while a *name field* 1705 includes, in text form, the name to be shown on the listing.  *Address and city fields* 1710, 1715, respectively show the street address to be shown on the listing and the city name.  In addition, a *state field* 1720 as well as a zip code field 1725, respectively, include the state name and the postal or zip code of the listing.  (*Id.* at 24:30–39 (emphasis added) (App. 35).)

- The parameters href, text, and image designate *field names* within the yellow page database *entry*.  (*Id.* at 26:24–25 (emphasis added) (App. 36).)

The specification also interchangeably uses the terms "entry" and "record" to describe the broader organizational structure that includes these fields.   Put differently, the specification uses "entry" and "record" to mean the same thing, each of which include fields.

For instance, the specification refers to Table 7 to illustrate the geography database, the key component in the purported invention.  Describing the database, the specification states, "[s]ample *entries* for the geography database 210 are included in Table 7."  (Ex. A at 18:62–63 (emphasis added) (App. 32).)  Yet Table 7, which shows the actual database, does not use "entries"; it uses "records"—"Continent *Record*," "Country *Record*," "Regional *Record*," and "City *Record*."  (*Id.* at 31–36 (App. 39-41).)  Thus, while the specification loosely uses "entries" in the narrative, it uses "record" when illustrating an actual database.

The applicants' use of "entry" and "record" interchangeably is also illustrated by the specification's discussion of the "SPT Record" representing the state of California shown in Table 7.  The specification describes this record as the California "entry."  (*Id.* at 19:52-63 (App. 33).)  Further, the specification references various fields within the California *entry* which are the same fields shown within the California record in Table 7: "a title *field* 1310 which stores text data that is shown to the user as the descriptor for this particular entry"; " . . . the names of the parent geographic areas to the state of California . . . will be taken from

the label *field* 1315 and displayed in the HTML document." (*Id.* at 19:40–42; 19:52–57 [emphasis added] (App. 33).)[47]

The specification also uses "record" instead of "entry" to describe search methodology. Describing a search command executed by the notes search engine, the specification explains that a search parameter uniquely identifies the records for which it is searching: "The second parameter is a note identifier, which defines the database storage or *record* number for that specific *record* or document in the notes portion of the database 245." (*Id.* at 17:17–27 (emphasis added) (App. 32).) The specification goes on to state that "the second parameter constitutes a unique *record* identifier containing the information to publish." (*Id.* at 17:27–29 (App. 32).)[48]

> *(2)    The Court Should Reject GeoTag's Construction*

There are two reasons the Court should reject GeoTag's proposed construction that equates "data" with "entry." First, data is far too broad, as it fails to define the subject matter of the claim and fails to capture the specification's distinction between fields on the one hand, and the records or entries which contain fields on the other. Second, GeoTag's vague definition would not help the Court or the jurors determine whether the accused products infringe.

This lack of clarity is problematic because the claims rely on the term "entry" to describe the invention's purportedly distinct feature; it is "an entry" that the search engine

---

[47]    The specification's description of Table 8 is similar, which contains "sample entries" for the local-content database. (*Id.* at 23:15-16 (App. 35).) Yet Table 8, like Table 7, uses the term "record" instead of "entries"—*i.e.*, "Category *Record*" and "SubCategory *Record*." (*Id.* at 35-38 (emphasis added) (App. 41-42).)

[48]    In yet another example of the specification's interchangeable use of "record" and "entry," the specification explains that "[a] view defines the set of *entries* from which the user wishes to conduct a given search." (*Id.* at 15:5-6 (App. 31).) Then, in describing an example query, the specification states that the view defines the set of records to be searched: "For example, if the parameter Dbview is specified as 'city,' this will cause the search engine to search those topical *records* . . . which are stored in the view named city." (*Id.* at 15:10–14 (App. 31).)

dynamically replicates.  Further, "entries" are associated with geographical areas, and are further organized into topics.  The claims also distinguish between "entry" and "entries," on the one hand, and "a plurality of entries," on the other.  For instance, in Claim 1 "entries" are dynamically replicated, while in Claim 31 an "entry" is dynamically replicated from a "plurality of entries."  If "entry" and "entries" mean "data" as GeoTag suggests, the terms "entry," "entries," and "plurality of entries" all have the same meaning despite the use of different terms in different claims.

Moreover, by construing "entry" and "entries" as "data contained in a database," GeoTag attempts to recapture claim scope that the inventors intentionally disclaimed during prosecution.  Each claim originally contemplated that the database would consist of geographically-organized information; essentially "data" as GeoTag now characterizes it.  Consistent with GeoTag's proposed construction, each original claim required a "database of information organized into a hierarchy of geographical areas where the *information* . . . ." (Ex. D [2/10/98 Office Action at 3-4] (App. 68-69).)   But the Examiner rejected these original claims, requiring the applicants to amend.

The inventors amended their claims to add a new limitation distinguishing between "information" and "entries."  The relevant, as-issued, language is: "a database of information organized into a hierarchy of geographical areas wherein *entries* . . . ."  (Ex. A at 38:45 (App. 42).)   As a result, the inventors narrowed the claims' scope from databases with "information" to databases with "entries."   The claim construction must reflect this amendment.

Yet GeoTag's claim construction fails to appreciate the difference between the original, rejected claims and the amended and issued claims.  No meaningful distinction exists between "information"—which GeoTag gave up—and "data"—which GeoTag now proposes.  Indeed, GeoTag admits that its construction would "broadly encompass both an

individual item and piece of data (*e.g.*, a city name), as well as to refer to compilations of data (*e.g.*, a yellow page listing, final destination, or data records), and to entries as a complete set of data about specific businesses or institutions."   (§V(D)(i)(a).)   GeoTag's argument highlights the clash between its proposed construction and the specification's distinction between "fields" and the "entries" (or "records") which contain fields.   This Court should reject GeoTag's attempt to recover the broad scope of the information limitation that it surrendered during construction.

*(b)      Terms # 19, 20, 21, 22*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#19**: "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics"<br><br>(Claim 1)<br><br>**#20**: "entries corresponding to each of said hierarchy of geographical is further organized into topics"<br><br>(Claim 1)<br><br>**#21**: "entries corresponding to each of said geographical areas is further organized into topics"<br><br>(Claim 26) | No need to separately construe; see constructions for terms # 18, 1, and 16: "entries," "hierarchy of geographical areas," and "topics" | No separate construction necessary.  See construction for term #2: "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics." | "data in the database associated with a geographic area in the hierarchy of geographical areas is further organized to permit selected data to be retrieved into topics" |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#22**: "organizing said entries corresponding to said plurality of geographical areas into one or more topics" (Claim 31) | No need to separately construe; see constructions for terms # 18, 1, and 16: "entries," "hierarchy of geographical areas," and "topics" | No separate construction necessary. See construction for term #2: "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics." | "organizing data contained in the database corresponding to one or more geographical areas to further permit selected data to be retrieved into one or more topics" |

These four phrases relate to the concept of organizing entries into topics do not need to be construed separately. Plaintiffs propose the Court construe related terms as described in the above chart where the inventors have given special meaning to specific terms.

GeoTag's proposed constructions are flawed. First, "data" and "entry" are not the same. For the same reasons discussed above regarding "entry" or "entries," GeoTag's construction of these phrases should be rejected.

Second, GeoTag's constructions improperly change the requirement that an entry correspond to both a geographical area and a topic. For example, the Claim 1 phrase— "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics"—states that "each" entry "*is*" "organized into topics." (Ex. A at Claim 1 (App. 42).) GeoTag's construction, however, changes this requirement so that data regarding an "entry" is merely "organized to permit selected data to be retrieved into topics."

**(iii)     GeoTag's Reply Positions**

*(a)*      *Term #18*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
| --- | --- | --- | --- |
| **#18**:  (collectively)  "entry"  "entries"  (Claims 1, 17, 18, 20, 24, 31, 36) | "a record in the database" | | "data contained in a database" |

As determined by Magistrate Judge Everingham, plaintiffs proposed construction is inconsistent with the intrinsic evidence and violates the doctrine of claim differentiation. (*See* Ex. F at 15-17 (App. 129-131).)   As noted therein, the specification uses the terms "entry" and "entries" broadly.   (*Id.* at 17 (App. 131) (citing Ex. A at 12:3-5; 22:19-23:1; 18:62-63; 24:30-31) (App. 29; 34-35; 32).)   Plaintiffs improperly ignore these portions of the specification.   Thus, plaintiffs' torturous argument regarding the term "field" should be rejected.   If anything, plaintiffs' argument supports Judge Everingham's conclusion that the term "entry" is used broadly in the '474 Patent, and is not restricted to "records."   *See Anchor Wall*, 340 F.3d at 1308 (such "varied use[s] of a disputed term in [the] written description attest[] to the breadth of a term rather than providing a limiting definition").

As also found in *Idearc*, plaintiffs' proposed construction would also clearly violate the doctrine of claim differentiation.   Each of the four independent claims (1, 20, 26 and 31) have dependent claims (18, 24, 27 and 36, respectively).   Each of these dependent claims adds a limitation that "entries" comprise "data records."   (*See* Ex. A, 39:34-35; 40:5-6, 28-29, 66-67 (App. 43).)   Thus, plaintiffs' proposed construction is precluded by the doctrine of claim differentiation.   *See Phillips*, 415 F.3d at 1314-15; *Liebel-Flarsheim*, 358 F.3d at 910 ("doctrine of claim differentiation at its strongest" where limitation sought to be read into an independent claim already appears in dependent claim).

Plaintiffs' criticism of GeoTag's, and Magistrate Judge Everingham's, construction is ill-conceived.  As set forth above, plaintiffs' attempts to narrow the meaning of "entries" to what is recited in dependent claims is legally impermissible.   Plaintiffs also assert that GeoTag's construction is vague and/or broad.   This argument should likewise be rejected. Plaintiffs want to use "record" while GeoTag proposes "data."  Plaintiffs do not explain how "data" is purportedly vague but "record" is purportedly not.  In any event, plaintiffs argument is contrary to the doctrine of claim differentiation and must be rejected for that reason too.

*(b)*     ***Terms #19, 20, 21, 22***

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#19**: "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics"<br><br>(Claim 1)<br><br>**#20**: "entries corresponding to each of said hierarchy of geographical is further organized into topics"<br><br>(Claim 1)<br><br>**#21**: "entries corresponding to each of said geographical areas is further organized into topics"<br><br>(Claim 26) | No need to separately construe; see constructions for terms # 18, 1, and 16: "entries," "hierarchy of geographical areas," and "topics" | No separate construction necessary.  See construction for term #2: "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics." | "data in the database associated with a geographic area in the hierarchy of geographical areas is further organized to permit selected data to be retrieved into topics" |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#22**: "organizing said entries corresponding to said plurality of geographical areas into one or more topics" (Claim 31) | No need to separately construe; see constructions for terms # 18, 1, and 16: "entries," "hierarchy of geographical areas," and "topics" | No separate construction necessary. See construction for term #2: "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics." | "organizing data contained in the database corresponding to one or more geographical areas to further permit selected data to be retrieved into one or more topics" |

Plaintiffs argue that the four "entries" phrases do not need to be construed separately. Plaintiffs ignore that these four phrases were construed in *Idearc*. (*See* Ex. F at 17-18 (App. 131-32).) The *Idearc* construction is consistent with the specification. (*See* Ex. A at 28:16-21; 23:16-21 (App. 37; 35).) Plaintiffs offer no legitimate reason not to take advantage of the work done in *Idearc* as requested by GeoTag. (*See* §V(D)(i)(b).) Plaintiffs' argument regarding "data" and "entry" has been responded to *supra*. Plaintiffs' final argument mischaracterizes the claims. Contrary to their argument, claim 1 does not "state[] that "each" entry '*is*' 'organized into topics." Plaintiffs are impermissibly attempting to alter the claim language to add an "each" entry limitation that does not appear in the claim. Thus, this argument should likewise be rejected.

### (iv)    Plaintiffs' Sur-Reply Positions

#### (a)    *Plaintiffs: Term #18*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#18**: (collectively) "entry" "entries" (Claims 1, 17, 18, 20, 24, 31, 36) | "a record in the database" | | "data contained in a database" |

GeoTag's argument that Plaintiffs' construction of "entry" and "entries" violates claim differentiation fails for two reasons.  First, the dependent claims (18, 24, 27, and 36) on which GeoTag relies all add additional limitations to the dependent claims.  For instance, claim 18 adds that the data records are "associated with at least one of said topics and at least one of said geographical areas."  As such, GeoTag has not, and cannot, demonstrate that the inventors intended to limit the meaning of "entries," and not the other aspects of the independent claims.  *See Sunrace*, 336 F.3d at 1303; *Wenger*, 239 F.3d at 1244.

Second, the Federal Circuit has consistently rejected reliance on claim differentiation to alter an appropriate construction.  In *O.I. Corp. v. Tekmar Co*, 115 F.3d 1576 (Fed. Cir. 1997), the plaintiff argued that the term "passage" could not exclude smooth-wall passages because some of the dependent claims included limitations restricting the meaning of "passage."  Rejecting that argument, the Federal Circuit held that the doctrine of claim differentiation "cannot alter a definition that is otherwise clear from the claim language, description, and prosecution history."  *Id.* at 1582.  The same rationale applies here.  The specification and the applicants' prosecution disclaimer compel Plaintiffs' construction of "entry" and "entries" as "a record in a database."  The doctrine of claim differentiation does not compel a different result.

*(b)*     *Plaintiffs: Terms # 19, 20, 21, 22*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#19**: "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics" (Claim 1) **#20**: "entries corresponding to each of said hierarchy of geographical is further organized into topics" (Claim 1) **#21**: "entries corresponding to each of said geographical areas is further organized into topics" (Claim 26) | No need to separately construe; see constructions for terms # 18, 1, and 16: "entries," "hierarchy of geographical areas," and "topics" | No separate construction necessary.  See construction for term #2: "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics." | "data in the database associated with a geographic area in the hierarchy of geographical areas is further organized to permit selected data to be retrieved into topics" |
| **#22**: "organizing said entries corresponding to said plurality of geographical areas into one or more topics" (Claim 31) | No need to separately construe; see constructions for terms # 18, 1, and 16: "entries," "hierarchy of geographical areas," and "topics" | No separate construction necessary.  See construction for term #2: "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics." | "organizing data contained in the database corresponding to one or more geographical areas to further permit selected data to be retrieved into one or more topics" |

GeoTag erroneously argues that "claim 1 does not 'state[] that 'each' entry 'is' 'organized into topics'" and that Plaintiffs alter the claim language "to add an 'each' entry limitation that does not appear in the claim."  (§V(D)(iii)(b).)  To the contrary, claim 1 requires "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics."  (Ex. A at claim 1 (App. 42).)  The plain claim language therefore requires (i) an entry for "each" of the geographical areas, and (ii) that each entry "is further organized into topics."

GeoTag's construction finds no support in the intrinsic record and adds unnecessary language that would confuse the jury.  It rewrites the claim to remove the "organized into topics" requirement for each entry and replaces it with the confusing phrase "organized to permit selected data to be retrieved into topics."  In other words, under GeoTag's construction, the entries are not organized into topics, but are only *capable* of being put into a topic.  This construction provides no limitation at all and impermissibly removes a fundamental limitation.

### E.    Additional Terms and Phrases

There are nine additional terms and phrases.  Generally, GeoTag proposes that these terms be given the *Idearc* constructions.  (*See* §V(E)(i)(a).)  Google and Microsoft agree between themselves that these terms need no construction since they can be easily understood by a jury.  (*See* §V(E)(ii)(a).)

### (i)    GeoTag's Opening Positions

### (a)    Term # 23

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#23**: "database"  (Claims 1, 20, 31) | No need to construe.  Plain and ordinary meaning. | | "a collection of information or data organized such that a computer program can quickly retrieve |

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| | | | selected information or data" |

The term "database" should be accorded its "plain and ordinary meaning." For example, the term is defined as follows:

- "(1) A collection of information organized in such a way that a computer program can quickly select the desired pieces of data;" and
- "(1) A collection of data with a given structure for accepting, storing, and providing, on demand, for multiple users."[49]

Moreover, the specification unmistakably and repeatedly refers to a database containing "information" or "data" interchangeably. (*See, e.g.,* Ex. A at 38:45-47; 39:49-51; 40:18-20, 48-49 (App. 42-43).) GeoTag's proposed construction should, therefore, be adopted because it aligns with both dictionary definitions and is consistent with the claim language and specification.[50] Importantly, GeoTag's construction is identical to the construction adopted by Magistrate Judge Everingham in the District Court for the Eastern District of Texas in *Idearc*.[51]

(b)    <em>Term #24</em>

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| <u>#24</u>: "on-line information"<br><br>(Claims 1, 31) | No need to construe. Plain and ordinary meaning. | | "information capable of being accessed by a computer" |

---

[49] (*See, e.g.*, Ex. K Random House Personal Computer Dictionary at 126-27 (App. 462) (2d Ed. 1996) ("(1) A collection of information organized in such a way that a computer program can quickly select the desired pieces of data") and Ex. L IBM Dictionary of Computing at 165 (App. 466) (10th Ed. 1993) ("(1) A collection of data with a given structure for accepting, storing, and providing, on demand, for multiple users.").)

[50] (*Id.*)

[51] (Ex. F at 10 (App. 124).)

This term was construed in *Idearc*.  (*See* Ex. F at 13-14 (App. 127-28).)  GeoTag's proposed construction above is the same construction and, therefore, should be adopted in order to avoid inconsistent claim construction.  Moreover, this construction is supported by the specification.  (*See* Ex. A at 1:13-23; 1:66-2:11 (App. 24).)

*(c)     Term #25*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#25**: "organizing a database of on-line information into a plurality of geographic areas" (Claim 31) | No need to construe.  Plain and ordinary meaning. | | "organizing a collection of information that is capable of being accessed by a computer into more than one geographical area" |

This phrase was construed in *Idearc*.  (*See* Ex. F at 14-15 (App. 127-28).)  For the reasons set forth therein, the same construction should be adopted in this case and will avoid inconsistent constructions.

*(d)     Term #26*

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#26**: "organizer" (Claim 1) | No need to construe.  Plain and ordinary meaning. | | "software, hardware, and/or firmware, that alone or in combination is configured to receive search requests, together with a database and a search engine in communication with the database" |

This term was construed in *Idearc*.  (*See* Ex. B at 25-26 (App. 139-140).)  Magistrate Judge Everingham noted that Claim 1 does not require that the organizer have a network browser interface or that it interact with the user.  (*Id.*)  Magistrate Judge Everingham also

noted that the construction proposed by Geomas was consistent with the specification. (*Id.* at 26 (App. 140).) GeoTag's proposed construction above is the same as the construction adopted in *Idearc*. Accordingly, for the reasons stated by Magistrate Judge Everingham, GeoTag's proposed construction should be adopted. Moreover, GeoTag's construction is also consistent with the specification. (*See* Ex. A at Fig. 1; 38:36-58 (App. 2; 42).)

### (e)   Term #27

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#27**: "search engine" (Claims 1, 15, 20, 31, 34, 37) | No need to construe. Plain and ordinary meaning. | | "software, hardware, and/or firmware that alone or in combination receives search requests and fulfills the received requests through interaction with a database" |

This term was construed in *Idearc*. (Ex. F at 18-19 (App. 132-33).) GeoTag's proposed construction above is the same as the construction adopted in *Idearc*. Accordingly, for the reasons stated by Magistrate Judge Everingham, GeoTag's proposed construction should be adopted. Moreover, GeoTag's construction is also consistent with the specification. (*See* Ex. A at 11:24-33; 14:15-17; 15:54-56; 15:60-16:16 (App. 29-31).)

### (f)   Term #28

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#28**: "virtual geographic environment" (Claim 4) | This claim is not asserted against Google. | No need to construe. Plain and ordinary meaning. | No need to construe. Plain and ordinary meaning. |

This phrase has not been construed and should be accorded its plain and ordinary meaning. The context of the specification of the '474 patent provides that:

"…in one embodiment, a similar system could be used in a virtual (e.g., an imaginary or arbitrarily constructed) geography wherein topical information about geographic areas could be assessed."[52]

Thus, the inventors only used "imaginary" and "arbitrarily constructed" environments as exemplary (via use of "e.g."), not as all encompassing.

> ### (g)    Terms # 29, 30, 31

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| **#29**: "said search engine further configured to select one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area" <br><br> (Claim 1) | No need to construe.  Plain and ordinary meaning. | | "that the software, hardware and/or firmware, alone or in combination, that receives search requests and fulfills the received requests through interaction with a database is configured to select one of the hierarchy of geographical areas prior to the selection of a topic so as to define an area from which topical information can be accessed that is a subset of the entire domain of geography" |
| **#30**: "said search engine further configured to select at least one geographical area in said hierarchy of geographical areas so as to define a geographical search area" <br><br> (Claim 20) | No need to construe.  Plain and ordinary meaning. | | "the software, hardware and/or firmware, alone or in combination, that receives search requests and fulfills the received requests through interaction with a database is configured to select one of the hierarchy of geographical areas so as to define an area |

---

[52]   (Ex. A at 28:1-4 (App. 37).)

| Claim Term/Phrase | Google's Proposed Construction | Microsoft's Proposed Construction | GeoTag's Proposed Construction |
|---|---|---|---|
| | | | from which topical information can be accessed that is a subset of the entire domain of geography" |
| **#31**: "directing a search engine executing in a computer to select one or more of said geographical areas so as to select a geographical search area" (Claim 31) | No need to construe.  Plain and ordinary meaning. | | "directing software, hardware, and/or firmware executing in a computer, alone or in combination to select one or more geographical areas so as to select an area from which topical information can be accessed that is a subset of the entire domain of geography" |

These three phrases were construed together in *Idearc*.  (*See* Ex. F at 20-21 (App. 134-35).)  As set forth therein, Magistrate Judge Everingham agreed with GeoTag's argument that "prior to" should not be read into claims 20 and 31 and that "neither of those claims require the selection of a geographic search area before a topic is selected." (*Id*. at 21 (App. 135).)  Magistrate Judge Everingham also agreed with *Idearc* therein that the prosecution history "confirms" that the order of steps is not important." (*Id*.)  Thus, for the reasons set forth in *Idearc,* GeoTag's proposed constructions above that are the same as the constructions in *Idearc* should be adopted.

(ii)     **Plaintiffs' Opening Positions**

(a)     *Terms # 23, 24, 25, 26, 27, 19, 30, 31*

GeoTag proposes to interpret a raff of simple claim terms that are clear on their face and are easily understood by one of skill in the art and lay jurors alike.  GeoTag cites no evidence that the intrinsic record deviates from the clear language. *Interactive Gift*, 256 F.3d

at 1331 ("If the claim language is clear on its face, then our consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified.").[53]

Terms such as "database," "on-line information," "organizing a database of on-line information into a plurality of geographic areas," "search engine," and "organizer"[54] would be easily understood by persons of ordinary skill in the art and lay jurors alike.  Moreover, the following longer phrases are a combination of clear claim terms and terms that should be construed as discussed above and, therefore, need no additional construction:  (1) "said search engine further configured to select one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area," (2) "said search engine configured to select at least one geographical area in said hierarchy of geographical areas so as to define a geographical search area," and (3) "directing a search engine executing in a computer to select one or more of said geographical areas so as to select a geographical search area."

GeoTag has not identified any reason these simple terms should have prolix and confusing constructions.  The best language to describe these terms, therefore, is the plain language used in the claim.  The Court should therefore decline to construe these terms and focus on the other terms discussed above that will help the jurors understand the claims.

     **(iii)**    **GeoTag's Reply Positions**

---

[53]   *See also Innovative Sonic*, 2012 U.S. Dist. LEXIS 149429, at *28-29 ("If a claim term is readily understood by a lay jury, there is no need for the court to construe the term."); *Skyhook*, 2012 U.S. Dist. LEXIS 131403, at *34, 50 (Declining to construe terms where the proposed construction "provides no additional clarity," was "not mentioned in the patent and would only complicate the term"); *Gen-Probe*, 2011 U.S. Dist. LEXIS 131820, at *51 (declining to construe terms where the terms are "common terms that need no clarification.").

[54]   As explicitly used in claim 1, the term "organizer" is comprised of a "database" and "search engine," which are simple, commonly understood terms.  Thus, it does not need construction.

(a)      *Terms #23, 24, 25, 26, 27, 28, 29, 30, 31*

Lastly, plaintiffs assert that numerous claim terms, including terms construed in *Idearc*, do not require construction.  GeoTag has addressed those issues in its opening brief and a further detailed response is not required.[55]

(iv)    **Plaintiffs' Sur-Reply Positions**

(a)      *Terms #23, 24, 25, 26, 27, 28, 29, 30, 31*

A further response is not required.

---

[55]   To the extent that plaintiffs are attempting to add new phrases, such as (1), (2) and (3) in §V(E)(ii)(a), for construction, GeoTag objects thereto.

Dated: November 6, 2012                          /s/ Sean T. O'Kelly
Dean G. Bostock                                  Sean T. O'Kelly (No. 4349)
HAYES BOSTOCK & CRONIN LLC                       Ryan M. Ernst (No. 4788)
Paul J. Hayes                                    O'KELLY ERNST & BIELLI, LLC.
James C. Hall                                    901 N. Market St., Suite 1000
300 Brickstone Square, 9th Floor                 Wilmington, DE 19801
Andover, MA  01810                               Phone: (302) 778-4000
Phone: (978) 809-3850                            sokelly@oeblegal.com
phayes@hbcllc.com                                rernst@oeblegal.com
dbostock@hbcllc.com
jhall@hbcllc.com


*Attorneys for Defendant-Counterclaim
Plaintiff GeoTag, Inc.*


Dated: November 6, 2012                          /s/ Arthur G. Connolly III
Matthew C. Bernstein *(Pro Hac Vice)*            Arthur G. Connolly III (No. 2667)
Ryan Hawkins *(Pro Hac Vice)*                    CONNOLLY GALLAGHER LLP
Patrick J. McKeever *(Pro Hac Vice)*             1000 North West Street, Suite 1400
Di Zhang *(Pro Hac Vice)*                        Wilmington, Delaware 19801
PERKINS COIE LLP                                 Telephone: (302) 888-6318
11988 El Camino Real, Suite 200                  Facsimile:  (302) 757-7299
San Diego, CA 92130-3334                         aconnolly@connollygallagher.com
Telephone: (858) 720-5700
Facsimile: (858) 720-5799
mbernstein@perkinscoie.com
rhawkins@perkinscoie.com
pmckeever@perkinscoie.com
dzhang@perkinscoie.com

Grant E. Kinsel *(Pro Hac Vice)*
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: (310) 788-9900
Facsimile: (310) 788-3399
gkinsel@perkinscoie.com


*Attorneys for Plaintiff-Counterclaim
Defendant Microsoft Corporation*

Dated: November 6, 2012
Michael J. Bettinger (*Pro Hac Vice*)
Irene Yang (*Pro Hac Vice*)
Christy V. La Pierre (*Pro Hac Vice*)
K&L GATES LLP
Four Embarcadero Ctr., Ste. 1200
San Francisco, California 94111-5994
Tel: (415) 882-8200
Fax: (415) 882-8220
michael.bettinger@klgates.com
irene.yang@klgates.com
christy.lapierre@klgates.com

Michael J. Abernathy (*Pro Hac Vice*)
Brian J. Arnold (*Pro Hac Vice*)
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Tel: (312) 372-1121
Fax: (312) 827-8000
michael.abernathy@klgates.com
brian.arnold@klgates.com

/s/ Arthur G. Connolly III
Arthur G. Connolly, III (No. 2667)
CONNOLLY GALLAGHER LLP
1000 North West Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 888-6318
Facsimile:  (302) 757-7299
aconnolly@connollygallagher.com

*Attorneys for Plaintiff-Counterclaim
Defendant Google Inc.*