IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

| | |
|---|---|
| MICROSOFT CORPORATION, and GOOGLE INC., | |
| Plaintiffs, | C.A. NO. 11-CV-175 (RGA) |
| v. | |
| GEOTAG, INC., | **REDACTED** |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF MICROSOFT'S MOTION FOR LEAVE TO
AMEND ITS ANSWER TO ASSERT THE DEFENSE OF UNCLEAN HANDS**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 2

     A.      GeoTag's Convoluted History ................................................................. 2

          1.      Cityhub to Labranza: Veenstra and Morgan Attempt to Deprive
               CityHub Shareholders of Their Interests in the Patent ....................... 3

          2.      GeoTag Texas Merger and Squeeze Out .................................................. 6

III.    LEGAL ARGUMENT ....................................................................................... 10

     A.      GeoTag's Inequitable Conduct Supports the Defense of Unclean Hands ........... 10

     B.      Good Cause Exists for Leave to Amend Microsoft's Answer............................ 12

     C.      The Public's Interest in the Integrity of the Patent System and the Court
          System Favors Granting Leave to Amend ......................................................... 15

IV.     CONCLUSION................................................................................................... 16

## TABLE OF AUTHORITIES

**Pages**

CASES

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*
  2007 WL 1552395 (S.D.N.Y. May 29, 2007) ............................................................12

*Arthur v. Maersk,*
  434 F.3d 196 (3d Cir. 2006)...........................................................................12, 13

*Bechtel v. Robinson*
  886 F.2d 644 (3d Cir. 1989)....................................................................................13

*Endo Pharms., Inc. v. Mylan Techs., Inc.,*
  2013 WL 936452 (D. Del. Mar. 11, 2013) ............................................................12

*Foman v. Davis,*
  371 U.S. 178 (1962)................................................................................................12

*General Tire & Rubber Co. v. Watson-Bowman Associates, Inc.*
  1976 WL 21044 (D. Del. Nov. 17, 1976) ..............................................................15

*GeoTag, Inc. v. Allied Provident Ins., Inc.,*
  No. 3:12-cv-02267 (N.D. Tex. 2012) ......................................................................9

*GeoTag, Inc. v. Gerova Holdings, Ltd.,*
  No. 3:12-cv-01986 (N.D. Tex. 2012) ......................................................................9

*GeoTag, Inc. v. Ins. Co. of the Ams.,*
  No. 3:12-cv-02574 (N.D. Tex. 2012) ......................................................................9

*GeoTag, Inc. v. MetaStrategy Fund, Ltd.,*
  No. 3:12-cv-02110 (N.D. Tex. 2012) ......................................................................9

*GeoTag, Inc. v. Symcapital, Ltd.,*
  No. 3:12-cv-02571 (N.D. Tex. 2012) ......................................................................9

*GeoTag, Inc. v. Taurus Global Opportunities Fund, Ltd.,*
  No. 3:12-cv-02575 (N.D. Tex. 2012) ......................................................................9

*GeoTag, Inc. v. Tritium Group, Ltd.,*
  No. 3:12-cv-02108 (N.D. Tex. 2012) ......................................................................9

*Honeywell International, Inc. v. Universal Avionics Systems Corp.*
  398 F. Supp 2d 305 (D. Del 2005)....................................................................10, 11

*Keystone Driller Co. v. Gen. Excavator Co.*,
   290 U.S. 240 (1933) ........................................................................................ 1, 2, 10

*Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*
   324 U .S. 806 (1945) ................................................................................................ 10

*Roquette Frères v. SPI Pharma, Inc.*
   2009 WL 1444835 (D. Del. May 21, 2009) ............................................................. 14

**STATUTES**

Del. Gen. Corp. Law § 251(c) ..................................................................................... 7, 8

Del. Gen. Corp. Law § 252(c) ..................................................................................... 7, 8

Del. Gen. Corp. Law § 271(a) ......................................................................................... 4

Tex. Bus. Orgs. Code § 21.364 ....................................................................................... 9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 15(a)(2) ..................................................................... 12

Rule 30(b)(6) ................................................................................................................. 14

## I.    INTRODUCTION

GeoTag's principals — John Veenstra and Elizabeth Morgan (husband and wife) — engineered a convoluted scheme designed to deprive third parties of interests in the '474 patent. The facts demonstrating this scheme are complex — as Veenstra and Morgan intended. But the evidence Microsoft has unearthed boils down to this: Throughout the life of the '474 patent, Veenstra has tried to claim the '474 patent — and its profits — as his own. With Morgan's help, he has *twice* taken the patent from hundreds of investors and shareholders. Indeed, when the patent first issued, Veenstra and Morgan personally owned less than a 5% share of the patent. Today, they claim to own 100%. This is so, even though Veenstra and Morgan invested little of their own money, while third party investors — who Veenstra and Morgan wiped out — invested millions.

These facts — that Veenstra and Morgan have inequitably deprived parties of their interests in the patent — raise two separate defenses for Microsoft against GeoTag's patent-infringement allegations. First, Veenstra and Morgan's conduct deprived GeoTag of standing to pursue this case. The current iteration of GeoTag does not own the '474 patent, and so, cannot assert it. But because standing is not an affirmative defense, Microsoft need not raise that issue now, although it will at trial. Second, Veenstra and Morgan's conduct bars GeoTag's recovery under the doctrine of unclean hands, a defense Microsoft now seeks leave to add to its answer.

The unclean hands doctrine precludes recovery when a plaintiff has engaged in unconscionable conduct related to the cause of action. As the Supreme Court held almost one-hundred years ago in *Keystone Driller Co. v. General Excavator Co.*, a court's powers "can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair

means has gained an advantage."[1] Unclean hands precludes a remedy whether legal or equitable. "[W]henever a party who . . . seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct . . . , the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy."[2]

While Microsoft may not have been the direct or intended victim of GeoTag's inequitable conduct, this conduct affects Microsoft and its ability to defend itself in this case. By inequitably manipulating the many transactions involving the '474 patent, Veenstra and Morgan obscured the true ownership and value of the '474 patent. Further, to prevent the disclosure of their scheme, GeoTag provided misleading discovery responses and withheld key documents until after the depositions of the witnesses who could explain them. So, Veenstra and Morgan's conduct has not only injured third parties, it has injured Microsoft. As such, Microsoft respectfully submits that  the Court should permit Microsoft to amend its answer to assert an unclean hands defense.

## II.   FACTUAL BACKGROUND

### A.   GeoTag's Convoluted History.

The '474 patent's history is important to understanding Microsoft's unclean hands defense. But Veenstra and Morgan have transferred ownership to the patent at least seven times, through various U.S. and international shell companies, thereby obscuring both the true ownership of the patent and the purported value of the patent. To place Microsoft's unclean-hands defense in context, Microsoft provides the summary ownership chart below. This

---

[1]   *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)
[2]   *Id.*













Several months later, GeoTag filed a number of declaratory-judgment actions against its major shareholders (besides Veenstra and Morgan) in Hunt County, Texas, seeking to invalidate the shareholdings. GeoTag served most (if not all) of these defendants through the Texas Secretary of State rather than by personal service as required by the Hague Convention (many of the shareholders are foreign entities).[34] Some defendants received actual notice of the litigation and removed their cases to the U.S. District Court for the Northern District of Texas and challenged jurisdiction (and in some cases service of process). It appears that in each removed

---

[29] Day Decl., Ex. Q, R.
[30] *See* Del. Gen. Corp. Law §§ 251(c), 252(c).
[31] Day Decl., Ex. A at 74:14-75:6, 76:24-78:2, 261:22-262:20.
[32] Day Decl., Ex. T.
[33] Day Decl., Ex. E at 182:13-186:23; Ex. U.
[34] *See, e.g.* Day Decl., Ex. W at 18-21.

case, GeoTag voluntarily dismissed the case shortly before its response to the defendants'
motions were due.[35] These events suggest that the lawsuits were engineered to obtain default
judgments against each of these shareholders, thereby allowing GeoTag to shed their investments
with the imprimatur of the court.

Despite Microsoft's discovery requests for this information, GeoTag produced no
documents relating to the various cases filed against its own shareholders, or the justification for
those lawsuits, until June 2013 when Veenstra was deposed as GeoTag's corporate
representative. At that deposition, Veenstra claimed

---

[35]    Day Decl., ¶ 29, *see also GeoTag, Inc. v. Gerova Holdings, Ltd.*, No. 3:12-cv-01986 (N.D. Tex. 2012);
*GeoTag, Inc. v. Ins. Co. of the Ams.*, No. 3:12-cv-02574 (N.D. Tex. 2012); *GeoTag, Inc. v. MetaStrategy Fund, Ltd.*,
No. 3:12-cv-02110 (N.D. Tex. 2012); *GeoTag, Inc. v. Symcapital, Ltd.*, No. 3:12-cv-02571 (N.D. Tex. 2012);
*GeoTag, Inc. v. Taurus Global Opportunities Fund, Ltd.*, No. 3:12-cv-02575 (N.D. Tex. 2012); *GeoTag, Inc. v.
Tritium Group, Ltd.*, No. 3:12-cv-02108 (N.D. Tex. 2012); *GeoTag, Inc. v. Allied Provident Ins., Inc.*, No. 3:12-cv-
02267 (N.D. Tex. 2012).
[36]    Day Decl., Ex. C at 338:24-339:21, 341:23-343:13, 344:4-14.
[37]    *See* Day Decl., ¶¶ 30-35, Ex. X., Ex. Y, Ex. Z, Ex. AA.
[38]    Day Decl., ¶ 34, Ex. Q, Ex. Z, Ex. C at 494:14-501:6.
[39]    Tex. Bus. Orgs. Code § 21.364.

███████████████████████████████████████████████

██████████████████████████

## III.   LEGAL ARGUMENT

### A.   GeoTag's Inequitable Conduct Supports the Defense of Unclean Hands.

It is well-settled that unclean hands jurisprudence is applicable to patent cases. The

Supreme Court, in *Keystone Driller Co. v. General Excavator Co.* observed that the unclean

hands doctrine is based on the maxim that "he who comes into equity must come with clean

hands."[41] Further, the Court held in *Precision Instrument Manufacturing Co. v. Automotive*

*Maintenance Machinery Co.*, "any willful act concerning the cause of action which rightfully can

be said to transgress equitable standards of conduct is sufficient cause for the invocation of the

maxim."[42]

Moreover, the doctrine applies with equal force to claims seeking equitable or legal relief.

In *Honeywell International, Inc. v. Universal Avionics Systems Corp.* the district court held that

the unclean hands doctrine "is not related to the liabilities or claims of the parties, nor fettered by

the absence of actual damages."[43] The doctrine "provides a defense to an otherwise valid legal

claim when a plaintiff has engaged in 'unconscionable' conduct that 'has immediate and

necessary relation to the equity that [the claimant] seeks in respect of the matter in litigation.'"[44]

The court in *Honeywell*, identified two elements that a defendant must plead to raise the

defense of unclean hands. First, the defendant must plead facts showing that the plaintiff engaged

---

[40]   Day Decl., Ex. Z, Ex. BB.
[41]   290 U.S. 240, 241 (1933).
[42]   324 U .S. 806, 815 (1945).
[43]   398 F. Supp. 2d 305, 310 (D. Del. 2005).
[44]   *Id.* at 311 (quoting *Keystone Driller*, 290 U.S. at 245).



Moreover, Microsoft does not need to allege that it is the direct "victim" of Veenstra and Morgan's unclean hands to raise the unclean hands defense. For instance, the District Court in the Southern District of New York in *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, found that an alleged scheme to defraud the PTO and a third party and to "conceal the evidence of that fraud while bringing this infringement action" was sufficient to raise the defense of unclean hands, even though the accused infringer was not the direct victim of the scheme.[46] This is the case here, as GeoTag has gone to great lengths to prevent discovery into its inequitable conduct. Microsoft describes these efforts in detail in the accompanying Day Declaration at ¶¶35-48.

## B.       Good Cause Exists for Leave to Amend Microsoft's Answer.

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend a pleading at any time during a case with the opposing party's written consent or with leave of court. Under Rule 15, "[t]he court should freely give leave [to amend] when justice so requires."[47] This district follows the Third Circuit's rule, which "has consistently emphasized the liberal approach to pleading embodied by Rule 15."[48] As the court held in *Endo Pharmaceuticals*, "[t]he opportunity to amend is not automatic, but should be granted absent a showing of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'"[49]

---

[46]       No. 98 Civ. 7766 (PAC), 2007 WL 1552395 (S.D.N.Y. May 29, 2007).
[47]       Fed. R. Civ. P. 15(a)(2).
[48]       *Endo Pharms., Inc. v. Mylan Techs., Inc.*, No. 11-220-GMS, 2013 WL 936452, at *2 (D. Del. Mar. 11, 2013), citing *Arthur v. Maersk*, 434 F.3d 196, 202 (3d Cir. 2006).
[49]       *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

As the Third Circuit noted in *Arthur v. Maersk*, "[d]elay alone is not sufficient to justify denial of leave to amend."[50] Rather, "prejudice to the non-moving party is the touchstone for the denial of an amendment."[51] Further, prejudice to the non-moving party must be real, substantial prejudice. The Third Circuit held in *Bechtel v. Robinson* that "the non-moving party must do more than merely claim prejudice, it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely."[52]

There has been no undue delay in filing this motion and GeoTag cannot demonstrate any actual prejudice. Indeed, any alleged delay in filing this motion arises from GeoTag's discovery intransigence. Microsoft sought discovery as early as February 2012 that would have revealed GeoTag's unclean hands.[53] But GeoTag produced many of the underlying documents *after* the targeted close of fact discovery, and *after* Microsoft had already deposed the witnesses who could explain them.[54]

GeoTag also consistently delayed and obstructed the scheduling of depositions in this case. Specifically, GeoTag unilaterally cancelled, postponed, or failed to appear for at least a dozen depositions. A chart summarizing these delays is included in the Day Declaration at ¶38.[55]

In addition, GeoTag's refusal to allow any depositions to be scheduled in the entire month of April resulted in substantial delay in identifying the facts underlying this motion. After either rejecting every proposed deposition date in March 2013 or failing to respond to Microsoft

---

[50]   *Arthur*, 434 F.3d at 204.
[51]   *Id.* (citations omitted).
[52]   886 F.2d 644, 652 (3d Cir. 1989).
[53]   Day Decl, ¶¶11-12.
[54]   Day Decl., ¶¶38, 43.
[55]   *See also* D.I. 275 at 3-4 (Google letter to court regarding discovery dispute).

or Google, GeoTag declared on April 9, 2013 that it would be unavailable for the entire month of April, and did not reengage on deposition scheduling until April 17.[56] As a result, while both plaintiffs in this case attempted on numerous occasions to schedule multiple depositions during the months of March and April, only two depositions (both of third parties) occurred between February 28 and May 14. As a result, a number of third-party depositions, as well as GeoTag's Rule 30(b)(6) deposition, were compressed into the final few days prior to and immediately after the June 1 discovery cut-off. Microsoft did not learn of many of the facts relating to the unclean hands defense until this third-party discovery in May and June.

Similarly, GeoTag cannot claim undue prejudice from Microsoft's proposed amendment. The facts surrounding Microsoft's unclean hands defense are uniquely within GeoTag and its principal's knowledge. This is a key fact, as the court held in *Roquette Frères v. SPI Pharma, Inc.* There, the court could not find any prejudice resulting from an amendment adding an unclean hands defense because the facts underlying the defense were primarily in the plaintiff's control.[57]

Also, most of the discovery underlying the unclean hands defense is complete. There are a handful of outstanding deposition subpoenas — served before the discovery cut-off — that Microsoft is attempting to schedule. In addition, Microsoft is seeking the deposition of Zurita —

████████████████████████████████████████████████████████████████

████████████████████████████████████ Microsoft has attempted to obtain Zurita's cooperation since May 28, 2013, and has been informed that Mr. Zurita would appear voluntarily for deposition in Panama. Microsoft may also seek the depositions of ███████████████████

████████████████████████████████████████████████████████████████

---

[56]   Day Decl., ¶ 38.
[57]   No. 06-540-GMS, 2009 WL 1444835, at *5 (D. Del. May 21, 2009).

███████████████████████████████[8] This outstanding unclean hands discovery will have little, if any, impact on expert reports and can be conducted in parallel with expert discovery.

### C.  The Public's Interest in the Integrity of the Patent System and the Court System Favors Granting Leave to Amend.

The Supreme Court in *Precision Instrument Mfg.* made it clear that the public interest in a functioning patent system elevates the need to protect from inequitable conduct. There, the Court held that a patent infringement action implicates "the public interest as well as the private interests of the litigants" and so the doctrine of unclean hands "assumes even wider and more significant proportions" in such cases.[59] The Court went on to state that "[a] patent by its very nature is affected with a public interest. . . . The far-reaching social and economic consequences of a patent, therefore, give the public a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope."[60] This district has similarly noted the important public-interest role the unclean hands defense plays in the context of a patent case. In *General Tire & Rubber Co. v. Watson-Bowman Associates, Inc.*, the court held, "[t]he public interest in bringing to light unclean hands in connection with a patent proceeding is such that evidence related to the issue is admissible and the issue proper for consideration by the Court even without an allegation of unclean hands in the pleadings."[61]

GeoTag has filed a number of public records relying on the share transfer from Stalton to UberDB and the subsequent unauthorized merger. For example, GeoTag's 2011 SEC statements,

---

[58]    Day Decl. Ex. C at 327:11-13, 484:5-8, 490:22-23.
[59]    324 U.S. at 815.
[60]    *Id.* at 815-16.
[61]    No. 4514, 1976 WL 21044 (D. Del. Nov. 17, 1976).

signed by Veenstra, repeat the claim that UberDB is a major shareholder of GeoTag.[62]
Additionally, GeoTag filed paperwork purporting to effect the merger with the Delaware and
Texas Secretaries of State, as well as the Patent and Trademark Office.[63] As a consequence,
GeoTag's inequitable conduct has implicated third-parties, Microsoft, and public agencies.

GeoTag's inequitable conduct also has implications for numerous other parties. GeoTag
has filed suit against over five-hundred defendants, most of them retail stores accused of
infringement based on a "store locator" function on their website. According to a recent *New
York Times* article, GeoTag is the third most prolific patent-assertion entity in the United States
in terms of the number of defendants named in patent lawsuits.[64] So, any inequitable conduct
committed by GeoTag in relation to its patent-assertion campaign impacts not just the parties to
this case, but the public interest at large.

## IV.   **CONCLUSION**

The inequitable conduct underlying GeoTag's existence is pervasive and directly relates
to Microsoft's ability to defend itself. Further, many of these underlying facts will be in evidence
at the trial of this case, as they go directly to GeoTag's standing. Also, GeoTag is aware of the
facts underlying the defense, and discovery is largely complete. Thus, GeoTag suffers no
prejudice from the Court granting Microsoft's motion for leave to add an additional affirmative
defense of unclean hands. As such, Microsoft respectfully requests that this Court grant leave to
amend Microsoft's answer to allege an affirmative defense of unclean hands.

---

[62]   Day Decl. Ex. AA.
[63]   Day Decl., Ex. BB, EE, and FF.
[64]   Day Decl., Ex. DD.

16

Dated: August 12, 2013

OF COUNSEL:

Grant E. Kinsel (Pro Hac Vice)
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: (310) 788-9900
Facsimile: (310) 788-3399
gkinsel@perkinscoie.com

Judith B. Jennison (Pro Hac Vice)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
jjennison@perkinscoie.com

Evan Day (Pro Hac Vice)
PERKINS COIE LLP
11988 El Camino Real, Suite 200
San Diego, CA 92130-3334
Telephone: (858) 720-5700
Facsimile: (858) 720-5799
eday@perkinscoie.com

*/s/ Arthur G. Connolly, III*
Arthur G. Connolly III (#2667)
CONNOLLY GALLAGHER LLP
1000 North West Street, 14th Floor
Wilmington, DE 19801
Telephone: (302)757-7300
aconnolly@connollygallagher.com

*Attorneys for Plaintiff Microsoft Corporation*

17