IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICROSOFT CORPORATION, et. al.,

    Plaintiffs,

v.

GEOTAG, INC.,

    Defendant.

Civil Action No. 11-00175-RGA

**PUBLIC VERSION**

MEMORANDUM OPINION

Richard L. Horwitz, Esq. (argued), Potter, Anderson & Corroon, Wilmington, DE; Robert A. Van Nest, Esq., Keker & Van Nest LLP, San Francisco, CA; Asim M. Bhansali, Esq. (argued), Keker & Van Nest LLP, San Francisco, CA; Matthias Kamber, Esq. (argued), Keker & Van Nest LLP, San Francisco, CA; attorneys for Plaintiff Google.

Sean T. O'Kelly, Esq., O'Kelly, Bielli & Ernst LLC, Wilmington, DE; Paul J. Hayes, Esq. (argued), Hayes, Messina, Gilman & Hayes, Boston, MA; Anthony L. Miele, Esq. (argued), Hayes, Messina, Gilman & Hayes, Boston, MA; attorneys for the Defendant.

April 10, 2014

*[signature]*
ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently before the Court for disposition are Plaintiff and Counterclaim-Defendant Google Inc.'s Motion for Partial Summary Judgment on the Basis of Laches (D.I. 369), Google Inc.'s Motion for Summary Judgment of Invalidity (D.I. 375), and Google Inc.'s Motion for Summary Judgment of Non-Infringement (D.I. 379). These matters have been fully briefed. (D.I. 370, 408, 418, 376, 411, 416, 380, 414, 419). The Court heard oral argument on the motions on February 20, 2014. (D.I. 451). For the reasons set forth herein, Google's Motions for Summary Judgment on the Basis of Laches and Invalidity are **DENIED** and Google's Motion for Summary Judgment of Non-Infringement is **GRANTED**.

## BACKGROUND

**Procedural Background**

Microsoft Corporation and Google Inc. filed this declaratory judgment action on March 1, 2011 against GeoTag, Inc. regarding Patent No. 5,930,474 ("'474 Patent"). (D.I. 1). GeoTag counterclaimed against both Plaintiffs on February 13, 2012 for infringement of the '474 Patent. (D.I. 36).

**The '474 Patent**

Claim 1 of the '474 patent is representative and reads:

A system which associates on-line information with geographic areas, said system comprising:

> a computer network wherein a plurality of computers have access to said computer network; and

> an organizer executing in said computer network, wherein said organizer is configured to receive search requests from any one of said plurality of computers, said organizer comprising:

1

a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics; and

a search engine in communication with said database, said search engine configured to search geographically and topically, said search engine further configured to select one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area wherein within said hierarchy of geographical areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area, said search engine further configure [sic] to search said topics within said selected geographical search area.[1]

**The Accused Product**

The Defendant accuses Google AdWords and Google AdWords Express ("the AdWords System"). (D.I. 414 at 6, 7). The purpose of the AdWords System is to display advertising copy along with the results of a search query. *Id.* at 7. Advertisers create ad campaigns, which are arranged as a group of ads and keywords and referred to as an "adgroup." *Id.*

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the

---

[1] Quotations from the patent reflect the language of the patent as amended by the July 27, 1999 Certificate of Correction.

2

moving party may be discharged by demonstrating that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 325.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## ANALYSIS

**Laches**

Google moves for partial summary judgment for pre-suit damages arguing that the damages are barred by laches. (D.I. 370 at 5).

*Legal Standard*

3

Laches is an equitable defense to a claim for patent infringement. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc). When a party establishes the defense of laches, the patentee's claim for pre-suit damages may be barred. *Id.* Laches requires the moving party to prove two elements: "(a) [that] the patentee's delay in bringing suit was unreasonable and inexcusable, and (b) [that] the alleged infringer suffered material prejudice attributable to the delay." *Id.* Furthermore, a presumption of laches arises when the moving party proves that the patentee "delay[ed] bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity." *Id.* "This presumption shifts to the patentee the burden of producing evidence, which if believed, would show that either the patentee's delay was reasonable or excusable under the circumstances or the defendant suffered neither economic nor evidentiary prejudice." *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998).

The clock begins to tick for laches when the patentee first knew or should have known of the infringer's activity. *A.C. Aukerman Co.*, 960 F.2d at 1028. While constructive knowledge is sufficient to start the clock for laches, the Federal Circuit has held that "the patentee must have actual or constructive knowledge of an act of infringement that gives rise to a legal claim. . . ." *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1297-98 (Fed. Cir. 2004). Furthermore, constructive knowledge exists when the alleged infringement is "pervasive, open, and notorious" such that a "reasonable patentee would suspect" the existence of infringement, triggering a duty to investigate. *Wanlass*, 148 F.3d at 1338. "For example, sales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention, or published descriptions of the defendant's potentially infringing activities, give rise to a duty to investigate whether there is infringement." *Id.* Furthermore, constructive knowledge may be

4

imputed "if these activities are sufficiently prevalent in the inventor's field of endeavor," even if the patentee has no actual knowledge of the activities. *Id.*

In the context of a motion for summary judgment, an accused infringer must prove that no genuine issue of material fact exists regarding both the unreasonableness prong and the material prejudice prong. *Id.* at 1337. Finally, if the accused infringer relies on the six-year presumption to support its motion for summary judgment, the accused infringer must demonstrate an absence of disputed material facts that the patentee delayed for more than six years. *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1464 (Fed. Cir. 1998).

*Discussion*

Google argues that, "GeoTag and its predecessors-in-interest have had actual or constructive notice of Google's allegedly infringing product since at least 2003, well over six years before February 2012, when it first asserted infringement against Google." (D.I. 370 at 13). Google maintains that GeoTag should have had at least constructive knowledge as of July 1, 2003, eight and a half years before this suit was filed. *Id.* at 13. Google cites as evidence (1) a reference to the ability to restrict ads based on geographic area in the AdWords FAQ website on July 1, 2003, (2) a third-party blog post on August 4, 2003, (3) a third-party blog post on October 24, 2003, (4) a New York Times article on February 16, 2004, (5) a third-party blog post on April 15, 2004, (6) a Google blog post on September 14, 2004, and (7) a Google blog post on November 21, 2005. Conversely, GeoTag argues that the aforementioned facts are not sufficient to put GeoTag on notice and thus do not create a presumption of laches. (D.I. 408 at 14). The Court agrees with GeoTag.

The relevant portions of the evidence that Google references read:

5

(1) Google AdWords FAQs: "At the campaign level, you choose your daily budget, geographic targeting, syndication preference, and start and end dates." (D.I. 371-1 at 35).

(2) Third-party blog post at www.searchengineguide.com: "[Google g]oing one step further and filtering search engine users according to their country or state for advertisers is nothing short of spectacular from an advertiser's point of view. However, none of the other search engines provide this facility currently, the way Google does with AdWords, and till such time that you find another search engine that does so, and assuming that geotargeting ads is absolutely essential to you, you will probably have to continue to focus on Google AdWords." *Id.* at 39.

(3) Third-party blog post at www.traffick.com: "Google has launched a beta version of regional targeting for Google AdWords advertisers.... Now, firms ... can simply bid on the generic term ... while targeting only their local area...." *Id.* at 47.

(4) New York Times article: "Google also began allowing advertisers to aim their ads at users in specific geographical areas. With that program, Google estimates the user's general location by checking the Internet Protocol address assigned to the user's computer, and then serves local ads that are related to the search terms entered." *Id.* at 50.

(5) Third-party blog post at www.searchenginejournal.com: "Google today will introduce the next chapter in Google AdWords Advertising, the ability for U.S. and international advertisers to target Web surfers by their city of origin.... Now, Google is using a mix of local targeting and AdWords to track surfers' location at the city level. AdWords advertisers in the US can focus their promotional messages to target people in a specific city." (D.I. 371-2 at 2).

(6) Google blog post: "Meet Google Local, our local search service, which we've just enhanced with some new features. We beefed up the technology that delivers more precise results." *Id.* at 13.

(7) Google blog post: Announcing that advertisers may now specify "a distance ... around [their] location target." *Id.* at 19.

Google has not shown an absence of disputed material facts that constructive notice of the infringement existed six years before the filing of the present lawsuit. First, there is no showing that GeoTag, or anyone whose knowledge can be attributed to GeoTag, had actual knowledge of any of these publications. Second, none of the publications are sufficiently detailed to establish constructive notice or to trigger GeoTag's duty to investigate, even had

6

GeoTag known of them. The publications lack even a barebones description of the method by which Google's AdWords System works, which is not surprising considering the confidential nature of Google's method. Third, the various publications do not establish that Google's activities in promoting the AdWords System were so prevalent that GeoTag can be charged with knowledge sufficient to trigger a duty to investigate. Therefore, Google has not provided sufficient evidence to show that GeoTag is subject to the six-year presumption of laches. As Google's motion relies upon this presumption, its Partial Motion for Summary Judgment based on laches is denied.

**Validity**

Google moves for summary judgment for invalidity of the '474 Patent on the grounds that it is both anticipated and obvious. (D.I. 370 at 5).

Anticipation

*Legal Standard*

A patent claim is anticipated if the accused infringer is able to show by clear and convincing evidence that "a single prior art reference discloses each and every element of a claimed invention." *Silicon Graphics, Inc. v. ATI Tech., Inc.*, 607 F.3d 784, 796 (Fed. Cir. 2010). "Anticipation is a question of fact." *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 347 F.3d 1367, 1369 (Fed. Cir. 2003).

*Discussion*

Google argues that Patent No. 5,682,525 ("Bouve") anticipates the asserted claims of the '474 Patent. (D.I. 376 at 6). Specifically, Google argues that, "Bouve discloses using an Internet-connected database to select a search area, search for certain categories of information within that area, and return results from both the search area and a broader area." *Id.* (emphasis

7

omitted). GeoTag argues that, "at a minimum, Bouve fails to teach: (i) an online system; (ii) a search engine; (iii) dynamic replication; and (iv) a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics." (D.I. 411 at 8). The Court agrees with GeoTag.

There is a genuine dispute of a material fact as to whether Bouve discloses a search engine. Independent claims 1, 20, and 31 each require a "search engine." '474 Patent, 38:36-40:56. The Court construed "search engine" to have its "plain and ordinary meaning." (D.I. 284 at 24). GeoTag argues that the Bouve specification indicates that searching is performed in a step-by-step fashion rather than with a search engine and therefore fails to disclose this element. Google conversely argues that GeoTag's expert "never offered an opinion that Bouve fails to disclose a search engine, whether in an expert report, in his supplemental declaration in support of GeoTag's opposition, or in his deposition." (D.I. 416 at 8).

The relevant portion of GeoTag's Rebuttal Expert Report of Mr. William C. Easttom II reads:

> 247. [Google's expert] has failed to show in 288 to 292 that Bouve discloses a "search engine". [Google's expert] states that items of interest can be selected by typing in a desired search area. *Bouve does not disclose a search engine because "searching" in Bouve is done manually by the user selecting and user traversing through the hierarchy of information.* Bouve 8:29-38 describes the "search" conducted by the Bouve user.
>
> 248. *As can be seen in the Bouve specification, "searching" is a step by step process performed by the user, not performed by a "search engine."* Bouve does not teach nor suggest this element.

(D.I. 413-2 at 74 (emphasis added)). It is evident from this passage that GeoTag's expert did opine on the method of searching disclosed in Bouve and found that this method does not equate

8

to the method of searching used in the '474 Patent. Therefore, there exists a genuine dispute of material fact as to whether a "search engine" is disclosed by Bouve. Thus Summary Judgment on the grounds of anticipation is denied.

### Obviousness

*Legal Standard*

> While the ultimate question of patent validity is one of law, [the issue of obviousness] lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966) (internal citations omitted).[2] Furthermore, the fact finder must additionally determine that one of skill in the art "would have been motivated" to combine or modify the prior art to create the patent. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012).

There is no preset test to determine whether a claimed invention is obvious. Instead, each case must be subjected to a highly fact intensive analysis. *In re Ochiai*, 71 F.3d 1565, 1571 (Fed. Cir. 1995). The Court must guard against "hindsight bias and ex post reasoning" when determining whether a patent is obvious. *St. Jude Med., Inc. v. Access Closure, Inc.*, 729 F.3d 1369, 1381 (Fed. Cir. 2013) (internal quotation marks omitted).

*Discussion*

Google argues that the combination of an article by K. Aberer, W. Klas, and A. L. Furtado ("Aberer") and Yahoo! plus Magellan ("Yahoo!") "renders obvious the asserted claims." (D.I. 376 at 21). Google maintains that, "Aberer discloses traversing a database hierarchy at the

---

[2] GeoTag asserts secondary considerations of non-obviousness (D.I. 411 at 13-14), but there is no need to address these arguments at this time.

9

time of search to capture records from a higher, or more general, level in the database hierarchy" and "provide[s] an express motivation to combine its teachings with a geographical and topical database, such as Yahoo! . . ." *Id.* at 21-22. Furthermore, Google argues that Yahoo! alone teaches all of the '474 elements, with the exception of "dynamic replication,"[3] which it argues is taught by Aberer. *Id.* GeoTag argues that Aberer does not teach dynamic replication in the context of a geographic hierarchy and therefore cannot do so when combined with any other reference. (D.I. 411 at 12, 13).

> Relevant portions of GeoTag's rebuttal expert report read:
>
> > 403. First, the most apparent deficiencies in Aberer is that it teaches neither a database of geographic information nor is it able to respond to searches for geographical information. It is, rather, a system solely directed to searching in object-oriented databases.
> >
> > 404. Aberer does not disclose any geographic areas, much less a hierarchy of geographical areas.
> >
> > . . . .
> >
> > 406. Aberer does not disclose any components that operate on the internet or in a computer network. [Google's expert] simply speculates that it could have operated over the internet. It is noteworthy that [Google's expert] never claims that it was indeed ever made to work over the internet. [Google's expert's] statements are mere speculation.

(D.I. 413-2 at 111). Section 3.2 of Aberer discusses the "inheritance of properties." (D.I. 397-4 at 8). The most relevant section reads:

> Informally speaking, the prevailing principle is that every property that is common to all specialized classes should be "factored out", i.e. moved up to the general class. Then the term "inheritance" means that, when a query asks about such properties when referring to specialized instances, the appropriate values will be found at the level of the general instance, and duly passed down. Ambiguities may arise with non strictly hierarchical [database], when a class may specialize

---

[3] The Court has construed "dynamically replicating" as meaning "automatically inheriting at the time of a search." (D.I. 284 at 16).

10

> more than one general class having the same property. In this case a criterion must be fixed which property value should be chosen.

*Id.* Google's expert, Dr. Worboys, opines that the aforementioned section discloses the "dynamic replication" requirement of the '474 Patent. (D.I. 377-1 at 117-21). Dr. Worboys further maintains that, "[I]t would have been obvious for a person of ordinary skill in the art to try to combine Yahoo—with its disclosure of a database that the Examiner recognized—with a database exhibiting automatic inheritance as disclosed in Aberer . . . ." *Id.* at 165.

As evidenced by the disagreement between the experts regarding the meaning of a prior art reference, whether or not one would have thought to combine Aberer with a geographic hierarchy remains in dispute and is a genuine material issue in the determination of obviousness. Therefore, the Court denies Google's Motion for Summary Judgment as it relates to obviousness.

**Infringement**

Google moves for summary judgment of noninfringement. (D.I. 380 at 4).

*Legal Standard*

"To show infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim." *Seal-Flex, Inc. v. Athletic Track & Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999). A patent claim is literally infringed when "every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1405 (Fed. Cir. 1996). "The absence of even a single limitation of [a claim] from the accused device precludes a finding of literal infringement." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998).

11

A patent claim may also be infringed under the doctrine of equivalents "if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). To apply this doctrine, the fact finder must ask, "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Id.* at 40. Further, "[t]he determination of equivalence should be applied as an objective inquiry on an element-by-element basis." *Id.*

*Discussion*

Google argues that the accused AdWords System does not directly infringe independent claims 1, 20, and 31 and dependent claims 3, 5, 9-15, 18-19, 24, 25, 32, and 36-38 of the '474 Patent ("Asserted Claims") either literally or under the doctrine of equivalents. (D.I. 380 at 5). The three independent claims claim a system, a machine, and a method, and are similar, although not exactly the same. Specifically, Google maintains that its accused product does not meet the following limitations of Claim 1:

1. "a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics," '474 Patent, 38:36;

2. "said search engine further configured to select one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area," '474 Patent, 38:49-52; and

12

  3. "a broader geographical area is dynamically replicated into at least one narrower geographical area,"[4] '474 Patent, 38:54-56.

The Court finds that the accused Google product does not infringe the "dynamic replication" requirement of the patent claims[5] and therefore will focus the remainder of this section on this limitation alone.

GeoTag argues that this limitation is met by the accused service because, "Once AdMixer has the adgroup and keyword IDs, it sends these to the Creative Server along with the location information it has processed. The Creative Server then checks this location information along with the query, to see if it should be deemed an eligible ad." (D.I. 414 at 20 (internal citation and quotation marks omitted)). GeoTag argues that the Creative Server accomplishes this "by keeping and referencing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* GeoTag argues that it is this process that meets the required "dynamic replication" requirement as set forth in the '474 Patent.

Google argues that, "The Ad Serving System does not perform dynamic replication because it conducts its search against all of the keyword IDs and adgroup IDs in the Keyword

---

[4] The Court has construed the phrase to mean "a broader geographic area is automatically inherited into at least one narrower geographic area at the time of the search." (D.I. 284 at 15).

[5] Independent claims 1, 20, and 31 each require a form of "dynamic replication." As construed by the Court, Claim 1 requires, "wherein within the hierarchy of geographic areas at least one of said records associated with a broader geographic area is automatically inherited into at least one narrower geographic area at the time of the search," Claim 20 requires, "wherein at least one of said records in said geographic area of relatively larger expanse is automatically inherited at the time of the search into at least one of said geographic areas of smaller expanse," and Claim 31 requires, "automatically inheriting, at the time of a search, a record from the broader geographic area into said geographic search area." For each of these claims the Court has construed "dynamically replicating" to mean "automatically inheriting at the time of the search." All three of these claims require dynamic replication. Therefore as the court finds that there is no "dynamic replication," a term common to all three of the independent claims, the Court's analysis applies equally to independent claims 1, 20, and 31. Furthermore, as the Court finds that the independent claims are not infringed, the dependent claims cannot, by definition, be infringed. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 n. 5 (Fed. Cir. 2008).

13

Server, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As such, no search is performed within a narrower geographical area." (D.I. 419 at 12).

While the parties disagree as to whether or not Google's Ad Serving System contains "dynamic replication," there is no genuine dispute as to how Google's Ad Serving System itself functions.

The following figure depicts the general functionality of the accused system:



(D.I. 414 at 8).

First, a user inputs a search query, which is then sent to the Google Web Search ("GWS"). *Id.* The query is then sent to the Location Extraction Server ("LES"), which determines the ▓▓▓▓▓▓▓▓ and any ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ (D.I. 380 at 9; D.I. 381-2 at 27-31). The query and user are then associated with ▓▓▓▓▓▓▓▓ which are derived from the Oyster database[6] and several other GeoTargets SS Tables.[7] (D.I. 414 at 10; D.I. 381-2 at 22-24, 119, 120; D.I. 419 at 5). The query terms, along

---

[6] Oyster "is a database of information organized into interrelated geographic areas such that there are parent geographic areas and child geographic areas." (D.I. 381-2 at 100). "Google's Oyster [database] contains ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. In this way, someone interacting with Oyster may determine the interrelated nature of the information contained in the database." *Id.* at 101.
[7] The GeoTargets SS table is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" (D.I. 381-2 at 102). The GeoTargets SS table is "organized into interrelated geographic areas such that there are parent geographic areas and child geographic areas" and is designed for "▓▓▓▓▓▓▓▓▓▓." *Id.*

14

with the ▇ are then passed back to the GWS, which forwards them to the Google Search System[8] and the AdMixer. The AdMixer then sends the terms and the ▇ to QRewrite, which analyzes the terms and generates ▇ (D.I. 380 at 9; D.I. 381-2 at 32, 33). These ▇ are then sent back to the AdMixer. The AdMixer then sends all of the query terms and ▇ to the Keyword Server, which associates the terms with ▇ via a ▇ (D.I. 414 at 12; D.I. 380 at 9, 10; D.I. 381-2 at 53, 54). The Keyword Server contains a list of millions of keywords and is organized as ▇ (D.I. 381-2 at 34; D.I. 380 at 9). Furthermore, the search conducted by the Keyword Server determines all responsive ads ▇ ▇ *Id.* at 53, 54. The Keyword Server returns the results to the AdMixer. (D.I. 380 at 10). The AdMixer then sends the ▇ the ▇ and the ▇ to the Creative Server, which filters the list based upon ▇ and ▇ (D.I. 414 at 12; D.I. 380 at 10; D.I. 381-2 at 38-43). The eligible ads are then passed back to the AdMixer, which applies a set of algorithms to determine which ads to show, based on an auction process. (D.I. 380 at 10, 11). Finally, the ads are passed back to the GWS. *Id.* at 11.

    Here, the key portion of the aforementioned description of the AdWords System is that at no point does the accused system do anything more than return results from the defined search area. Specifically, the LES determines ▇ the ▇ or ▇ within the search query during the initial search. ▇hese locations constitute the "geographic search area." Conversely, the Keyword Server searches a list of millions of different keywords that are not organized by location. After

---

[8] The Google Search System is not at issue in this case.

conducting this search, Google's system then begins to filter the results. The Keyword Server itself filters the results by ▮▮▮▮ and ▮▮▮▮ This filtered list is then further filtered by the Creative Server, which, among other things, filters the list of responsive ads by ▮▮▮▮ Therefore, Google's accused system does not trace up linkages in a hierarchy, or repeat the search in order to obtain results from a broader geographic area, as the claim limitation would require, and thus cannot meet the "dynamic replication" requirement of the '474 Patent.

>GeoTag argues:
>
>[W]hen the Creative Server filters adgroups to identify those being geo-targeted, campaigns with adgroups associated with a broader geographical area (all cities in a metropolitan area contained in a certain radius of the lat/long. above) are dynamically replicated (automatically inherited at the time of the search), and a list of the selected adgroup IDs are passed to AdMixer into the search of the narrower geographical area (i.e., the end-user's geographic location).

(D.I. 414 at 12-13). However, this argument looks only to the result of Google's accused system and not to its method.

It is uncontested that the accused system conducts its search against all of the keyword IDs and adgroups IDs and then consecutively filters this list of results. In other words the accused system performs a single search, which yields all possible results for the keyword IDs and the adgroups IDs. The results of this search are then progressively filtered, using factors such as geography. This progressive filtering means that the accused system does not later rerun the search to expand its results, as the entire database was initially searched.

As discussed above, for the independent claims to be infringed the accused device must conduct "dynamic replication." This limitation requires that the accused system "automatically inherit[s] at the time of the search" from one search to another search. Each of the three

16

independent claims requires that this inheritance occur from a larger search area to a smaller search area, though the smaller search area is not necessarily a subset of the larger search area. Claim 1 requires a "broader geographic area" as compared with a "narrower geographic area." '474 Patent, 38:54, 56. Claim 20 requires a "geographic area of relatively larger expanse" as compared with a "smaller expanse." '474 Patent, 39:57-58. Claim 31 requires a "broader geographic area" as compared with "said geographic search area." '474 Patent, 41:53-54. However, as the Google system performs only a single search and then simply filters the results, it is not possible for a second search to inherit from the first search, as there is no second search. Furthermore, as the AdWords System does not repeat the search, there can be no larger or smaller search area. As the accused product does not meet the aforementioned limitation, the Court grants Google's Motion for Summary Judgment of Non-Infringement.

Google additionally argues that the "dynamic replication" limitation cannot be met under the doctrine of equivalents as the '474 Patent's prosecution history raises a presumption that the doctrine of equivalents is unavailable. (D.I. 380 at 23). Google argues that this presumption exists because the limitation was added during prosecution to distinguish the claims from the prior art. *Id.* The Defendant failed to rebut this presumption. "A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 740 (2002). "[T]he patentee should bear the burden of showing that the amendment does not surrender the particular equivalent in question." *Id.* The Defendant did not address this issue either in the briefing or during oral argument. (D.I. 414 at 18; *see* D.I. 451). On the issue of the doctrine of equivalents, the Defendant states in totality, "Google's arguments that the doctrine of equivalents cannot apply must also fail. In

17

addition, in the unlikely event there is a difference between what is claimed and the accused system, such a difference is insubstantial." (D.I. 414 at 18). This statement is insufficient to raise a disputed issue in regard to the doctrine of equivalents. Further, this statement was only made in connection with the argument that the database limitation was present in the accused device. It was not made, nor was it referenced, in the Defendant's arguments concerning dynamic replication. Therefore, as the Defendant offered nothing in support of a doctrine of equivalents argument, the Defendant has not only not met its burden, but has waived the argument entirely.

## CONCLUSION

For the reasons above, Google's Motions for Summary Judgment on the Basis of Laches (D.I. 369) and Invalidity (D.I. 375) are **DENIED** and Google's Motion for Summary Judgment of Non-Infringement (D.I. 379) is **GRANTED**. An appropriate order will be entered.