# UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| | ) | C.A. No.: 11-CV-00175-RGA |
| -and- | ) | |
| | ) | |
| GOOGLE, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEOTAG, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

### OPENING MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GEOTAG, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1)

Dated August 4, 2014

*Of Counsel:*

**Hayes, Messina, Gilman & Hayes, LLC**
Paul J. Hayes
Joseph Messina
Kevin Gannon
200 State Street, 6th Floor
Boston, MA 02109
(617) 439-4200
(617) 443-1999 (facsimile)
phayes@hayesmessina.com
jmessina@hayesmessina.com
kgannon@hayesmessina.com

**O'Kelly Ernst & Biell, LLC**
Sean T. O'Kelly (No. 4349)
901 North Market Street, Suite 1000
Wilmington, DE 19801
(302) 778-4000
(302) 295-2873 (facsimile)
sokelly@oeblegal.com

*Attorneys for Defendant GeoTag, Inc.*

# TABLE OF CONTENTS

I.      LEGAL STANDARD ................................................................................................. 1

II.     PROCEDURAL HISTORY ...................................................................................... 2

    A.   Original Complaint............................................................................................. 2

    B.   GeoTag's First Motion to Dismiss. .................................................................... 3

    C.   Stipulations......................................................................................................... 4

    D.   Summary Judgment and *DataTern*. ................................................................... 5

    E.   Amended Complaint. .......................................................................................... 5

III.    ARGUMENT ........................................................................................................... 6

    A.   Implied assertion of direct infringement or implied assertion of indirect infringement?  6

       1.   Plaintiffs have not proven and cannot prove an implied assertion of indirect
            infringement.................................................................................................. 7

       2.   Implied assertion of direct infringement does not exist, and, if it did, Plaintiffs have
            not proven its application in this case............................................................ 8

    B.   No communications with Plaintiffs before suit................................................... 10

    C.   *DataTern* establishes that jurisdiction is lacking. .......................................... 11

       1.   Claim Charts. ............................................................................................... 11

       2.   Requests for Indemnification........................................................................ 12

       3.   Communications between Patentee and Accused Infringers........................ 12

       4.   Litigation Strategy. ...................................................................................... 13

    D.   Dismissal by exercise of judicial discretion...................................................... 14

IV.     CONCLUSION........................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Adenta GmbH v. OrthoArm, Inc.*,
  501 F.3d 1364 (Fed. Cir. 2007) ........................................................................... 1

*BMC Res., Inc. v. Paymentech, L.P.*,
  498 F.3d 1373 (Fed. Cir. 2007) ........................................................................... 9

*Cedars-Sinai Med. Center v. Watkins*,
  11 F.3d 1573 (Fed. Cir. 1993) ............................................................................. 6

*DSU Medical Corp. v. JMS Co., Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006) ............................................................................ 7

*Flex-Foot, Inc. v. CRP, Inc.*,
  238 F.3d 1362 (Fed. Cir. 2001) ........................................................................... 1

*GeoTag, Inc. v. Frontier Comms. Corp. et al.*,
  No. 10-cv00265 (E.D. Tex.) ............................................................................... 10

*Hewlett-Packard Co. v. Acceleron LLC*,
  587 F.3d 1358 (Fed. Cir. 2009) .......................................................................... 10

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
  599 F.3d 1377 (Fed. Cir. 2010) ..................................................................... 1, 14

*Janssen Pharmaceutica, N.V. v. Apotex, Inc.*,
  540 F.3d 1353 (Fed. Cir. 2008) ........................................................................... 1

*Lightning Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
  744 F.3d 1272 (Fed. Cir. 2014) ................................................................... 14, 15

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) .......................................................................................... 14

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ..................................................................................... 1, 10

*Microsoft Corp. v. DataTern, Inc.*,
    2014 WL 1760882 (Fed. Cir. May 5, 2014) ........................................................................ 1, 5

*Prasco, LLC v. Medicis Pharm. Corp.*,
    537 F.3d 1329 (Fed. Cir. 2008) ........................................................................................ 2, 10

Warner–Lambert Co. v. Apotex Corp.,
    316 F.3d 1348 (Fed. Cir. 2003) .............................................................................................. 7

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ............................................................................................................. 14

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................................................... 1, 3, 16

Defendant, GeoTag, Inc. ("GeoTag"), respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Complaint ("Amended Complaint") filed by plaintiffs, Google Inc. ("Google") and Microsoft Corporation ("Microsoft") (together, "Plaintiffs"), for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  For the reasons set forth below, this Court has at all times lacked subject matter jurisdiction over all matters *sub judice* in this case.  The minimal additional allegations included in the Amended Complaint do not create subject matter jurisdiction.  As a result, the Amended Complaint must be dismissed pursuant to *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) and *Microsoft Corp. v. DataTern, Inc.*, -- F.3d --, 2014 WL 1760882 (Fed. Cir. May 5, 2014).

## I.   <u>LEGAL STANDARD</u>

Federal Circuit law governs procedural issues that are pertinent, or unique, to patent law. *See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001).  Thus, "[w]hether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1368-69 (Fed. Cir. 2007).

The discretion afforded district courts regarding the exercise of declaratory judgment jurisdiction is uniquely broad. *See*, *e.g.*, *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1385 (Fed. Cir. 2010).  The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed. *Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1360 (Fed. Cir. 2008) (citation omitted).

The test for subject matter jurisdiction in a declaratory judgment action is "whether under the facts alleged, under all the circumstances, show that there is a substantial controversy,

between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1334 (Fed. Cir. 2008) (quoting *MedImmune*, 549 U.S. at 127).

## II.   PROCEDURAL HISTORY

The procedural history of this case creates unique jurisdictional issues.  In arguing for subject matter jurisdiction in this Court, Plaintiffs attempt to create a jurisdictional fiction that they have already stipulated is incorrect.

### A.   Original Complaint.

On March 1, 2011, Plaintiffs filed their Original Complaint. (D.I. 1).  Plaintiffs sought a declaration that the '474 Patent is invalid and "not infringed by the use of Plaintiffs' web mapping services." (D.I. 1, ¶ 1).  Plaintiffs alleged that they provided Mapping Services that "allow customers to create customized maps for display on their websites" and that "GeoTag alleges infringement of the '474 Patent based on the use of Mapping Services to create store locators and similar locator services on websites." (D.I. 1, ¶¶ 24, 29).  Plaintiffs further alleged that there was "an actual controversy between Plaintiffs and GeoTag regarding whether customers infringe the '474 Patent by use of Microsoft's Bing Maps and Google's Google Maps for the purposes of store locator services, or other similar uses, and whether the '474 Patent is valid." (D.I. 1, ¶ 32).

Plaintiffs only sought a declaratory judgment that "customers of Plaintiffs' Mapping Services to [sic] provide store locators and the like do not infringe any valid claim of the '474 Patent." (D.I. 1, ¶ 41).  Plaintiffs did not seek a declaration regarding whether or not they have infringed the '474 Patent.

### B.   GeoTag's First Motion to Dismiss.

On April 29, 2011, GeoTag filed its original Motion to Dismiss for Lack of Subject

Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1) or, In the Alternative, to Transfer Venue

Pursuant to 28 U.S.C. § 1404(A) ("First Motion to Dismiss"). (D.I. 10).  In connection with the

First Motion to Dismiss, GeoTag submitted affidavits contesting the allegation that GeoTag had

alleged infringement against Plaintiffs' customers based on the use of Plaintiffs' Mapping

Services.  The Affidavit of Lawrence P. Howorth stated:

> 14.   GeoTag has never accused any defendant in the Texas Actions of
> infringing the '474 patent based upon a map provided or generated by Bing Maps
> or Google Maps.  GeoTag has never explicitly or directly, or to my knowledge
> implicitly or indirectly, accused any defendant in the Texas Actions of infringing
> the '474 patent on the basis, in whole or part, of Bing Maps or Google Maps.
>
> 15.   None of the complaints in the Texas actions accuse Google Maps or Bing
> Maps as infringing methods, systems or apparatuses.  None of the complaints in
> the Texas actions explicitly or directly, or to my knowledge implicitly or
> indirectly, accuse any defendant of infringement, in whole or part, based upon
> Bing Maps or Google Maps.
>
> 16.   To the extent any defendants in the Texas Actions display Bing Maps or
> Google Maps on their websites, those maps or mapping services are not, and have
> never been, accused of infringing the '474 patent by GeoTag.

(D.I. 13).

In opposing the First Motion to Dismss, Plaintiffs submitted declarations from three

individuals: (1) Keith Kinnan ("Kinnan"), a Senior Software Development Lead for Microsoft;

(2) Ramsay M. Al-Salam ("Al-Salam"), a lawyer representing the Plaintiffs; and (3) Carlos

Cuesta ("Cuesta"), a Product Marketing Manager at Google.  Kinnan's declaration never

mentioned the name of a single customer of Microsoft who had been sued by GeoTag. (D.I. 15).

In fact, he was careful only to talk in generalities about the services that Microsoft provides to its

customers, without ever referencing any customer who had been sued by GeoTag.  Al-Salam,

Plaintiffs' outside counsel, offered no testimony in his declaration regarding the hosting of store

3

locator data and functionality on Plaintiffs' servers. (D.I. 17).  His only testimony regarding

Plaintiffs' customers was that an unidentified legal assistant had told him that some of the

customers sued by GeoTag "use" "Google Maps" or "Bing Maps." (D.I. 17, ¶ 4).  Like Kinnan,

Cuesta only discussed in general the services Google provides to all customers without

mentioning any specific customers.[1]  Cuesta also stated that "[i]t is possible for a Google

customer to use Google Mapping Services and/or Fusion Tables, **along with other non-Google**

**provided products and services**, to create store locator features on the customer's web site."

(D.I. 16, ¶ 6). (emphasis added).

On December 9, 2011, the Court denied the First Motion to Dismiss. *See* D.I. 28.

### C.     Stipulations.

In May and June 2013, the parties resolved all justiciable issues on which Microsoft and

Google originally based their declaratory judgment claims. (D.I. 295, 296, 320, 323).[2]  In other

words, as of the date of the Stipulations, the parties agreed that there was no dispute concerning

patent infringement by Plaintiffs in connection with the services – hosted or otherwise –

referenced in Plaintiffs' Original Complaint.  The only remaining claims were ad-related

counterclaims, which were not part of Plaintiffs' Original Complaint.

---

[1] D.I. 16.  In Plaintiffs' Opposition to the Motion to Dismiss (D.I. 14), Plaintiffs recognized that
Kinnan and Cuesta only provided testimony regarding the ***possibility*** that some of the data and
functionality for some unspecified subset of Plaintiffs' customers could be contained on
Plaintiffs' servers. D.I. 14, at 6 ("As discussed in the declarations of Keith Kinnan and Carlos
Cuesta, Plaintiffs' software and servers **can contain** the data and functionality for store
locators.") (emphasis added).

[2] Google and Microsoft do not dispute this fact. *See* D.I. 5, p. 5 ("The parties resolved the store
locator claims raised in Plaintiffs' declaratory complaint and in GeoTag's counterclaims almost
one year ago.").

### D.      Summary Judgment and *DataTern*.

On April 10, 2014, the Court issued its Memorandum Opinion, granting Google's motion for summary judgment of non-infringement with regard to GeoTag's ad-related counterclaims. (D.I. 477).  On April 28, 2014, after the Court requested briefing in connection with the recent Federal Circuit opinion in *Microsoft Corp. v. DataTern, Inc.*, GeoTag moved for dismissal of Plaintiffs' complaint for declaratory judgment for lack of subject matter jurisdiction (D.I. 478). In opposition to GeoTag's second motion to dismiss, Plaintiffs argued for the first time that customer data needed to display a store locator resides entirely on Google's and Microsoft's servers, and Google and Microsoft–not their customers–perform all of the steps that GeoTag accused of infringing the '474 patent. *See, e.g.*, D.I. 481, p. 1.  Plaintiffs further alleged that "GeoTag's assertions against hosted customers were implied assertions of *direct* infringement against Microsoft and Google...." (D.I. 481, p. 1) (emphasis in original).

On June 16, 2014, the Court requested additional jurisdictional briefing on additional issues.  On June 30, 2014, after the parties submitted additional briefing, the Court permitted Plaintiffs to amend their complaint, but the Court reminded Plaintiffs that factual amendments to the complaint must have been extant at the time their Original Complaint was filed. *See* D.I. 494.

### E.      Amended Complaint.

On July 17, 2014, Plaintiffs filed their Amended Complaint. D.I. 496.  In contrast to their Original Complaint, Plaintiffs now allege that some unknown portion of their customers that were sued by GeoTag in the Texas actions were fully hosted customers whose data and software

were hosted on Plaintiffs' servers[3] and that, due to this hosted relationship, GeoTag's lawsuits against Plaintiffs' customers constituted "implied assertions of infringement (either indirect or direct)."  (D.I. 496, ¶ 2).  Unlike the Original Complaint, Plaintiffs now seek a judicial declaration that "[n]either Plaintiffs nor their customers infringe any valid claim of the '474 Patent." (D.I. 496, ¶ 48).

## III.   ARGUMENT

### A.   Implied assertion of direct infringement or implied assertion of indirect infringement?

The legal grounds for Plaintiffs' assertion of subject matter jurisdiction is unclear. Plaintiffs' primary, if not exclusive, argument appears to be that GeoTag's Texas actions against Plaintiffs' customers constituted an implied assertion of <u>direct</u> infringement against Plaintiffs. *See* D.I. 481 (Opposition to Motion to Dismiss, p. 1, 8); D.I. 496 (Amended Complaint, ¶ 36). However, in other locations in its Amended Complaint and briefing, Plaintiffs assert that GeoTag's actions against Plaintiffs' customers may be an implied assertion of direct <u>or</u> indirect infringement. *See* D.I. 496 (Amended Complaint, ¶ 2, 46).  The distinction is significant. Implied assertion of indirect infringement is a recognized doctrine that Plaintiffs have not proven and cannot prove.  On the other hand, implied assertion of direct infringement has never been recognized by any court and makes no sense.

---

[3] GeoTag disputes the following new "hosted customer" allegation in paragraph 38 of the Amended Complaint, as well as similar allegations in paragraphs 28-31 and 34-35:  "Plaintiffs' hosted customers do not use any non-Google/Microsoft technology in connection with the accused store locator service, and ***Plaintiffs – not their hosted customers – perform all the steps that GeoTag could accuse of infringing the '474 patent***.  Amended Complaint, ¶ 36 (emphasis added).  In their Original Complaint, Plaintiffs previously alleged the Mapping Services "***allow customers to create*** customized maps ***for display on their websites***" and that [m]any of Plaintiffs' ***customers use Mapping Services to display*** the locations of their retail stores or places of business." (D.I. 1, ¶ 24) (emphasis added).  Because the new allegations are contested, they should not to be taken as true for the purposes of resolving the jurisdictional issue. *See, e.g.*, *Cedars-Sinai Med. Center v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993).

###### 1.      Plaintiffs have not proven and cannot prove an implied assertion of indirect infringement.

A supplier has standing to commence a declaratory judgment action if "there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers." *Arris*, 679 F.3d at 1375.  To prove that a controversy existed for induced infringement, Plaintiffs had the burden to submit evidence that GeoTag had alleged that Plaintiffs took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement. *DataTern*, 2014 WL 1760882, at *3.[4]  To prove that a controversy existed for contributory infringement, Plaintiffs were required to prove that GeoTag had alleged that each Plaintiff "knew its product was 'especially made or especially adapted for use in an infringement' of the patent" and "the product was 'not a staple article or commodity of commerce suitable for substantial noninfringing use.'" *Arris*, 679 F.3d at 1375.  In *DataTern,* proof of this "required mental state" came from claims charts prepared by the patentee. *DataTern*, 2014 WL 1760882 at *4.

In *Arris*, proof of these elements came from a 118-page presentation concerning the patentee's infringement contentions. *Arris*, 679 F.3d at 1375.  In this case, there is no evidence to prove the required scienter for induced or contributory infringement. *See DataTern*, 2014 WL 1760882, at *3 ("Nothing in the record suggests that Microsoft encouraged the acts accused of direct infringement....").  Furthermore, Google's own evidence disproves these required

---

[4] *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (to plead inducement a plaintiff must show sufficient facts that "the alleged infringer ... possessed specific intent to encourage another's infringement").  "[M]ere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Id.* (quoting *Warner–Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003)).

elements.  In support of its motion for summary judgment for laches, Google represented that

"GeoTag never told Google that it too might be sued or that GeoTag believed it had a claim

against Google." (Dkt. No. 370 at 2).  Google further expressly represented that GeoTag "*never*

provided any notice of *any* potential claims during its delay [prior to filing its infringement

counterclaims]." *Id.* (emphasis added).  Google reiterated that "GeoTag *never* notified Google of

any potential claim, much less put Google on notice that it would one day be sued." *Id.* at 15

(emphasis added).  These statements conclusively prove that there was no controversy between

Google and GeoTag regarding an implied assertion of induced or contributory infringement and,

therefore, this case must be dismissed.

### 2. Implied assertion of direct infringement does not exist, and, if it did, Plaintiffs have not proven its application in this case.

Plaintiffs assert the novel argument that GeoTag's lawsuits against Plaintiffs' customers

constitute an implied assertion of direct infringement against Plaintiffs.  To GeoTag's

knowledge, no court has held that lawsuits against a supplier's customers could constitute an

implied assertion of direct infringement against a supplier.  The holdings in *DataTern* and *Arris*

are limited to implied assertions of induced or contributory infringement. *See  DataTern*, 2014

WL 1760882, at *3; *Arris*, 679 F.3d at 1375.  There is no legal authority to expand the holdings

in *DataTern* and *Arris* to an "implied assertion of direct infringement."  Furthermore, expanding

the holdings to an implied assertion of direct infringement makes no sense.  Implied assertion of

indirect infringement is based on the premise that the patentee's allegations and conduct are

sufficient to constitute an assertion of direct infringement against the customer and an implied

assertion of indirect infringement against the supplier.  In other words, through its action for

direct infringement against the customer, the patentee knowingly asserted allegations that

constitute indirect infringement against the supplier.  Plaintiffs' new theory of an implied

assertion of direct infringement would mean that the patentee made incorrect allegations[5] of

direct infringement against a customer that, unbeknownst to the patentee, would constitute

implied assertions of direct infringement against the supplier.

Even if federal law recognized an "implied assertion of direct infringement," there is no

evidence or pleadings in this case for that implied assertion. "Direct infringement requires a

party to perform each and every step or element of a claimed method or product." *BMC Res.,

Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007).[6]  Assuming that the Federal

Circuit later recognized an implied assertion of direct infringement, Plaintiffs would have to

prove not just that they performed each and every step of the claim, but, as with an implied

assertion of indirect infringement, that GeoTag had alleged Plaintiffs' hosting of customers' data

or functionality performed each and every element of any claim of the '474 Patent.  The

evidence previously submitted in support of GeoTag's First Motion to Dismiss proves, without

contradiction by Plaintiffs, that GeoTag never accused any defendant in the Texas actions of

infringing based on Plaintiffs' services and never asserted that Plaintiffs' mapping services

infringed the '474 Patent. *See* D.I. 11 (Morgan Declaration, p. 25) and D.I. 13 (Howorth

Declaration, ¶ 15).  Consequently, as of the date the Original Complaint was filed, there is no

implied assertion of direct infringement.  Thus, no "definite and concrete" dispute exists between

---

[5] Plaintiffs' theory of an implied assertion of direct infringement assumes that the patentee's allegations against the customer are wrong.  Under Plaintiffs' theory, the patentee has sued the customer for direct infringement and claimed that the customer performs each and every step or element of a claimed method or product, but, in reality, the patentee is wrong and that each and every step or element of the claim method or product is performed by the supplier and nothing is done by the customer.

[6] To determine whether there is a case or controversy of sufficient immediacy to establish declaratory judgment jurisdiction, the courts look to the elements of the potential cause of action. *DataTern*, 2014 WL 1760882, at *3.

GeoTag and Plaintiffs of sufficient immediacy to justify subject matter jurisdiction. *See MedImmune*, 549 U.S. at 127.

> **B.      No communications with Plaintiffs before suit.**

The Amended Complaint is devoid of any allegation that, before suit was filed, GeoTag ever threatened either Plaintiff with an infringement (direct or indirect) claim or demanded that either Plaintiff take a license.  Moreover, as stated in the Amended Complaint, the only suits for infringement of the '474 Patent ever commenced by GeoTag were against Plaintiffs' customers. (D.I. 496 at ¶ 32).  Of these customer suits, the earliest was filed on July 23, 2010. *See GeoTag, Inc. v. Frontier Comms. Corp. et al.*, No. 10-cv-00265 (E.D. Tex.).  Many additional customer suits were filed in Texas before Plaintiffs filed the Original Complaint in this case.  In none of those cases was either Google or Microsoft named as a defendant or accused of infringement (whether direct or indirect).

In the context of declaratory judgment jurisdiction, "it is the objective words and actions of the patentee that are controlling." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009); *see also Prasco*, 537 F.3d at 1338 (reiterating that it is not the party's subjective belief, but the reality of the threat against it, that is relevant to determining declaratory judgment jurisdiction).  Nowhere in the Amended Complaint do Plaintiffs point to any communications to them from GeoTag prior to suit alleging infringement of, or even mentioning in any context, the '474 Patent.  Thus, Plaintiffs do not allege in the Amended Complaint (nor could they) that, at the time the Original Complaint was filed, there was existing between them and GeoTag as a result of any such communications a dispute "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" as is required under *MedImmune*.  As a result, Plaintiffs' declaratory judgment jurisdiction claim must rest solely upon GeoTag's

enforcement of the '474 Patent against Plaintiffs' customers.  As set forth below, however, such jurisdiction is precluded under the facts of this case by the Federal Circuit's holding in *DataTern*.

### C.     *DataTern* establishes that jurisdiction is lacking.

Absent any pre-suit communications between GeoTag and Plaintiffs regarding the '474 Patent, Plaintiffs must rely upon GeoTag's actions against their customers to establish subject matter jurisdiction.  Thus, as before, this jurisdictional issue is governed by *DataTern*.  As set forth in detail in GeoTag's prior briefing on this issue, D.I. 479 and D.I. 486 (incorporated herein by reference), *DataTern* requires dismissal of this case.  To summarize, as in *DataTern*, "[p]rior to the case at issue [here], [GeoTag] sued several [of Plaintiffs'] customers, alleging infringement of the ['474 Patent]." *DataTern*, 2014 WL 1760882, at *1; *see* Amended Complaint, ¶¶ 32, 35.  Thus, as in *DataTern*, "[GeoTag's] litigation strategy appears to involve suing software users, not software suppliers." *DataTern*, 2014 WL 1760882, at *5.  Therefore, as in *DataTern*, the suits against Plaintiffs' customers do not create subject matter jurisdiction over Plaintiffs' claims herein.

When the other relative facts of *DataTern* are compared as set forth below, this case presents an even more compelling basis for denying declaratory judgment than did the facts in *DataTern*.[7]

### 1.     Claim Charts.

The '402 Patent claim charts provided to Microsoft by the patentee in *DataTern* were held to be insufficient to establish jurisdiction. *Id.* at *4.  Here, no claim charts were provided to Plaintiffs prior to their filing the Original Complaint.  This fact, therefore, is more compelling for the purpose of denying jurisdiction than in *DataTern*.

---

[7] To recap, in *DataTern*, declaratory judgment was found to be lacking with respect to Microsoft's challenge to the '402 Patent at issue therein.

### 2.     Requests for Indemnification.

In *DataTern*, the Federal Circuit stated that, had Plaintiffs agreed to indemnify their customers, "they would then have standing to bring suit." *Id.* at *3 (citation omitted).  As here, however, no such agreement to indemnify had been given prior to suit and a request for indemnification was expressly found to be insufficient. *Id.*  In the Amended Complaint, Plaintiffs allege that customer have requested indemnification, *see* Amended Complaint, ¶¶ 37-38, but there is no allegation that either Google or Microsoft agreed, at the time of the Original Complaint, to honor any such request.

In any event, the Federal Circuit found that an agreement to indemnify would still be insufficient to establish jurisdiction in that case because plaintiffs therein could intervene in the pending customer suits. *DataTern*, 2014 WL 1760882, at *3. ("Appellees cannot seek a declaration from a New York court on behalf of customers they must indemnify where a suit against these very same customers on all the same issues was *already* underway in a Texas court") (emphasis added).  Likewise, many of GeoTag's customer suits were pending in Texas when Plaintiffs filed the Original Complaint in this case.  Thus, as in *DataTern*, Plaintiffs herein could have moved to intervene and defend their customers in the Texas cases.  Accordingly, this fact is equally compelling for the purpose of denying jurisdiction as in *DataTern*.

### 3.     Communications between Patentee and Accused Infringers.

In *DataTern*, the patentee "never approached Appellees regarding a license" and "never accused Appellees of infringement." *Id.* at *2.  Here, there were no communications whatsoever between GeoTag and Plaintiffs regarding the '474 Patent before Plaintiffs filed the Original Complaint.  Not surprisingly then, the Amended Complaint makes no allegation that any such communications took place.

In *DataTern*, the patentee also "indicated that it did not intend to sue Microsoft." *Id.*
Similarly, the fact that GeoTag filed myriad cases in Texas without ever suing either Microsoft
or Google was an indication that GeoTag did not intend to sue either of Plaintiffs in connection
with any store locator technology.  Moreover, the Amended Complaint makes no allegation to
the contrary.  Thus, this factor is equally compelling for denying jurisdiction as in *DataTern*.

### 4.    Litigation Strategy.

In *DataTern*, Appellees "also argue[d] that DataTern's aggressive litigation strategy – it
ha[d] sued more than 100 entities for infringement of the '402 and '502 patents – supports the
existence of a substantial controversy." *Id.*  Although "sympathetic to Microsoft's arguments that
DataTern's litigiousness supports the existence of a controversy between Microsoft and
DataTern," the Federal Circuit nonetheless found jurisdiction to be lacking with respect to the
'402 patent. *Id.* at *5.  Thus, the fact that GeoTag filed numerous suits against Plaintiffs'
customers does not support finding declaratory judgment jurisdiction in this case.  Rather, such
actions demonstrate that "[GeoTag's] litigation strategy appears to involve suing software users,
not software suppliers." *Id.*

### 5.    Conditional Counterclaims.

In *DataTern*, the district court "reasoned that DataTern's conditional counterclaims
weighed in favor of jurisdiction because DataTern was required to make them in compliance
with Rule 11 of the Federal Rules of Civil Procedure." *Id.*  The Federal Circuit rejected this
argument because "post-complaint facts cannot create jurisdiction where none existed at the time
of filing." *Id.* (citations omitted).  Thus, the fact that GeoTag filed post-complaint counterclaims
against Plaintiffs in this case does not support a finding of jurisdiction in this case.

When the Federal Circuit's analysis in *DataTern* is applied to the facts in this case, the
Amended Complaint must be dismissed.

### D.        Dismissal by exercise of judicial discretion.

Notwithstanding the foregoing, this Court enjoys discretion of "unique breadth" when

addressing issues of declaratory judgment jurisdiction. *See Innovative Therapies, Inc.*, 599 F.3d

at 1385 (citation omitted).  As a result, this Court is empowered to decline such jurisdiction

"even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* at 1384

(quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)).  Thus, irrespective of the

satisfaction, *vel non*, of the jurisdictional prerequisites, this Court should dismiss the Amended

Complaint in order to provide the consistency in claim construction demanded by the Federal

Circuit.

As the Federal Circuit recently reiterated:

> There is no dispute as to the importance of national uniformity and finality
> of claim construction, for it is not unusual for different district courts to
> litigate the same patent against different parties and different assertions of
> infringement.

*Lightning Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1280 (Fed. Cir.

2014) (en banc).  As the Court further cautioned:

> Because differing claim constructions can lead to different results for
> infringement and validity, the possibility of disparate district court
> constructions unravels the 'uniformity in the treatment of a given patent'
> that the Court sought to achieve in [*Markman v. Westview Instruments,
> Inc.*, 517 U.S. 370, 390 (1996)].  It would restore the forum shopping that
> the Federal Circuit was created to avoid.

*Id.* at 1286.

The asserted claims herein were previously construed by Magistrate Judge Everingham in

the Texas customer cases.  In this case, for the purposes of consistency required by the Federal

Circuit, GeoTag argued during claim construction briefing that "th[is] Court should adopt *in toto*

Magistrate Judge Everingham's claim construction in the Eastern District of Texas *Idearc*

14

litigation." *See* Dkt. No. 174 at 9.  Google and Microsoft opposed this request and the Court proceeded to construe the claims. *See* D. I. 284.

This Court did not adopt the Texas constructions *in toto*.  For example, this Court's interpretation of a "database of information" and "dynamically replicated" differs from the construction given to those terms in Texas.  Accordingly, as a result of the claim construction litigation strategy pursued by Google and Microsoft herein, this Court's construction is not fully consistent with the constructions in Texas.  Contrary to the Federal Circuit's caution, Google and Microsoft have successfully been able to "unravel[] the 'uniformity in the treatment of a given patent' that the [Federal Circuit] sought to achieve." *Lightning Ballast*, 744 F.3d at 1286.  Therefore, discretionary dismissal of this case will also improve the likelihood of obtaining the consistency in claim construction that the Federal Circuit plainly desires. *See id.*

## IV.    <u>CONCLUSION</u>

For the reasons set forth above and previously presented in D.I. 479 and D.I. 486, GeoTag requests that the Amended Complaint be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

Respectfully submitted,

O'Kelly Ernst & Bielli, LLC

Dated:  August 4, 2014                  */s/ Sean T. O'Kelly*
                                        Sean T. O'Kelly (No. 4349)
                                        901 North Market Street, Suite 1000
                                        Wilmington, DE 19801
                                        (302) 778-4000
                                        (302) 295-2873 (facsimile)
                                        sokelly@oeblegal.com

                                        *Attorneys for Defendant GeoTag, Inc.*

15

*Of Counsel:*

Hayes Messina Gilman & Hayes, LLC
Paul J. Hayes
Joseph Messina
Kevin Gannon
200 State Street, 6th Floor
Boston, MA 02109
(617) 439-4200
(617) 443-1999 (facsimile)
phayes@hayesmessina.com
jmessina@hayesmessina.com
kgannon@hayesmessina.com